**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CASE NO.:

HEALTHPLAN SERVICES, INC.,
a Florida corporation,

       Plaintiff,

v.

RAKESH DIXIT, an individual,
FERON KUTSOMARKOS,
an individual,
E-INTEGRATE, INC.,
a Florida corporation,
KNOWMENTUM, INC,
a Florida corporation,
and
MEDIA SHARK PRODUCTIONS, INC.,
a Florida corporation,

       Defendants.
_____/

## COMPLAINT

       Plaintiff, HealthPlan Services, Inc. ("HealthPlan"), hereby sues Defendants, Rakesh Dixit ("Dixit"), Feron Kutsomarkos ("Kutsomarkos"), E-Integrate, Inc. ("E-Integrate"), Knowmentum, Inc., and Media Shark Productions ("Media Shark"), and states as follows:

       This is an action for federal trade secret misappropriation, Florida deceptive and unfair trade practices, common law unfair competition, copyright infringement, and breach of contract in violation of the laws of the United States and the State of Florida. Plaintiff seeks a permanent injunction; damages, including Defendants' profits, trebled under the law, punitive damages, and other relief more fully described herein.

## INTRODUCTION

1.      Between 2011 and 2014, Plaintiff developed ExchangeLink®, a powerful healthcare-related software system.  The ExchangeLink® system connects organizations to public and private health insurance exchanges.  It aggregates and processes data across multiple healthcare platforms and distribution channels.  Plaintiff invested nearly $100 million dollars in time, talent and treasure into developing the ExchangeLink® system.  As a result, many of the largest insurance and managed care providers in the United States implemented the ExchangeLink® system.  Ultimately, the ExchangeLink® system became the premier software system associated with the Affordable Care Act.

2.      As detailed below, while an employee of HealthPlan, Dixit misappropriated the ExchangeLink® system, forced HealthPlan to pay Dixit and E-Integrate more than $750,000 for its return, and then retained a stolen copy of the ExchangeLink® system.

3.      Upon information and belief, after his termination from HealthPlan, Dixit induced Kutsomarkos to participate in a scheme to violate and exploit HealthPlan's copyrights and trade secrets ("HealthPlan IP") in connection with defrauding third parties into investing in a sham company.  At the time she was enlisted by Dixit, Kutsomarkos had worked as a long-time contractor of HealthPlan having high-level, direct access to the HealthPlan IP.

4.       With the HealthPlan IP in his possession, Dixit, in concert with the other Defendants, induced one or more investors into paying Defendants large sums of money, allegedly to develop a software system, including one referred to as the "Fit" software system, that in reality was nothing more than a rip-off of HealthPlan's ExchangeLink® system.  Defendants' unlawful activities are harming Plaintiff and members of the public.

5.      Accordingly, HealthPlan respectfully requests that this Court enter a judgment of federal trade secret misappropriation, Florida deceptive and unfair trade practices, common law unfair competition, copyright infringement, breach of contract against Defendants; enter

2

permanent injunctive relief; and issue an award of damages, including Plaintiff's actual damages, Defendants' profits, trebled under the law, punitive damages, attorneys' fees and costs associated with this action, and other just and proper relief.

## PARTIES, JURISDICTION, AND VENUE

6.     This Court has subject matter jurisdiction pursuant to: 28 U.S.C. §§ 1331, 1338 (a) and (b), and 18 U.S.C. § 1836(c) because HealthPlan's copyright infringement and trade secret misappropriation claims arise under the Copyright Act, 17 U.S.C. §§ 101 *et seq*., and the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*., respectively.

7.     This Court has supplemental jurisdiction over the Florida law claims under 28 U.S.C. §§ 1367 and 1338(b).

8.     Venue is proper pursuant to 28 U.S.C. § 1391(c) because HealthPlan resides in this judicial district and Defendants have committed acts of copyright infringement, trade secret misappropriation, and other torts associated with this action, within this district.

9.     HealthPlan is a corporation organized under the laws of the state of Florida and has its principal place of business in this judicial district.

10.     Defendant, Dixit, is an individual who resides in this judicial district.  Dixit is a former employee of HealthPlan and, at all times material to this complaint, has engaged in business in this judicial district.

11.     Defendant, Kutsomarkos is an individual who, upon information and belief, resided in this judicial district at the time of the acts alleged herein, and who, at all material times related hereto, engaged in substantial and not isolated business activity in this judicial district, and committed tortious acts in this judicial district as alleged herein.  Further, to the

extent Kutsomarkos now resides outside of this judicial district, the exercise of personal jurisdiction over Kutsomarkos is proper pursuant to, *inter alia*, Florida's long-arm statute, section 48.193 (1) and (2), Florida Statutes (2000). Kutsomarkos is subject to this Court's jurisdiction at least by: directing and controlling the activities of copyright infringement and trade secret misappropriation, committed by Media Shark in this judicial district; entering into agreements with HealthPlan whereby she accepted this Court's jurisdiction; and engaging in extensive business in this judicial district in connection with the allegations of this Complaint.

12.     Defendant, UM, is a corporation organized under the laws of the state of Florida and has its principal place of business in this judicial district. UM is a software development contractor that, at times, contracted its development services to HealthPlan.

13.     Defendant, E-Integrate, is a corporation organized under the laws of the state of Florida and has its principal place of business in this judicial district. Upon information and belief, E-Integrate was administratively dissolved for failure to pay dues. E-Integrate is a software development contractor that, at times, contracted and subcontracted its services to HealthPlan.

14.     Defendant, Knowmentum, is a corporation organized under the laws of the state of Florida and has its principal place of business in this judicial district. Upon information and belief, Knowmentum is a software development company controlled and/or owned by Dixit.

15.     Defendant, Media Shark is a corporation organized under the laws of the state of Florida and has its principal place of business in this judicial district. Media Shark is a media

and marketing company owned by Kutsomarkos and/or Dixit. Media Shark, at times, contracted its media and marketing services to HealthPlan.

## HEALTHPLAN DEVELOPS AND COMMERCIALIZES
## THE INDUSTRY LEADING SOFTWARE PLATFORM
## FOR INSURANCE AND MANAGED CARE COMPANIES

16.     HealthPlan Holdings, through its wholly-owned subsidiary HealthPlan, is a nationwide provider of sales, benefits administration, retention, reform and technology solutions to the insurance and managed care industries.

17.     Beginning in 2011, HealthPlan invested heavily in a large-scale IT project ("HealthPlan Project") to develop the most technologically advanced software platform available to the insurance and managed care industries (the "ExchangeLink® system").

18.     HealthPlan invested millions of dollars and thousands of hours in the development of the ExchangeLink® system. Owing to its enormous investments and its proprietary technologies, HealthPlan was perfectly positioned to provide industry-leading software platforms for use in connection with Affordable Care Act related healthcare exchanges.

19.     The HealthPlan Project required HealthPlan to hire numerous contractors, subcontractors and employees to assist with various and extensive development and marketing tasks. Ultramatics, E-Integrate and Dixit were among the contractors hired by HealthPlan in the development of the ExchangeLink® system. Specifically, Ultramatics and E-Integrate contributed to the development of the ExchangeLink® system software code.

20.     As a result of their software code development work at HealthPlan, Ultramatics, E-Integrate and Dixit gained complete access to every aspect of the ExchangeLink® system.

This included the entirety of the ExchangeLink® software program, including source and object code associated with the ExchangeLink® system.

21.    In addition, HealthPlan invested heavily in commercializing, marketing and promoting the ExchangeLink® system.  HealthPlan created comprehensive, specialized scripts, videos and presentations to market and promote the ExchangeLink® system to healthcare insurance and managed care service providers nationwide.

22.    HealthPlan contracted with Kutsomarkos' company, Media Shark, in connection with the development and promotional activities associated with the ExchangeLink® system (the "Media Shark Agreement").  HealthPlan's relationship with Kutsomarkos and Media Shark lasted *years*.  Kutsomarkos was a trusted, high-level member of the team charged with commercializing, marketing and promoting the ExchangeLink® system.

23.    Media Shark was hired by HealthPlan in the development of extensive media and marketing materials.

24.    Kutsomarkos worked for Media Shark in connection with its work for HealthPlan. Specifically, much of Kutsomarkos' job at HealthPlan involved the process of "onboarding" new clients.  Kutsomarkos was deeply involved in developing and presenting demonstrations of the ExchangeLink® system to prospective and actual clients.  Kutsomarkos' role in demonstrations afforded her access to confidential pricing arrangements, lists and the identification of clients and prospective clients, process and flow systems used in the onboarding process, new client rates, the intricacies of how enrollments are processed, as well as the actual scripts and presentations HealthPlan uses to sell and educate prospective clients.  Further, the preparation of demonstrations afforded her access to HealthPlan's

confidential test systems of the ExchangeLink® system. In sum, because of her work for HealthPlan, Kutsomarkos had comprehensive access to and knowledge of many of HealthPlan's IP and its most valuable trade secrets.

25. As a result of HealthPlan's enormous investment of time, talent and treasure, its ExchangeLink® system has been enormously successful.

### HEALTHPLAN'S EXCHANGELINK® INTELLECTUAL PROPERTY

26. Given the value of the ExchangeLink® system, HealthPlan carefully protected its intellectual property associated with the ExchangeLink® system. It did so with the use of contracts, copyrights and trade secrets.

27. As a threshold matter, HealthPlan insisted that contractors—especially those with access to HealthPlan's trade secrets—enter into formal, written agreements governing confidentiality and intellectual property ownership. Ultramatics, E-Integrate and Media Shark, as well those working on their behalf, were bound by such agreements. True and accurate copies of the Ultramatics, E-Integrate and Media Shark agreements are attached hereto as Exhibits 1, 2 and 3, respectively.

28. HealthPlan likewise required that its employees involved in the HealthPlan Project enter into agreements governing confidentiality and intellectual property ownership.

29. HealthPlan also owns extensive trade secrets relating to at least: (i) ExchangeLink® coding; (ii) confidential pricing arrangements, strategies and practices; (iii) market intelligence and research in connection with ExchangeLink®; (iii) pricing systems used in connection with ExchangeLink; (iv) proprietary client lists and market research regarding clients and prospective clients; (v) methods for training and educating its customers and

prospective customers about the strategic use of the ExchangeLink® system; (vi) process and flow systems used in the onboarding process; and (vii) the intricacies of enrollment processing (collectively, "HealthPlan Trade Secrets").

30.    HealthPlan takes reasonable and necessary steps to protect its ExchangeLink® Trade Secrets.  For example, HealthPlan enters into agreements with robust confidentiality and non-compete provisions relating to the HealthPlan Trade Secrets.  HealthPlan further protects its HealthPlan Trade Secrets by identifying them as confidential, password protecting them, and restricting access to only employees and contractors with a need to know the HealthPlan Trade Secrets.

31.    HealthPlan does not share its HealthPlan Trade Secrets with third parties except in the course of confidential business communications.

32.    The HealthPlan Trade Secrets derive independent economic value and competitive advantages from not being generally known, and are valuable to HealthPlan.

33.    By virtue of its contracts and employment relationships, HealthPlan owns all right, title and interest in the copyrights for the ExchangeLink® software, and all associated marketing and promotional materials ("HealthPlan Copyrighted Materials").  The HealthPlan Copyrighted Materials, include at least the following items, identified by name and their copyright registration numbers:

    a.  HCSC SLP Video Registration                 Reg. No. PAu003919941

    b.  EMC Full Animation Registration           Reg. No. PAu003919943

    c.  Configurator Recording Registration        Reg. No. PAu003919946

    d.  ServiceLink and Member Portal Video Registration   Reg. No. PAu003919947

| e. ServiceLink Script Registration | Reg. No. PAu003919913 |
| f. ADS SLP Script Registration | Reg. No. PAu003919911 |
| g. Configurator Script Registration | Reg. No. PAu003919916 |

34. The U.S. Copyright Office issued the aforementioned HealthPlan copyright registrations ("HealthPlan Copyrights") for the HealthPlan Copyrighted Materials.

## DIXIT AND KUTSOMARKOS INFRINGE THE HEALTHPLAN COPYRIGHTS AND MISAPPROPRIATE EXCHANGELINK TRADE SECRETS

35. In late 2011, HealthPlan engaged Ultramatics in connection with the development of the ExchangeLink® system. Ultramatics subcontracted significant amounts of the development to E-Integrate.

36. Upon information and belief, in June 2012, Dixit purchased E-Integrate.

37. Upon information and belief, in approximately September 2012, Dixit sold his interest in E-Integrate and returned to employment with Ultramatics.

38. In May 2013, at Ultramatic's suggestion, HealthPlan directly hired Dixit to be its Vice President, Links Core Product Development.

39. In his capacity as Vice President for HealthPlan, Dixit supervised and managed various aspects of the ExchangeLink® development. He also had direct access to the HealthPlan Trade Secrets.

## DIXIT HOLDS HEALTHPLAN HOSTAGE

40. In 2013, Dixit directed persons working on coding components of the HealthPlan Project (the "Source Code") to upload their work to a series of cloud-based source code repositories hosted by SourceRepo.com (the "SourceRepo Library").

41.     In late November 2013, without the knowledge or consent of HealthPlan, Dixit abruptly restricted HealthPlan's access to the Source Code on the SourceRepo Library.  As a result, Dixit took exclusive control of the entire ExchangeLink® platform.

42.     After learning what Dixit did, on December 5, 2013, UM made written demands on both E-Integrate and Dixit for immediate production of all account information, passwords, or other information that would allow HealthPlan to access the SourceRepo Library and/or otherwise gain access to the Source Code.

43.     On December 6, 2013, HealthPlan learned that the SourceRepo Library was under the administrative control of E-Integrate employee Clyde Fritz ("Fritz").

44.     HealthPlan verbally demanded that Fritz immediately relinquish administrative control of the SourceRepo Library to a HealthPlan representative.  Fritz refused.

45.     Also on December 6, 2013, counsel for HealthPlan demanded that E-Integrate, direct its employee, Fritz, to relinquish administrative control of the SourceRepo Library to a HealthPlan representative or otherwise immediately produce the Source Code.  E-Integrate refused.

46.     E-Integrate claimed Ultramatics owed it more than $500,000.00 and demanded that HealthPlan pay E-Integrate the entire amount in return for releasing ExchangeLink back to HealthPlan.

47.     Despite his position as a Vice President of HealthPlan, and having control over the Source Code, Dixit refused to release to HealthPlan the Source Code because it "would not be in the best interest of E-Integrate."

48.     Subsequently, E-Integrate "offered" to return the Source Code to HealthPlan in exchange for: (i) a long-term contract for E-Integrate resources to work on the HealthPlan Project; and (ii) up-front payments totaling the amount of $775,420.69 from HealthPlan to E-Integrate (the "Payment"), which E-Integrate represented was the full amount owed to E-Integrate by UM for subcontracting for UM, plus interest (the "Receivable").  In exchange for the Payment, E-Integrate agreed to assign to HealthPlan all rights in the Receivable.

49.     At the time of its "offer," E-Integrate was fully aware that HealthPlan *had already paid UM in full* for all services rendered by UM and its subcontractor E-Integrate.  Making the Payment to E-Integrate would therefore require HealthPlan to pay twice (once to UM and once to E-Integrate) for the exact same services.

50.     Given the business-disruptive effect of not having access to the current version of its Source Code, HealthPlan had no choice but to accede to E-Integrate's outrageous demands for the return of the Source Code.

51.     To make matters worse, Dixit told HealthPlan that he planted a time bomb in the Source Code that would destroy the Source Code unless he personally defused it after receiving payment from HealthPlan.

52.     On January 17, 2014, HealthPlan and E-Integrate entered into a Consulting Agreement (the "HEALTHPLAN-E-Integrate Agreement"), a redacted copy of which is attached hereto as Exhibit 2.

53.     Pursuant to the HEALTHPLAN-E-Integrate Agreement, Dixit represented to HealthPlan that he had returned the Source Code to HealthPlan and retained no copy of it.

54.     Considering Dixit's treachery, once HealthPlan received the Source Code, HealthPlan was forced to scour and/or rewrite the Source Code to ensure it was completely safe and functional.

55.     The HEALTHPLAN-E-Integrate Agreement, required the return to HealthPlan of the Source Code and strictly prohibited E-Integrate and Dixit from retaining any copy of the Source Code.

56.     Upon information and belief, E-Integrate and/or Dixit surreptitiously retained one or more copies of the Source Code.

57.     In early 2014, as soon as it was in a position to do so without jeopardizing any ongoing projects or client deliverables, HealthPlan severed all ties with Ultramatics and E-Integrate, and terminated Dixit's employment.

## DIXIT'S AND KUTSOMARKOS' HEIST OF EXCHANGELINK®

58.     Dixit's unlawful conduct continued after his termination from HealthPlan.

59.     Within months of his termination, Dixit carried out a scheme to use the HealthPlan Trade Secrets and Source Code to defraud others.  Specifically, Dixit and Kutsomarkos induced others to invest in the development of Focus IT, LLC, a company to develop a software platform known as "Fit."  Fit was identical in every material way to the ExchangeLink® system.  As detailed at length in pending litigation, "Fit" was *fake*.  *See Bojkovic v. Dixit*, Amended Compl., ¶¶62-70 ("Dixit Fraud Litigation").

60.     Upon information and belief, instead of returning or destroying all copies of the Source Code, Dixit and E-Integrate retained one or more copies of the Source Code, as well as numerous HealthPlan Trade Secrets.

61.     Further, Dixit surreptitiously enlisted the help of Kutsomarkos, who was at that time a crucial marketing resource and trusted contractor to HealthPlan and had access to the HealthPlan Copyrights and up-to-date HealthPlan Trade Secrets.  By enlisting Kutsomarkos, Dixit gained continuous access to the HealthPlan Trade Secrets and a person with deep knowledge of the HealthPlan Trade Secrets, together with the entirety of the HealthPlan Copyrights, including ExchangeLink® marketing scripts associated with HealthPlan's sales presentations.

62.     Unbeknownst at the time to HealthPlan, Dixit and Kutsomarkos "rebranded" their illicit copy of the ExchangeLink® system as "Fit."

63.     As part of their repackaging of ExchangeLink® as "Fit," Dixit, Kutsomarkos, Knowmentum and Media Shark copied the HealthPlan Copyrights, including the HealthPlan scripts, marketing materials and presentations covered by the HealthPlan Copyrights into a rebranded "Fit" demonstration package.

64.     In particular, Dixit, Kutsomarkos, Knowmentum and Media Shark copied, made derivative works of and displayed the HealthPlan scripts, including the ServiceLink Script Registration, the ADS SLP Script Registration, and the Configurator Script Registration (collectively, the "HealthPlan Copyrighted Scripts").

65.     Likewise, Dixit, Kutsomarkos, Knowmentum and Media Shark copied, made derivative works of and displayed the HealthPlan videos, including the HCSC SLP Video Registration, the EMC Full Animation Registration, the Configurator Recording Registration, and the ServiceLink and Member Portal Video Registration (collectively, the "HealthPlan Copyrighted Videos").

66.     Among other infringing conduct, Dixit, Kutsomarkos, Knowmentum, e-Integrate and Media Shark derived Fit system presentations  ("Infringing Works") directly from the HealthPlan Copyrighted Scripts and the HealthPlan Copyrighted Videos.  A video of at least one of the Infringing Works is provided at Exhibit 9.  Screenshots of the Infringing Works are depicted in Exhibits 4-7.

67.     In one or more presentations, Dixit, Kutsomarkos, Knowmentum and Media Shark displayed the Infringing Works to Dr. Michael Bojkovic.

68.     Referring to the Copied HealthPlan Scripts in the Dixit Fraud Litigation, Kutsomarkos conceded that she used the *exact script* that she used with HealthPlan's clients. Specifically, she admitted that James Vertino, a former HealthPlan executive, was correct that Kutsomarkos was using the same script for HealthPlan and her own clients:

> Q: Mr. Vertino says "…it is the exact script that [Kutsomarkos] and I directly used with each of [HealthPlan's] clients."
> A: Yes….

Kutsomarkos Dep. 130:5-15.

69.     Further still, in the Dixit Fraud Litigation, Kutsomarkos admitted the Fit system employed a process, look and feel "identical" to the ExchangeLink process:

> Q: …have you ever demonstrated this process, this very process flow or technology before or other than in connection with the FIT project?
> A: I have demonstrated a similar process flow on behalf of [HealthPlan].
> Q: Okay.  How similar?
> A: Quite similar.
> Q:Identical?
> A: Well, the process is the process.  So, yes.  That is how files are processed.

Kutsomarkos Dep. 127:4-15 (Exhibit 8).

70.    Such conduct by Dixit and Kutsomarkos directly violated the confidentiality and non-compete provisions of their respective agreements with HealthPlan.

71.    To make matters worse, Dixit and Kutsomarkos succeeded at fraudulently inducing at least one individual—Dr. Bojkovic—into investing in their sham company, Knowmentum. *See* Dixit Fraud Litigation, Amended Compl., ¶¶90-95.  Upon information and belief, Dixit and Kutsomarkos defrauded one or more investors, including Dr. Bojkovic, of hundreds of thousands of dollars.

72.    Upon becoming aware of Dixit and Kutsomarkos' scheme, HealthPlan terminated its relationship with Kutsomarkos and Media Shark.

### COUNT I: VIOLATION OF DEFEND TRADE SECRETS ACT
**(Against Dixit, Kutsomarkos, E-Integrate, Media Shark, Knowmentum)**

73.    HealthPlan incorporates by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

74.    HealthPlan owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.  One example of the trade secret information is reflected in the Source Code.   Another is reflected in HealthPlan's confidential business information, including its pricing information, marketing strategies and customer lists.

75.    HealthPlan's confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and/or ordered in, or intended to be used, sold shipped and/or ordered in, interstate commerce.

76.     HealthPlan has taken reasonable measures to keep its confidential, proprietary, and trade secret information secret and confidential.

77.     HealthPlan has at all times maintained stringent security measures to maintain the secrecy of its Source Code and HealthPlan Trade Secrets.  For example, HealthPlan restricts access to its Source Code and HealthPlan Trade Secrets to only those who "need to know." That is, employees and contractors working on projects unrelated to ExchangeLink have not had and do not have access to confidential and proprietary information relating to the Source Code and HealthPlan Trade Secrets.  Further, HealthPlan encrypts, password-protects and otherwise undertakes other security measures to protect the Source Code and HealthPlan Trade Secrets.  Further still, HealthPlan secures its physical facilities by restricting access and then monitoring actual access with badges, security guards and cameras.

78.     HealthPlan also requires all employees, contractors, consultants, and vendors to sign confidentiality agreements before any trade secrets are disclosed to them.

79.     Due to these security measures, HealthPlan's confidential and proprietary trade secret information is not available for others in the healthcare industry—or any other industry—to use through any legitimate means.

80.     HealthPlan's Trade Secrets and Source Code derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

81.     In violation of HealthPlan's rights, Dixit, Kutsomarkos, E-Integrate, Media Shark, Knowmentum misappropriated HealthPlan's confidential, proprietary and trade secret

information in the improper and unlawful manner as alleged herein. Dixit's, Kutsomarkos', E-Integrate's, Media Shark's, and Knowmentum's misappropriation of HealthPlan's confidential, proprietary and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive. Dixit, Kutsomarkos, E-Integrate, Media Shark, and Knowmentum have attempted and continue to attempt to conceal their misappropriation.

82. On information and belief, if Dixit, Kutsomarkos, E-Integrate, Media Shark, and Knowmentum are not enjoined, they will continue to misappropriate and use HealthPlan's trade secret information for their own benefit and to HealthPlan's detriment.

83. As a direct and proximate cause of Dixit's, Kutsomarkos', E-Integrate's, Media Shark's, and Knowmentum's conduct, HealthPlan has suffered and, if their conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because HealthPlan's remedy at law is inadequate, HealthPlan seeks, in addition to damages, temporary, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary and trade secret information and to protect other legitimate business interests. HealthPlan operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

84. HealthPlan has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

## COUNT II: VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(Against Dixit, Kutsomarkos, E-Integrate and Media Shark)**

85. HealthPlan hereby adopts and incorporates the allegations in paragraphs 1 through 72 as if set forth fully herein.

86. This is a count for violation of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.20, et seq., Florida Statutes ("FDUTPA") against Dixit, Kutsomarkos, E-Integrate and Media Shark.

87. The conduct of Dixit, Kutsomarkos, E-Integrate and Media Shark, as set forth above, constitutes unfair and deceptive acts and practices which are prohibited and actionable under FDUPTA.

88. Defendants' conduct is of the type that is likely to mislead consumers of Dixit, Kutsomarkos, E-Integrate and Media Shark acting reasonably under the circumstances.

89. Dixit, Kutsomarkos, E-Integrate and Media Shark willfully engaged in deceptive and unfair trade practices in that they know or should have known that the methods, acts and practices described herein were deceptive, unfair, unconscionable or prohibited by law.

90. HealthPlan has suffered actual damages as the result of the acts of Dixit, Kutsomarkos, E-Integrate and Media Shark in an amount thus far not determined and which includes, but is not limited to, the amount of the Payment to E-Integrate.

91. HealthPlan was further harmed insofar as Dixit, Kutsomarkos, E-Integrate and Media Shark delivered work products of a lower market value than that which should have been delivered to HealthPlan. In particular, Dixit, Kutsomarkos, E-Integrate and Media Shark delivered works, including HealthPlan Trade Secrets and Source Code, that were not exclusively provided to HealthPlan, but instead were reused by third parties, including at least Knowmentum.

92. In addition to HealthPlan' actual damages, HealthPlan is entitled to recover its reasonable attorneys' fees and court costs, pursuant to § 501.2105, Florida Statutes.

## COUNT III: COMMON LAW UNFAIR COMPETITION
### (Against Dixit, Kutsomarkos, E-Integrate, Media Shark, Knowmentum)

93.     HealthPlan incorporates by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

94.     Dixit's, Kutsomarko's, E-Integrate's, Media Shark's and Knowmentum's acts constitute unfair competition in that:

(a)     Said acts enable and will continue to enable Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum's to obtain the benefit of and trade on the goodwill of HealthPlan and the ExhangeLink® software;

(b)     Said acts damage and will continue to damage HealthPlan's goodwill in that HealthPlan does not have control over the business and products of Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum;

(c)     Said acts have caused and are likely to continue to cause confusion, mistake, or deception of the public; and

(d)     Said acts will result in the unjust enrichment of Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum

95.     Upon information and belief, Dixit's, Kutsomarkos', E-Integrate's, Media Shark's and Knowmentum's acts of unfair competition were done willfully, intentionally, and in bad faith.

96.     Dixit's, Kutsomarkos', E-Integrate's, Media Shark's and Knowmentum's acts are greatly and irreparably damaging to HealthPlan and will continue to be greatly and

irreparably damaging to HealthPlan unless enjoined by this Court, as a result of which HealthPlan is without an adequate remedy at law.

97.     HealthPlan has sustained damages as a result of the Defendants' activities in an amount to be ascertained at trial, but in no event less than $75,000.

**COUNT IV: COPYRIGHT INFRINGEMENT**
**(Against Dixit, Kutsomarkos, E-Integrate, Media Shark, Knowmentum)**

98.     HealthPlan incorporates by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

99.     This is a count for violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

100.     The works that are included in the HealthPlan Copyrights are original and copyrightable subject matter, and are all owned by HealthPlan.

101.     At all material times, HealthPlan has been either the author and owner, or assignee, of the Source Code, the HealthPlan Copyrighted Materials, and the HealthPlan Copyrights, as identified in paragraph 28, *supra*.  The HealthPlan Copyrighted Materials include without limitation, the HealthPlan Copyrighted Scripts and the HealthPlan Copyrighted Videos.

102.     For each of the HealthPlan Copyrights identified in paragraph 28, *supra*, HealthPlan holds a copyright registration certificate from the United States Copyright Office.

103.     As detailed in paragraphs 57-72, *supra*, without authorization, Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum reproduced, copied, distributed copies of, prepared derivative works based on, and displayed the HealthPlan Copyrights, including the HealthPlan Copyrighted Videos and the HealthPlan Copyrighted Scripts.  Such infringement included at least the reproducing, copying, distributing copies of, and preparing derivative

works based on the HealthPlan Copyrighted Videos and the HealthPlan Copyrighted Scripts, as well as displaying of the Infringing Works to at least Dr. Michael Bojkovic, beginning in or around late 2014.

104. The Infringing Works based on the HealthPlan Copyrighted Scripts include at least the scripts used by Kutsomarkos and Dixit in connection with the video presentation at Exhibit 4-7 and 9.

105. The Infringing Works based on the HealthPlan Copyrighted Videos include at least those depicted in part in Exhibits 4-7 and 9.

106. As detailed in paragraphs 57-72, Defendants' infringement has been committed in connection with the advertising and promotional activities of Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum, which in turn has caused injury, including advertising injury, to HealthPlan.

107. As a result of Defendants' copyright infringement, HealthPlan has suffered and continues to suffer actual damages in an amount according to proof at trial.

108. As a further result of Defendants' copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the HealthPlan Copyrights, including but not limited to payments for and investments in the FIT software and/or marketing materials. HealthPlan is entitled to disgorgement of such profits.

109. Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum knew the infringed works belonged to HealthPlan and that they did not have permission to exploit HealthPlan's works.

21

110.    Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum knew their acts constituted copyright infringement.

111.    Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum acted despite an objectively high likelihood that their actions infringed HealthPlan's Copyrights, including the HealthPlan Copyrighted Scripts and HealthPlan Copyrighted Videos, which Dixit and Kutsomarkos knew to be valid.

112.    Accordingly, Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum acts of copyright infringement were willful and intentional and in conscious disregard for HealthPlan's rights within the meaning of the Copyright Act.

113.    As a result of their wrongful conduct, Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum are liable to HealthPlan for copyright infringement pursuant to 17 U.S.C. § 504.

114.    Defendants continue to infringe the HealthPlan Copyrights by copying, making derivative works of and reproducing the HealthPlan Copyrights in connection with promoting sham investments to third parties, thus causing HealthPlan and the public irreparable harm.   Accordingly, HealthPlan is entitled to injunctive relief, preventing Defendants from impairing HealthPlan's ability to exploit the ExchangeLink® system, while preventing the Defendants from defrauding the public.

115.    HealthPlan is entitled to recover its costs pursuant to 17 U.S.C. § 505.

## COUNT V: CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against Dixit and Kutsomarkos)

116.    HealthPlan incorporates by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

117.    Multiple individuals and entities, including at least Dixit, Kutsomarkos, Media Shark and Knowmentum, directly infringed the HealthPlan Copyrights as detailed in Count IV, *supra*.

118.    Dixit and Kutsomarkos, induced, caused and materially contributed to the infringing acts of E-Integrate, Media Shark and Knowmentum by encouraging, inducing, allowing and assisting such entities to make derivative works of, reproduce and distribute the HealthPlan Copyrights.   Such conduct included Dixit and Kutsomarkos and materially contributing materials and documents comprising the HealthPlan Copyrights to E-Integrate, Media Shark and Knowmentum.   It also included the unauthorized copying, making derivative works of and distributing the Infringing Works to third parties, including at least Dr. Bojkovic.

119.    Dixit and Kutsomarkos had reason to know and actual knowledge of the infringing acts by E-Integrate, Media Shark and Knowmentum relating to the HealthPlan Copyrights.

120.    Dixit and Kutsomarkos did not act to stop their contribution to infringement of the HealthPlan Copyrights by E-Integrate, Media Shark and Knowmentum.

121.    Such contributory infringement has been committed in connection with the advertising and promotional activities of Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum, which in turn has caused advertising injury to HealthPlan.

122.    The acts and conduct of Dixit and Kutsomarkos, as alleged above, constitute contributory copyright infringement.

## COUNT VI: INDUCED COPYRIGHT INFRINGEMENT
### (Against Dixit and Kutsomarkos)

123.    HealthPlan incorporates by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

124.    Multiple individuals and entities, including at least Dixit, Kutsomarkos, Media Shark and Knowmentum, directly infringed the HealthPlan Copyrights.

125.    Dixit intentionally induced the infringing acts of Kutsomarkos, E-Integrate, Media Shark and Knowmentum by knowingly encouraging, inducing, allowing and assisting such individuals and entities to copy, create derivative works of, and distribute the HealthPlan Copyrights to Dr. Bojkovic, among others.  Among other things, Dixit intentionally induced Kutsomarkos to commit infringing acts by misrepresenting to Kutsomarkos that the HealthPlan Copyrights were e-Integrate assets purchased by Dixit for the FIT project.  Dixit knew at all relevant times that e-Integrate never owned or had authority to use the HealthPlan Copyrights and that Dixit never purchased any HealthPlan Copyrights from e-Integrate.

126.    Based in whole or in part on Dixit's knowing misrepresentations, Kutsomarkos directly infringed the HealthPlan Copyrights by at least engaging in the unauthorized reproducing, copying, distributing copies of, preparing derivative works based on the HealthPlan Copyrighted Videos and the HealthPlan Copyrighted Scripts, as well as displaying of the Infringing Works to Dr. Michael Bojkovic, beginning in or around late 2014.

127.    Additionally, Kutsomarkos induced the infringing acts of Media Shark and Knowmentum by knowingly and intentionally inducing such entities, through her own conduct detailed herein, to at least reproduce, copy, distribute copies of, prepare derivative works based on the HealthPlan Copyrighted Videos and the HealthPlan Copyrighted Scripts, as well as display the Infringing Works to Dr. Michael Bojkovic, beginning in or around late 2014.

128.    Based in whole or in part on Kutsomarkos' inducement, Media Shark and Knowmentum directly infringed the HealthPlan Copyrights by at least engaging in unauthorized copying, creating derivative works of and distributing the HealthPlan Copyrights.

129.    Dixit and Kutsomarkos' induced copyright infringement has been committed in connection with the advertising and promotional activities of Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum, which in turn has caused advertising injury to HealthPlan.

130.    The acts and conduct of Dixit and Kutsomarkos, as alleged above, constitute induced copyright infringement.

## COUNT VII: VICARIOUS COPYRIGHT INFRINGEMENT
### (Against Dixit and Kutsomarkos)

131.    HealthPlan incorporates by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

132.     Multiple individuals and entities, including at least Dixit, Kutsomarkos, Media Shark, E-Integrate and Knowmentum, directly infringed HealthPlan's copyrighted works as detailed in Count IV, *supra*.

133.      Dixit, had the right, and ability to control the infringing acts of Kutsomarkos, E-Integrate, Media Shark and Knowmentum, each being an individual or entities that directly infringed the HealthPlan Copyrights.     In particular, Dixit owned E-Integrate and Knowmentum at all relevant times.  Further, Dixit entered into contracts with Kutsomarkos and Media Shark that permitted Dixit the right and ability to control their infringing acts.

134.     Dixit obtained a direct financial benefit from the infringing activities of the individuals or entities who directly infringed the HealthPlan Copyrights.  Among other things, Dixit received hundreds of thousands of dollars in payments either directly or indirectly from Dr. Bojkovic.

135.     As an owner of Media Shark at relevant times, Kutsomarkos, had the right, and ability to control the infringing acts of Media Shark.

136.     Kutsomarkos obtained a direct financial benefit in the form of significant payments from at least Media Shark in connection with Media Shark's direct infringement of the HealthPlan Copyrights and use of the Infringing Works.

137.     The acts and conduct of Dixit and Kutsomarkos, as alleged above, constitute vicarious copyright infringement. Such vicarious infringement has been committed in connection with the advertising and promotional activities of Dixit, Kutsomarkos, E-Integrate, Media Shark and Knowmentum, which in turn has caused advertising injury to HealthPlan.

## COUNT VIII: BREACH OF CONTRACT
### (Against E-Integrate)

138.     HealthPlan hereby adopts and incorporates the allegations in paragraphs 1 through 72 as if set forth fully herein.

139.     This is a count for breach of written contract against E-Integrate.

140.     HealthPlan and E-Integrate entered into the HEALTHPLAN-EI Agreement, which required that E-Integrate return to the Source Code to HealthPlan.

141.     E-Integrate breached the HEALTHPLAN-EI Agreement by, among other things, representing that it would return the Source Code to HealthPlan and not retain any of the Source Code.

142.     In fact, E-Integrate retained all or part of the Source Code.

143.     E–Integrate breached the HEALTHPLAN-EI Agreement by, among other things, disclosing Confidential Information (as defined therein) to unauthorized third parties. Specifically, E-Integrate disclosed such Confidential Information to Dr. Bojkovic, Dixit, Kutsomarkos, Media Shark and Knowmentum.

144.     HealthPlan has been significantly damaged by E-Integrate's breach of the HEALTHPLAN-EI Agreement, including without limitation: (i) the amount of the Payment to E-Integrate; (ii) the value of the HealthPlan Trade Secrets; (iii) the cost to repair damaged parts of the Source Code; (iv) the diversion of a significant amount of manpower away from other projects to attempt to fill the gaps left after the initial departure of the E-Integrate resources; (v) damage to client relationships caused by delays in deliverables; and (vi) the

cost of outside legal services to represent HealthPlan in negotiations with other sources to secure replacement resources.

## COUNT IX: BREACH OF CONTRACT
### (Against Media Shark)

145.     HealthPlan hereby adopts and incorporates the allegations in paragraphs 1 through 72 as if set forth fully herein.

146.     This is a count for breach of contract by Media Shark of the Media Shark Agreement with HealthPlan.

147.     HealthPlan and Media Shark entered into the Media Shark Agreement, which required that Media Shark not perform any activities or services for others so as to present a conflict of interest with the activities or services provided for HealthPlan.

148.     The Media Shark Agreement further required that Media Shark not disclose Confidential Information (as defined in the Media Shark Agreement) to any third party.

149.     Media Shark breached the Media Shark Agreement by, among other things, undertaking projects for third parties, including Knowmentum, e-Integrate, and Dr. Bojkovic that created clear conflicts of interest with activities and services Media Shark was providing to HealthPlan.

150.     Media Shark also breached the Media Shark Agreement by disclosing HealthPlan's Trade Secrets, the HealthPlan Copyrights and other Confidential Information to Knowmentum, Dixit, E-Integrate and Dr. Bojkovic.

151.     HealthPlan has been significantly damaged by Media Shark's breach of the Media Shark Agreement, including but without limitation: damages associated with the

unauthorized dissemination of HealthPlan's Trade Secrets and other Confidential Information to unauthorized third parties and competitors of HealthPlan; and depriving HealthPlan of the exclusive use of the HealthPlan Trade Secrets and Confidential Information.

## PRAYER FOR RELIEF

WHEREFORE, HealthPlan prays for a Judgment for Damages, Permanent Injunctive Relief and Declaratory Relief as follows:

A.     Permanent Injunctive relief ordering that Defendants', their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, who receive actual notice of the Order by personal service or otherwise, be preliminarily and permanently enjoined and restrained from possessing or using the Source Code and HealthPlan Trade Secrets and HealthPlan Copyrights, and from using, promoting or marketing any copies or derivatives thereof;

B.     Ordering that Defendants, jointly and severally, be required to account for and pay over to HealthPlan an amount equal to Defendants' actual damages, and all of the gains, profits, savings, and advantages realized by Defendants as a result of Defendants' trade secret misappropriation, unfair competition, copyright infringement and deceptive and unfair trade practices, and, if Defendants' actions are deemed willful and intentional, then such amount should be increased to an amount not exceeding three times of such amount.

C.     Ordering that Defendants pay over to HealthPlan an amount sufficient to compensate HealthPlan for corrective advertising in connection with Defendants' unfair competition.

D. Ordering that E-Integrate pay over to HealthPlan the amount $775,420.69 in connection with the HEALTHPLAN-EI Agreement.

E. Ordering that E-Integrate pay over to HealthPlan all reasonable attorney's fees incurred as a result of Defendants' breach of the HEALTHPLAN-EI Agreement.

F. Ordering that Media Shark pay over to HealthPlan all amounts paid to Media Shark in connection with the Media Shark Agreement.

G. Ordering that Media Shark pay over to HealthPlan all reasonable attorney's fees incurred as a result of Media Shark's breach of the Media Shark Agreement.

H. An order reimbursing HealthPlan for the costs of this action.

I. An order reimbursing HealthPlan for any and all reasonable attorney's fees incurred as a result of Defendants' misappropriation of trade secrets, unfair competition, copyright infringement and deceptive and unfair trade practices.

J. An order awarding pre- and post-judgment interest, to the extent allowable; and

K. Any and all other relief as deemed proper or just by this Court.

## JURY DEMAND

HealthPlan hereby demands trial by jury on all issues so triable as a matter of right.

Dated:                                          Respectfully submitted,

                                               By: _/s/Alejandro J. Fernandez_
                                               Alejandro J. Fernandez
                                               Fla. Bar No. 32221
                                               Board Certified in Intellectual Property Law

E-mail:  AFernandez@BrinksGilson.com
Stephen J. Leahu
Fla. Bar. No. 54037
Board Certified in Intellectual Property Law
E-mail: SLeahu@BrinksGilson.com
**BRINKS GILSON & LIONE, P.A.**
401 E. Jackson Street, Suite 3500
Tampa, FL 33602
Telephone No.  (813) 275-5020
Telefacsimile No.  (305) 275-5021

William H. Frankel
IL ARDC No. 3127933
*To be admitted Pro Hac Vice*
wfrankel@brinksgilson.com
Andrew J. Avsec
IL ARDC No. 6292313
*To be admitted Pro Hac Vice*
aavsec@brinksgilson.com
**BRINKS GILSON & LIONE, P.C.**
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
Telephone No. (312) 321-4200
Telefacsimile No. (312) 321-4299

*Counsel for Plaintiff*