**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CASE NO. 8:18-cv-2608-SDM-AAS

HEALTHPLAN SERVICES, INC.,
a Florida corporation,

      Plaintiff,

v.

RAKESH DIXIT, an individual,
FERON KUTSOMARKOS,
an individual,
E-INTEGRATE, INC.,
a Florida corporation,
KNOWMENTUM, INC,
a Florida corporation,
and
MEDIA SHARK PRODUCTIONS, INC.,
a Florida corporation,

      Defendants.

_____/

**PLAINTIFF'S OPPOSITION TO KUTSOMARKOS' AND E-INTEGRATE'S**
**MOTION TO DISMISS**

      Plaintiff, HealthPlan Services, Inc. ("HealthPlan"), hereby submits this opposition to

Defendants Feron Kutsomarkos' ("Kutsomarkos") and E-Integrate, Inc.'s ("E-Integrate")

Motion to Dismiss (ECF No. 25) ("Motion").

**I.      INTRODUCTION**

      As a threshold matter, E-Integrate is an administratively dissolved entity that is

statutorily barred from defending itself in this action.  This alone warrants denial of the

Motion to Dismiss as to E-Integrate.

The Complaint is well-plead.   Kutsomarkos and E-Integrate's arguments to the contrary fail for the following reasons.   First, the Complaint squarely meets the extremely low bar for notice pleading—placing all the Defendants on fair notice of the claims against them.    Second, the arguments about failure to name indispensable parties lack any substantive analysis and amount to an effort to muddle this case with unrelated disputes and parties that have no legal interest in the present dispute.   Third, the FDUTPA count is *not*, as Defendants argue, related to the underlying agreements with HealthPlan.   Rather, as alleged in great detail, the FDUTPA count is about Defendants' use of HealthPlan's intellectual property to deceive consumers such as Dr. Bojkovic into investing in a sham.   Fourth, Kutsomarkos cannot avoid personal liability because she is a managing member supervising and benefiting from intellectual property infringement, and a direct tortfeasor.   Accordingly, the Motion to Dismiss should be denied.

## II.    AS AN ADMINISTRATIVELY DISOLVED ENTITY, E-INTEGRATE CANNOT DEFEND THIS ACTION

As a threshold matter, under Florida law, E-Integrate, Inc. cannot defend itself because it was administratively dissolved by the state.   E-Integrate, Inc. was administratively dissolved on Sept. 25, 2015 for failing to file an annual report.   *See* Administrative Dissolution Notice, Exhibit 1.    A corporation that is administratively dissolved for failure to file an annual report and pay the applicable fees/taxes is deprived of the right to "maintain or defend any action in any court of this state until such report is filed and all fees and taxes due" are paid.   Fla. Stat. § 607.1622(8).   This statutory provision bars a party from defending an action until it has filed its annual report and paid its fees and taxes.   *Loudo Trailer, Inc. v.*

*Bray Trailers, Inc.,* 2008 U.S. Dist. LEXIS 127786, *3-4 (M.D. Fla. Mar. 14, 2008).

## III.    STANDARDS FOR MOTIONS TO DISMISS

The threshold of sufficiency that a complaint must meet is low.  *Ancata v. Prison Health Servs. Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).  It is well settled that a complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts" that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45 (1957); *Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103,104 (11th Cir. 1982).  In deciding a motion to dismiss, courts are constrained to the four corners of the complaint.  See *Crowell v. Morgan Stanley Dean Witter Services, Co., Inc.,* 87 F. Supp. 2d 1287 (S.D.Fla.2000).  Additionally, in its examination of the complaint, a court must accept a plaintiff's well-pled facts as true and construe the complaint in the light most favorable to plaintiff.  *Sundance Apts. I, Inc. v. Gen. Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1219 (S.D. Fla. May 6, 2008) (Citations omitted).

## IV.    THE COMPLAINT IS NOT A SHOTGUN PLEADING BECAUSE IT ARTICULATES CLAIMS WITH ENOUGH CLARITY FOR DEFENDANTS TO RESPOND

HealthPlan's Complaint is not a shotgun pleading. The Eleventh Circuit has long characterized a shotgun pleading as "[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." *Lampkin-Asam v. Volusia County Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008); *Anderson v. District Bd. of Tr. of Cent. Florida Cmty Coll.,* 77 F. 3d 364, 366 (11th Cir. 1996) (explaining that shotgun pleadings are those in which it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.").  Pursuant to Rule 8(a)(2), the "Plaintiff has

the burden to provide Defendants with a 'short and plain statement of the claim'" showing that the pleader is entitled to relief. *See Anderson*, 77 F. 3d at 366. The common characteristic of all shotgun pleadings is the failure to give adequate notice, pursuant to Fed. R. Civ. P. 8, to apprise defendants of the claims against them and the grounds for each claim. *Yeyille v. Miami Dade Cty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016).

### A. The Complaint Does Not Fall Within Any Of The Four Recognized Types of Shotgun Pleadings

The Eleventh Circuit recognizes four basic types of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts"; (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Yeyille,* 643 F. App'x at 884. The Complaint does not fall within any of these four recognized types of shotgun pleadings.

### 1. The Counts In The Complaint Do Not Adopt Allegations Of All Preceding Counts

A review of the Complaint reveals that each Count against Defendants incorporates by reference the factual allegations of its general allegations in paragraphs 1-72, *not* all preceding allegations *of all preceding counts*. Compl. ¶¶ 73, 85, 93, 98, 116, 123, 131, 138, and 145, ECF No. 1. Florida district courts, including this one, have found that incorporating general factual allegations into all counts does not make a complaint a *de facto* shotgun pleading. *See Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1207 (M.D. Fla.

Apr. 23, 2004) (finding that incorporating 168 paragraphs of general allegations into each count did not make complaint a shotgun pleading); *see also JPMorgan Chase Bank, N.A. v. Hayhurst Mortg. Inc.*, 2010 U.S. Dist. LEXIS 107661, *3 (S.D. Fla. Oct. 8, 2010) (acknowledging that the plaintiff can incorporate its general allegations into each separate count without automatically transforming the operative complaint into an impermissible shotgun pleading).

### 2. The Complaint Is Not Replete With Conclusory, Vague, and Immaterial Facts

Defendants also argue that the Complaint is a shotgun pleading because it includes "hearsay materials" that Defendants maintain are "not obviously connected to the prosecution of this cause of action." Motion, p. 4. First, as a threshold matter, "hearsay is a rule of evidence, not applicable to a pleading." *See Pronman v. Styles*, 2013 U.S. Dist. LEXIS 104995, at *8-9 (S.D. Fla. July 26, 2013) (holding that the admissibility of evidence is determined at trial). As such, Defendants' hearsay argument lacks merit.

Second, the referenced materials cited in the Complaint are directly relevant to HealthPlan's claims. For example, the Amended Complaint in *Bojkovic v. Dixit*, which is referenced in HealthPlan's Complaint, is titled "Defendants Stole the FIT Software Exchange Platform from HPS." *See* Motion, Exhibit A, p20, ECF No. 25. It is difficult to imagine an exhibit more probative of HealthPlan's claims in this case.[1] In this regard, HealthPlan's reference to facts from the *Bojkovic* litigation is permissible. *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y Apr. 24, 2015) (permitting plaintiffs to borrow allegations from

a prior-filed complaint).  Third, the three contracts included as Exhibits 1-3 to the Complaint show steps taken by HealthPlan to preserve the secrecy of its trade secrets.  Moreover, the contracts of Exhibits 2 and 3 are the subject of HealthPlan's counts VIII and IX for breach of contract.  Fourth, E-Integrate's argument that it should not be lumped together with other Defendants is self-defeating.  The fact that E-Integrate understands the claims enough to assert substantive arguments about pre-existing property/residuals (Motion, p6) establishes that E-Integrate has fair notice of the specific claims against it, thus satisfying Rule 8.

### 3.   The Complaint Properly Separates Each Cause of Action Into Separate Counts

The Complaint complies with Fed. R. Civ. P. 10(b), which requires a party to state its claims for relief in numbered paragraphs and in separate counts. *See, e.g., Anderson*, 77 F. 3d at 366.  The Complaint has numbered paragraphs, and the claims for relief are segregated into nine discrete Counts; each Count clearly delineates the offending Defendant(s).  As a result, HealthPlan did not violate Rule 10(b)'s one claim per count requirement.

### 4.   The Complaint Specifies The Claim(s) Against Each Defendant

Defendants argue that the Complaint "asserts multiple claims against multiple Defendants without specifying which of the Defendants are responsible for which acts or omissions, or which of the Defendants the claims are brought against."  Motion, p. 5.  There is nothing improper about lumping together defendants in alleging claims for relief from actions by the Defendants acting jointly.  *See Sams v. Prison Health Services, Inc.*, 2007 U.S. Dist. LEXIS 97811, *9 (M.D. Fla. Mar. 14, 2007) (stating that the lumping together of

---

[1] To be clear, the *Bojkovic* litigation claims do not assert any claims that materially affect, or which themselves

defendants into categories is permissible under both Fed. R. Civ. P. 8(a) and 12(b)(6)).   A complaint against multiple defendants is read as making the same allegation against each defendant individually.   *Id.*   Here, each count alleges which defendants acted together as well as the cause of action they each violated.   Indeed, the heading of each count identifies each accused Defendant by name.   This is not an instance where all Defendants were mindlessly named in all counts.   To the contrary, each individual Defendant was specifically identified only in the counts against that individual Defendant.

Defendants' insistence on extremely detailed allegations as to precise activities of each Defendant goes far beyond providing adequate notice to each Defendant, which is all that is required by Rule 8.   *See FTC v. Centro Natural Corp.*, 2014 U.S. Dist. LEXIS 180549, *18 (S.D. Fla. Dec. 10, 2014) (holding that the plaintiff's failure to separately allege the precise activities of 11 defendants was proper even under the heightened pleading requirements of Rule 9(b)).

Further, Defendants incorrectly argue that *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) establishes a bright-line prohibition against grouping several parties in one count.   Even under *Weiland*, grouping several parties is only impermissible when a claim does not provide individual Defendants with adequate notice of the claims against them. *Weiland*, 792 F.3d at 1323. Courts permit claims against multiple defendants where the activities undertaken by each defendant were alleged.   *See, e.g., FTC v. Centro Natural Corp.*, 2014 U.S. Dist. LEXIS 180549 (S.D. Fla. Dec. 10, 2014) (holding that

---

are materially affected by HealthPlan's claims in the present action.   *See infra*, Section V, p10.

failure to separately allege the precise activities of the individual defendants in a group did not compel dismissal for failure to state a claim, even under the heightened pleading standard of Rule 9(b)).  As mentioned above, this is precisely the case here because the Complaint specifically alleges, to the extent practicable at this stage of the pleadings, individual actions each Defendant committed.

> **B.** Lastly, Defendants argue that HealthPlan must parse the precise activities undertaken by each individual, and the specific activities of entities closely held/controlled by such individuals.  Motion, pp. 5-6.  Defendants specifically identify Count I, ¶¶ 81-83 as an example of the need for more detailed facts about each Defendant.  The Defendants overlook, however, the express allegations that Dixit and Kutsomarkos worked together, and own(ed) or controlled the remaining Defendants identified in ¶¶ 81-83.  (Compl. ¶¶ 22, 36, 47, 61-63, ECF No. 1)  Combined with the general allegations about E-Integrate's, Dixit's and Kutsomarkos' individual and joint conduct (*see* Compl. ¶¶ 56, 58-72), which are incorporated into Count I (Compl. ¶ 73), the Defendants each have full and fair notice of the trade secret misappropriation alleged against them in Count I.  The same applies for Counts II-IX.**The Complaint Provides A Short And Concise Statement Of Each Claim For Relief**

The Complaint complies with Fed. R. Civ. P. 8(a)(2) because it is not "confusing, incoherent, and clogged with seemingly irrelevant factual allegations." *Lampskin- Asam*, 261 F. App'x at 277.  On its face, the Complaint is coherent.  In general allegations marked by guidepost headings, the Complaint identifies the parties (¶¶ 6-15), HealthPlan's software platform at issue and related intellectual property (¶¶ 16-34), and Defendants' extensive misconduct resulting in this dispute (¶¶ 35-71).  The Complaint concludes with nine separate and distinct counts, each of which succinctly claims relief against each respective defendant.  The Complaint is detailed enough to place Defendants on notice as to the allegations against them, thus meeting the requirements of Fed. R. Civ. P. 8.  The Complaint hardly can be compared to the types of complaints that courts classify as "quintessentially" shotgun

pleadings. *See, e.g., Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001) ("each count is replete with factual allegations that could not possibly be material to that specific count, and any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.").

### C. The Appropriate Remedy For Shotgun Pleadings Is A Motion for a More Definitive Statement Rather Than A Motion to Dismiss

Even if the Complaint were a shotgun pleading, which it is not, the appropriate remedy and proper procedure would be for the Court to order an amendment of the Complaint, not to dismiss the entire action. The Eleventh Circuit has long held that when confronted with a shotgun pleading, the appropriate remedy is to move for a more definite statement pursuant to Fed. R. Civ. P 12(e). *Anderson*, 77 F.3d at 366.

## V. FOCUS IT, LLC, BOJKOVIC, AND ULTRAMATICS ARE NOT INDISPENSIBLE PARTIES TO THIS ACTION

To grant a dismissal for failure to join an indispensable party under Federal Rule of Evidence 19(a), courts within the Eleventh Circuit must determine "either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings." *Laker Airways, Inc. v. British Airways, PLC,* 182 F.3d 843, 847 (11th Cir. 1999) (citing *Wymbs v. Republican State Exec. Comm.*, 719 F.2d 1072, 1079 (11th Cir. 1983)). The burden is on the moving party "to show the nature of the unprotected interests of the absent parties." *W. Peninsular Title Co. v. Palm Beach Cty.*, 41 F.3d 1490, 1492 (11th Cir. 1995). Here, Defendants fall woefully short of showing the nature of the unprotected interest of absent parties. Defendants make no showing of how, in the absence of other parties: (1) HealthPlan cannot receive complete relief from the

9

Defendants, or (2) the absent parties' interests will be adjudicated in this case.

### A.  Focus IT, LLC

Defendants argue that Focus IT, LLC is an indispensable party because it is a partnership under Florida's Revised Uniform Partnership Act ("FRUPA") that "may sue and be sued in the name of the partnership" and that, accordingly, "Defendants are not protected from a separate or concurrent action against them by the 'Dixit-Bojkovic' Partnership (a/k/a 'FOCUS IT LLC')."  Motion, p. 9.  However, Defendants do not identify any "separate or concurrent action" that could be asserted against them by the "Dixit-Bojkovic Partnership (a/k/a FOCUS IT LLC)."  That is, Defendants' possibly separate or concurrent action is purely hypothetical.  It is exactly for this reasons that courts find that the fact that a defendant *may be* liable in a hypothetical future action is not enough to make a third party necessary to a suit.  *Mandel v. Howard*, 2012 U.S. Dist. LEXIS 43948, *11 (S.D. Fla. March 28, 2012). Moreover, even if Focus IT, LLC could sue Defendants, it would not be for the same causes of action and facts as in this case and therefore, would not lead to double, multiple, or inconsistent obligations.

### B.  Michael Bojkovic

The only reference to Michael Bojkovic ("Dr. Bojkovic") is in the "introduction and summary" and heading in Section II of Defendants' Motion.  Motion, pp. 3 and 7.  Given this, the Court has nothing to address relative to that purported part of Defendants' motion. *See Variable Annuity Life Ins. Co. v. Dull*, 2009 U.S. Dist. LEXIS 96555, fn. 1 (S.D. Fla. Sept. 21, 2009) (refusing to consider defendant's motion to dismiss for failure to join an indispensable party because defendant did not provide any analysis, argument or authority in

support of same).

In any case, Dr. Bojkovic is not an indispensable party because complete relief can be granted with the present parties and he does not have an interest in the disposition of the current proceedings.   Dr. Bojkovic, it appears, was merely a victim of Defendants' misconduct, not a perpetrator of it.   Indeed, while Dr. Bojkovic may bear witness to Defendants' wrongdoing, Defendants are silent about how Dr. Bojkovic engaged in any misconduct that would make him liable for the counts-in-suit in this case, i.e., trade secret misappropriation, unfair competition, FDUTPA violations, copyright infringement or breach of contract.   Further, Dr. Bojkovic is aware of the present action but has neither sought to intervene nor furnished an affidavit of interest.   Additionally, Defendants do not show how they are at risk of double, multiple or inconsistent liability from a failure to name Dr. Bojkovic here.

### C.  Ultramatics

Defendants' allegation that Ultramatics is an indispensable party is based on conclusory statements: "a failure to join Ultramatics would subject Defendants to a substantial risk of incurring double, multiple or otherwise inconsistent obligations;" and "Plaintiff or Defendant could commence another suit related to the same claim, invoices, and software" if Ultramatics "is not bound by the outcome of this matter."   Motion, p. 10. Similar to Defendants' argument with respect to Focus IT, LLC, the type of suit Defendants offer is purely hypothetical and does not warrant dismissal of the present action.   *Mandel*, at *11.

Defendants present no authority or facts to support these arguments, and thus have

failed to meet their burden.  *Variable*, at fn. 1.

## VI.   THE COMPLAINT PROPERLY PLEADS A FDUTPA COUNT REGARDING DEFENDANTS' MULTIPLE DECEPTIVE ACTS.

The FDUTPA count in this case squarely meets the notice pleading standard.  To plead a cause of action for damages under the FDUTPA, a party must sufficiently allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *Sundance*, 581 F. Supp. 2d at 1220 (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

### A. The Complaint Properly Alleges Deceptive Acts, Unfair Competition, and Causation

In assessing whether an act is a deceptive or unfair practice, "[t]he Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'"  *Id.* (citing *Zlotnick,* 480 F.3d 1281, 1284 (11th Cir. 2007).  Further, in *Sundance*, an allegation that the deception resulted in harm to the plaintiff was sufficient to meet the causation requirement.  *Id.* at 1221.

Multiple courts have found that selling infringing intellectual property to consumers supports a FDUTPA violation.  Courts have found that deceptively using, selling, and/or disseminating infringing intellectual property to consumers, rather than just engaging in such infringement, supports a FDUTPA violation.  *Pegasus Imaging Corp. v. Northrop Grumman Corp.*, 2008 U.S. Dist. LEXIS 99985, *11 (M.D. Fla. Nov. 25, 2008) (holding that plaintiff's allegation that defendants provided copyrighted software material to end users created an inference of a likelihood of consumer confusion under FDUTPA); R. *Miller Architecture,*

*Inc. v. Edgington Enters., Inc.*, 2006 U.S. Dist. LEXIS 95238 (M.D. Fla. Feb. 12, 2007) (finding that the plaintiff has a viable FDUTPA claim by alleging that defendant's "deceptive misuse" of the plaintiff's architectural plans in a "passing off" scheme could cause "confusion" and "potential liability"); *Myeress v. Marmont Hill, Inc.*, 2018 U.S. Dist. LEXIS 183153, *8 (S.D. Fla. Oct. 25, 2018) (finding that plaintiff's allegation that defendants distributed certificates of authenticity that falsely claimed originality and genuineness of plaintiff's copyrighted work constituted an unfair and deceptive practice under FDUTPA).

Kutsomarkos and E-Integrate completely misstate the Plaintiff's FDUPTA claim with a straw man argument about some breach of contract claim. Here, however, the FDUTPA count relates to Defendants' unlawful use of HealthPlan's intellectual property to deceive consumers into investing in a sham company that had no rights in the intellectual property. Compl. ¶¶ 59-72 and 85, ECF No. 1. The Complaint expressly alleges that Defendant E-Integrate took copies of HealthPlan's source code and trade secrets. Compl. ¶ 60, ECF No. 1. Further, Defendant Kutsomarkos took up-to-date, copyrighted marketing materials and other trade secrets from HealthPlan. Compl. ¶ 59, ECF No. 1. Kutsomarkos provided HealthPlan's copyrighted marketing scripts and other misappropriated materials and trade secrets to Dixit and others. Compl. ¶ 61, ECF No. 1. Kutsomarkos and Dixit then "rebranded" and "repackaged" HealthPlan's intellectual property as their own "Fit" system. Compl. ¶¶ 62-63, ECF No. 1. Together, Kutsomarkos and Dixit presented the repackaged "Fit" system to Dr. Bojkovic. Compl. ¶ 67, ECF No. 1. Specifically, they made the presentations with the purpose of deceiving consumers, such as Dr. Bojkovic, into investing in a sham company. Compl. ¶ 59, ECF No. 1. Consumers, such as Dr. Bojkovic, were likely

to be and actually were confused and defrauded by Defendant's conduct.  Compl. ¶ 71, ECF No. 1. Such acts, viewed in a light most favorable to HealthPlan, constitute representations, omissions and practices likely to deceive consumers acting reasonably in the circumstances. Accordingly, the Complaint meets the "deception" element of a FDUTPA count.

The Complaint likewise meets the "causation" element of FDUTPA.  The Complaint alleges that HealthPlan suffered actual damages as a result of the deceptive acts of Kutsomarkos and E-Integrate.  Compl. ¶ 89, ECF No. 1.  In addition, the Complaint alleges that Defendants' deceptive acts in taking HealthPlan's intellectual property for use by third parties harmed HealthPlan because it devalued what otherwise was HealthPlan's exclusively owned intellectual property.  Compl. ¶ 91, ECF No. 1.  These allegations, viewed in a light most favorable to HealthPlan, meet the causation element of FDUTPA.

Kutsomarkos and E-Integrate's FDUTPA argument incorrectly focuses on underlying agreements with HealthPlan.  Motion to Dismiss 11, ECF No. 25.  As detailed *supra* Section VI.A at 11, however, it is Defendants' misuse of HealthPlan's intellectual property to deceive consumers into sham investments that is the basis for the FDUTPA count, not the underlying agreements.

### B.  The Complaint Properly Alleges Damages Theories

To provide proper notice of its FDUTPA claims, plaintiffs are only required to allege a theory that would entitle them to actual damages, not the facts needed to determine the precise amount they would receive if they were to prevail.  *Coffey v. WCW & Air, Inc.*, 2018 U.S. Dist. LEXIS 148122, *20 (N.D. Fla. Aug. 30, 2018); *Felice v. Invicta Watch Co. of Am.*, 2017 U.S. Dist. LEXIS 122895, *13 (S.D. Fla. Aug. 4, 2017).

HealthPlan alleges that Kutsomarkos' and E-Integrate's deceptive and unfair trade practices actually damaged HealthPlan.  (Compl. ¶ 91, ECF No. 1)  According to the Complaint, HealthPlan has not yet determined the amount of damage caused by Defendants' misconduct.  (Compl. ¶ 90, ECF No. 1)  Nevertheless, HealthPlan plead at least two damage theories. One damage theory is that a minimum measure of damages is the amount paid to create the intellectual property that Defendants used in their deceptive acts.  (Compl. ¶ 90, ECF No. 1)  Another damage theory is that the Defendants' deceptive acts diminished the value of HealthPlan's intellectual property. (Compl. ¶ 91, ECF No. 1)

At the motion to dismiss stage, these two damage theories satisfy the minimum pleading requirements.  *Id.*

### C.  Defendants' Deceptive Acts Occurred Within the Statute of Limitations

Defendants incorrectly argue that the deceptive acts at issue occurred outside the statute of limitations.  They do this by incorrectly focusing their arguments on agreements between HealthPlan, E-Integrate and Media Shark.  Motion to Dismiss 13, ECF No. 25.  As detailed *supra* at Section V.A. at 12-13, the alleged FDUTPA violations relate to Defendants' deceptive use of HealthPlan's intellectual property in a manner likely to deceive third parties. Such deception occurred well within the statute of limitations.

A FDUTPA action must be brought within four years of the occurrence of a violation or two years of the last payment in a transaction involved in a violation of the law, whichever is later.  Fla. Stat. §§ 501.207(5), 95.11(3)(f).  Under Florida law, a cause of action accrues, for statute of limitations purposes "when the last element constituting the cause of action occurs." *Sundance*, 581 F. Supp. 2d at 1223. (citations omitted).

In this case, to fall within the statute of limitations, the last element of the alleged FDUTPA violations must have occurred after October 23, 2014 (i.e., within four years of the filing of the Complaint).  As alleged in the Complaint, the deceptive acts at issue include Kutsomarkos' and E-Integrate's use of HealthPlan's intellectual property to deceive consumers, including Dr. Bojkovic, deceptive acts occurring after Dixit's 2014 termination from HealthPlan.  (Compl. ¶ 3, ECF No. 1)  Further, Kutsomarkos and E-Integrate's misconduct happened "[w]ithin months of Dixit's termination," when Dixit and Kutsomarkos "induced others to invest in the development of Focus IT, LLC."  (Compl. ¶ 59, ECF No. 1)  As alleged, this happened "beginning in or around *late 2014*."  (Compl. ¶ 127, ECF No. 1)  Viewed in a light most favorable to HealthPlan, such allegations certainly make it plausible that the complained of conduct occurred after Oct. 23, 2014, and thus within the statute of limitations.  Further still, Defendants' Motion itself references Defendants' FDUTPA violations extended through as recently as January 5, 2016, well within the statute of limitations.  Motion, p8, *citing* Amended Compl., ¶ 45.

**D.  The Complaint Properly Alleges that Kutsomarkos Directly Participated in FDUTPA Violations**

Kutsomarkos argues that there is no mention in the Complaint of her direct participant deceptive acts.  Motion to Dismiss 15-16, ECF No. 25.  The Complaint directly contradicts this.  It expressly accuses Kutsomarkos of directly creating the rebranded "Fit" demonstration package (Compl. ¶ 63, ECF No. 1), presenting it to others (Compl. ¶ 67, ECF No. 1) and actually succeeding at deceiving a consumer (Compl. ¶ 71, ECF No. 1).

**E.  A Bond is Inappropriate Because the FDUTPA Count Is Not Frivolous**

A bond requirement is only appropriate when needed to "provide defendants an

16

opportunity for redress for harassment rather than to discourage plaintiffs from seeking access to the courts." *Commodores Entm't Corp. v. McClary,* 2015 U.S. Dist. LEXIS 13251 (M.D. Fla.  Feb. 4, 2015) (citations omitted).  For a defendant to demonstrate the necessity for a bond, the defendant must present evidence "directed towards the merits of the cause of action which is being prosecuted." *Hamilton* at 1235.  Only plaintiffs "whose suits appear to be without merit are subject to the requirement." *Id.*

Not surprisingly, as a matter of course, Florida courts deny requests for a plaintiff to post a bond at the pleading stage of a case.  *Clipper Marine, Ltd. v. Marlow-Hunter, LLC*, 2014 U.S. Dist. LEXIS 173566, *11 (M.D. Fla. Dec. 16, 2014) (finding it "inappropriate" under § 501.211 to require plaintiff to post a bond because it was not apparent to the Court that the plaintiff's FDUTPA claim lacks merit and was asserted for the sole purpose to harass defendant); *Delta Air Lines, Inc. v. Network Consulting Assocs.*, 2014 U.S. Dist. LEXIS 122072, fn. 6 (M.D. Fla. Sept. 2, 2014) ("To the extent that the [defendants] also request that the Court require Plaintiff to post a bond in connection with this claim, pursuant to Florida Statute § 501.211(3), the Court denies the request.").  Moreover, a court may only require the party instituting a FDUTPA action to post a bond after hearing evidence as to the necessity for the bond.  Fla. Stat. § 501.211(3) (2018).  Without a hearing first, the Middle District has denied a request to post a pond as premature.  *Commodores Entm't Corp. v. McClary,* 2015 U.S. Dist. LEXIS 13251, *9 (M.D. Fla.  Feb. 4, 2015).

The present FUDTPA count is robust and well-founded on detailed allegations about Kutsomarkos' deceptive conduct.  As noted above, Kutsomarkos created the rebranded "Fit" demonstration package (Comp. ¶ 63, ECF No. 1), presented it to others (Compl. ¶ 67, ECF

No. 1) and actually succeeding at deceiving consumers by her deceptive acts (Compl. ¶ 71, ECF No. 1).   Moreover, the allegations are supported by Kutsomarkos' own sworn deposition testimony conceding she presented a script that was the "exact script" she had used with HealthPlan's clients and that she had demonstrated to consumers a system that had an "identical" look and feel as HealthPlan's system.   (Compl. ¶¶ 68-69, ECF No. 1)  Such allegations overcome any argument that the FDUTPA count is frivolous or brought to harass Kutsomarkos.   Given that HealthPlan's FDUTPA count has merit on its face, this is not the type of FDUTPA count that warrants a bond of any kind.

## VII.   THE CORPORATE VEIL DOES NOT SHIELD KUTSOMARKOS FOR MISCONDUCT AS AN OWNER/MANAGER WHO PERSONALLY BENEFITED, AND AS A DIRECT TORTFEASOR

It is long-settled that corporate officers who supervise infringing conduct for financial gain are personally liable for their conduct.  The Eleventh Circuit held in *Southern Bell Tel. & Tel. v. Associated Tel. Directory Publish*ers, 756 F.2d 801 (11th Cir. 1985), that "[a]n individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement."  *Id.* at 811.   Such an individual may be held liable even if ignorant of the infringement.  *Id.*  Moreover, individual defendants may be found personally liable for both copyright and trademark infringement.  *See Southern Bell Tel. & Tel.*, 756 F.2d at 811; *Chanel, Inc. v. Italian Activewear of Fla.*, 931 F.2d 1472, 1477 (11th Cir. 1991) ("If an individual actively and knowingly caused the infringement, he is personally liable.").

This Court follows *Southern Bell*.  In *EMI April Music, Inc. v. Ocala Hospitality*

18

*Grp., LLC*, this Court found that the plaintiff alleged facts sufficient to support personal liability for managing members, owners, officers or directors of an infringing corporate entity.  2016 U.S. Dist. LEXIS 175038, *5 (M.D. Fla. Aug. 30, 2016).   In that case, the plaintiff alleged that defendant Douglas Perera was a managing member, owner, officer, or director of Ocala Hospitality Group, and that he was responsible for the control, management, operation and maintenance of the affairs of Ocala Hospitality Group.  *Id*.  The plaintiff also alleged that Perera had derived a financial benefit from the infringing activities of the entity.  *Id*.  Likewise, in *Broad. Music, Inc. v. Joint Bar & Grill, LLC*, the court found that the Complaint set forth sufficient factual allegations to support a vicarious liability claim for copyright infringement.  2012 U.S. Dist. LEXIS 186206, *8-9 (S.D. Fla. Dec. 11, 2012).  There, the defendant managed the corporate defendant's infringing activities, had the right and ability to supervise the company and its activities, and had a direct financial interest in the corporate defendant.  *Id*.

Florida courts also recognize that plaintiffs need not pierce the corporate veil in order to hold a defendant responsible for directly participating in copyright infringement.  *Myeress v. Marmont Hill, Inc.*, 2018 U.S. Dist. LEXIS 183153, *9 (M.D. Fla. Oct. 25, 2018).  In *Myeress*, this Court held that a plaintiff need not pierce the corporate veil "if an individual is a direct participant in the alleged improper conduct."  *Id*.  There, it was sufficient that the plaintiff alleged that the individual defendants, jointly committed all the conduct underlying plaintiff's claims.  *Id*.  This court reasoned "Myeress is not dragging Taj into the case as a corporate officer, but as an individual tortfeasor. The Complaint thus states claims for which Taj can be held personally liable." *Myeress,* at *8-9.

The Complaint in this case expressly meets the requirements for a finding of personal liability by Kutsomarkos for misappropriation of trade secrets, FDUTPA violations, unfair competition, and direct/indirect copyright infringement by and through Media Shark.  First, the Complaint alleges that "as an owner of Media Shark at relevant times, Kutsomarkos had the right and ability to control the infringing acts of Media Shark."  (Compl. ¶ 135, ECF No. 1, *see* Compl. ¶ 22)  Second, according to the Complaint, "Kutsomarkos obtained a direct financial benefit in the form of significant payments from at least Media Shark in connection with Media Shark's direct infringement of the HealthPlan Copyrights and use of the Infringing Works."  (Compl. ¶ 136, ECF No. 1)  Without more, these allegations render Kutsomarkos personally liable for her misconduct on behalf of Media Shark.

Further, Kutsomarkos is liable for her acts as a direct tortfeasor.  For example, as alleged in the Complaint, "Kutsomarkos induced the infringing acts of Media Shark and Knowmentum by knowingly and intentionally inducing such entities, *through her own conduct*… to at least reproduce, copy, distribute copies of prepare derivative works based on the HealthPlan Copyrighted Videos and the HealthPlan Copyrighted Scripts…."  (Compl. ¶ 127, ECF No. 1)  For the same reasons, Kutsomarkos is personally liable for her acts as a tortfeasor in the theft of trade secrets, FDUTPA violations, unfair competition, and direct/indirect copyright infringement.

## VIII.   CONCLUSION

For the reasons stated herein, the Motion to Dismiss should be denied.

Dated: December 10, 2018        Respectfully Submitted,

By: */s/ Alejandro J. Fernandez*
Alejandro J. Fernandez
Fla. Bar No. 32221
Board Certified in Intellectual Property Law
E-mail:  AFernandez@BrinksGilson.com
Stephen J. Leahu
Fla. Bar. No. 54037
Board Certified in Intellectual Property Law
E-mail: SLeahu@BrinksGilson.com
**BRINKS GILSON & LIONE, P.A.**
401 E. Jackson Street, Suite 3500
Tampa, FL 33602
Telephone No.  (813) 275-5020
Telefacsimile No.  (305) 275-5021

William H. Frankel
IL ARDC No. 3127933
*Admitted Pro Hac Vice*
wfrankel@brinksgilson.com
Andrew J. Avsec
IL ARDC No. 6292313
*Admitted Pro Hac Vice*
aavsec@brinksgilson.com
**BRINKS GILSON & LIONE, P.C.**
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
Telephone No. (312) 321-4200
Telefacsimile No. (312) 321-4299

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY certify that on December 10, 2018, I electronically filed the foregoing

document with the Clerk of the Court CM/ECF.

*/s/ Alejandro J. Fernandez*
Alejandro J. Fernandez