UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEALTHPLAN SERVICES, INC.,

    Plaintiff,

v.                                                  CASE NO. 8:18-cv-2608-T-23AAS

RAKESH DIXIT, et al.,

    Defendants.
_____/

**<u>ORDER</u>**

    HealthPlan Services sues (Doc. 37) Rakesh Dixit, Feron Kutsomarkos, E-Integrate, Knowmentum, and Media Shark Productions for misappropriating a trade secret, for infringing a copyright, for breaching a contract, and for violating Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). Dixit, Knowmentum, and Media Shark move (Doc. 49) to dismiss HealthPlan's "shotgun complaint." Kutsomarkos and E-Integrate answer (Doc. 53) and E-Integrate counterclaims (Doc. 53 at 27) against HealthPlan for breaching a contract and for violating FDUTPA.

    HealthPlan moves (Doc. 56) to strike the answer and moves (Doc. 56 at 8) to dismiss the counterclaim for failing to plead fraud with particularity. Also, each defendant except Kutsomarkos moves (Doc. 61) for leave to file a third-party complaint. HealthPlan opposes (Doc. 66).

## BACKGROUND

<u>Allegations of HealthPlan's Amended Complaint</u>

In 2011, HealthPlan started developing "ExchangeLink," a software platform "for use in connection with Affordable Care Act related healthcare exchanges."[1] (Doc. 37 at ¶¶ 15–17) In 2012, Ultramatics, a Healthplan contractor, engaged E-Integrate, a subcontractor, to develop the "source code" for ExchangeLink. (Doc. 37 at ¶¶ 18, 48) In 2013, HealthPlan hired E-Integrate's owner, Dixit, as vice president of software development. (Doc. 37 at ¶ 21) Later in 2013, Dixit uploaded the ExchangeLink source code to a "cloud-based repository." (Doc. 37 at ¶ 39)

In November 2013, Dixit "abruptly" restricted HealthPlan's ability to view the source code and demanded that HealthPlan pay E-Integrate $775,420.69, an amount that Dixit claimed Ultramatics owed E-Integrate. (Doc. 37 at ¶ 40) Dixit threatened that a "time bomb" program would destroy the source code unless HealthPlan accepted the demand. (Doc. 37 at ¶ 50)

To avoid "business disruption," HealthPlan accepted. (Doc. 37 at ¶ 49) In accord with a January 2014 "consulting agreement," HealthPlan paid part of the $775,420.69 and Dixit restored Healthplan's ability to view the source code. (Doc. 37 at ¶ 52) Shortly after receiving the source code, HealthPlan fired Dixit and E-Integrate. (Doc. 37 at ¶ 56)

---

[1] No clearer description of the ExchangeLink platform appears in the amended complaint.

A few months later, Dixit and Knowmentum, another company owned by Dixit, began developing "Fit," a software platform. HealthPlan alleges that Dixit created Fit by "rebrand[ing]" a stolen copy of the ExchangeLink source code. (Doc. 37 at ¶ 61) To market Fit, Dixit hired Media Shark, HealthPlan's marketing contractor, and Kutsomarkos, Media Shark's owner. (Doc. 37 at ¶ 60) While working for HealthPlan, Kutsomarkos supplied to Dixit Healthplan's market research, pricing strategy, sales script, and customer list. (Doc. 37 at ¶¶ 60–63) After learning that Kutsomarkos had supplied confidential business information to Dixit, HealthPlan fired Kutsomarkos and Media Shark. (Doc. 37 at ¶ 71)

E-Integrate's Counterclaim

E-Integrate counterclaims that HealthPlan failed to pay "hundreds of thousands of dollars" due under the January 2014 consulting agreement. (Doc. 53 at ¶ 58) Also, E-Integrate claims that HealthPlan violated FDUTPA (1) by "colluding" with Ultramatics to "choke out" E-Integrate from developing the ExchangeLink source code, (2) by "[taking] [E-Integrate's] pre-existing intellectual property," and (3) by stealing a "business opportunity." (Doc. 53 at ¶¶ 63–65)

## DISCUSSION

The motion (Doc. 49) to dismiss the amended complaint

Dixit, Media Shark, and Knowmentum argue that, because some paragraphs in Counts I–V fail to attribute a specific act to each defendant, HealthPlan's amended complaint constitutes an impermissible "shotgun pleading" that violates Rule 8(a),

Federal Rules of Civil Procedure. The argument lacks merit. The amended complaint describes each defendant's conduct and each count incorporates by reference the pertinent paragraphs of the amended complaint. The amended complaint is not a "shotgun pleading" and complies with Rule 8(a), Federal Rules of Civil Procedure.[2]

HealthPlan's amended[3] motion (Doc. 56) to strike the answer

HealthPlan argues that E-Integrate and Kutsomarkos's answer violates Rule 8(b), Federal Rules of Civil Procedure, which requires a defendant both to "admit or deny" an allegation and to "fairly respond to the substance of an allegation." The answer is replete with paragraphs in the following form:

> The First Amended Complaint is a "shotgun" pleading; and, this paragraph of the Complaint impermissibly lumps all of the Defendants together and is being used to assert multiple claims against multiple Defendants, without specifying which of the Defendants are responsible for which acts or omissions, or which of the Defendants the claims are brought against are supported by these allegations. As such, these Defendants cannot determine and/or assume which allegations of this paragraph of the Complaint are directed toward them (or which Defendant(s)) and, therefore, these Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph. To the extent an answer is required, Defendants deny the allegations contained in this paragraph.

---

[2] Although citing several securities and RICO decisions that apply the "particularity" standard of Rule 9(b), Federal Rules of Civil Procedure, the motion contains no argument that Rule 9(b) applies to HealthPlan's claims, none of which relies on an allegation of fraud.

[3] After E-Integrate and Kutsomarkos responded to HealthPlan's original motion (Doc. 54) to strike, HealthPlan without leave amended (Doc. 56) the motion. Although HealthPlan's amended motion violates Local Rule 3.01 (which prohibits a memorandum after a response), the amended motion removes the request to strike E-Integrate and Kutsomarkos's affirmative defenses. The amended motion (Doc. 56) is considered, and the original motion is denied as moot.

- 4 -

(Doc. 53 at ¶¶ 80–82, 85–89, 92–95, 101, 102, 104, 106–112, 115–120, 122-127, 137–141) The amended complaint is not a "shotgun pleading" and the answer fails both to admit or deny each allegation and to fairly respond to the substance of the allegation. In this circumstance, the answer violates Rule 8(b), Federal Rules of Civil Procedure. *Clarendon Am. Ins. Co. v. All Bros. Painting, Inc.*, No. 6:13-cv-934, 2013 WL 5921538, at *3 (M.D. Fla. Nov. 4, 2013) (Smith, M.J.).

HealthPlan's amended motion (Doc. 56) to dismiss

HealthPlan argues that the counterclaim fails to state a claim both for a breach of contract (Count I) and for a violation of FDUTPA (Count II).

*Breach of Contract*

HealthPlan argues that E-Integrate identifies no provision of the consulting agreement that HealthPlan allegedly breached and fails to state a claim for breach of contract. In the counterclaim, E-Integrate asserts — without explanation — that HealthPlan failed to pay E-Integrate "hundreds of thousands of dollars" owed under the consulting agreement. (Doc. 53 at ¶ 49) Because E-Integrate fails to identify a provision of the consulting agreement that HealthPlan allegedly breached, E-Integrate fails to state a claim for breach of contract.[4] *Whitney Nat'l Bank v. SDC*

---

[4] HealthPlan argues that, because the consulting agreement contains no "time is of the essence" clause, HealthPlan's failure to timely pay in accord with the consulting agreement cannot constitute a material breach. The argument lacks merit. Although a "brief delay" in performance is immaterial absent a showing that time is of the essence, HealthPlan's three-year delay in paying is material. *Thomas v. Fusilier*, 966 So.2d 1001, 1003 (Fla. 5th DCA 2007).

*Cmtys., Inc.*, No. 8:09-cv-1788, 2010 WL 1270264, at *3 (M.D. Fla. Apr. 1, 2010) (Kovachevich, J.) (dismissing a breach of contract claim because the plaintiff "fail[ed] to allege the specific provision of the contract allegedly breached.")

*Florida's Deceptive and Unfair Trade Practices Act*

HealthPlan argues that E-Integrate fails to state a FDUTPA claim. The intent of FDUTPA is to "'protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009) (Fawsett, J.). To state a FDUTPA claim, the plaintiff must allege facts showing (1) a deceptive or unfair practice, (2) causation, and (3) damages. 669 F. Supp. 2d at 1292. "'A deceptive practice . . . is likely to mislead consumers. An unfair practice . . . offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 (M.D. Fla. 2007) (quoting *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006)).

E-Integrate alleges that HealthPlan violated FDUTPA by "scheming" with Ultramatics to "choke out" E-Integrate from developing the ExchangeLink source code. E-Integrate alleges that a May 2012 service agreement required Ultramatics to pay E-Integrate only if HealthPlan timely paid Ultramatics. (Doc. 53 at ¶ 17) In accord with the "scheme," HealthPlan allegedly stopped paying Ultramatics, which

- 6 -

permitted Ultramatics to refuse to pay E-Integrate.  (Doc. 53 at ¶ 30)  Despite the lack of payment, HealthPlan and Ultramatics demanded that E-Integrate incur cost to develop the ExchangeLink code.  (Doc. 53 at ¶ 32)  Also, E-Integrate alleges that HealthPlan violated FDUTPA by stealing a "business opportunity" and by "[taking] [E-Integrate's] pre-existing software without paying."  (Doc. 53 at ¶¶ 63–65)

HealthPlan contends that E-Integrate's FDUTPA claim "sounds in fraud " and that the particularity standard of Rule 9(b), Federal Rules of Civil Procedure applies.  HealthPlan cites allegations describing HealthPlan's conduct as "scheming," "collusive," and "surreptitious" but fails to identify an alleged misrepresentation or omission on which E-Integrate's FDUTPA claim relies.  (Doc. 54 at ¶¶ 15–16)  E-Integrate's allegations that HealthPlan exploited the services agreement, "took" without payment E-Integrate's software, and stole a "business opportunity" do not rely on a misrepresentation or omission by HealthPlan.  Rule 9(b) is inapplicable.

Alternatively, HealthPlan argues that E-Integrate fails to state a claim under Rule 8(a), Federal Rules of Civil Procedure.  HealthPlan's cursory, conclusory argument articulates no basis for dismissing the FDUTPA claim.

<u>The defendants' motion (Doc. 61) to implead a third party</u>

Each defendant except Kutsomarkos moves (Doc. 61) for leave to implead Michael Bojkovic, M.D. and Perfect Clarity, LLC.  The defendants assert that in January 2016, Knowmentum transferred the sole copy of the Fit source code to a "third-party host cloud" and gave Perfect Clarity, an entity owned by Bojkovic,

exclusive ability to manage the repository. (Doc. 61 at ¶ 10) Bojkovic reportedly failed to pay the monthly "host cloud" fee and permanently lost the sole copy of the Fit source code. (Doc. 61 at ¶ 11) The defendants argue that possession of the Fit source code is necessary to defend against HealthPlan's misappropriation claim. (Doc. 61 at ¶ 13) The defendants request leave to implead Bojkovic and Perfect Clarity "for their failure to maintain" Fit.

Rule 14(a)(1), Federal Rules of Civil Procedure, permits a defendant to implead a third party "who is or may be liable to [the defendant] for all or part of" the plaintiff's claim. In other words, the defendant may implead a third party "only if that third [party's] liability on that claim is in some way dependent upon the outcome of the main claim." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987). Impleader is proper only if the defendant asserts "a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *Olavarrieta*, 812 F.2d at 643. "The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." Wright & Miller, FEDERAL PRACTICE & PROCEDURE, Vol. 6, § 1446 (3d ed. 2018).

HealthPlan claims that the defendants misappropriated a trade secret, breached a contract, infringed a copyright, and violated FDUTPA. The motion

exclusive ability to manage the repository. (Doc. 61 at ¶ 10) Bojkovic reportedly failed to pay the monthly "host cloud" fee and permanently lost the sole copy of the Fit source code. (Doc. 61 at ¶ 11) The defendants argue that possession of the Fit source code is necessary to defend against HealthPlan's misappropriation claim. (Doc. 61 at ¶ 13) The defendants request leave to implead Bojkovic and Perfect Clarity "for their failure to maintain" Fit.

Rule 14(a)(1), Federal Rules of Civil Procedure, permits a defendant to implead a third party "who is or may be liable to [the defendant] for all or part of" the plaintiff's claim. In other words, the defendant may implead a third party "only if that third [party's] liability on that claim is in some way dependent upon the outcome of the main claim." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987). Impleader is proper only if the defendant asserts "a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *Olavarrieta*, 812 F.2d at 643. "The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." Wright & Miller, FEDERAL PRACTICE & PROCEDURE, Vol. 6, § 1446 (3d ed. 2018).

HealthPlan claims that the defendants misappropriated a trade secret, breached a contract, infringed a copyright, and violated FDUTPA. The motion

contains no basis to hold Bojkovic or Perfect Clarity secondarily or derivatively liable for a claim by HealthPlan.

## CONCLUSION

Dixit, Knowmentum, and Media Shark's motion (Doc. 49) to dismiss is **DENIED**. No later than **APRIL 18, 2019**, Dixit, Knowmentum, and Media Shark must answer the amended complaint. HealthPlan's amended motion (Doc. 56) to dismiss and to strike is **GRANTED-IN-PART**. Paragraphs 80–82, 85–89, 92–95, 101, 102, 104, 106–112, 115–120, 122-127, 137–141 of the answer (Doc. 53) are **STRICKEN** and the breach of contract claim (Doc. 53 at 37) is **DISMISSED WITHOUT PREJUDICE**. No later than **APRIL 25, 2019**, Kutsomarkos and E-Integrate must amend the answer and may amend the counterclaim. No later than **MAY 9, 2019**, HealthPlan must respond to the counterclaim. Dixit, E-Integrate, Knowmentum, and Media Shark's motion (Doc. 61) for leave to implead a third party is **DENIED**. The motion (Doc. 60) to extend the time within which to implead a third party and HealthPlan's original motion (Doc. 54) to strike are **DENIED AS MOOT**.

ORDERED in Tampa, Florida, on April 4, 2019.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE