# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

HEALTHPLAN SERVICES, INC.,
    Plaintiff,
  v.
RAKESH DIXIT, an individual, *et al.*,
    Defendants.
_____/   CASE NO.: 8:18-cv-02608-SDM-AAS

E-INTEGRATE, INC.,
    Counter-Plaintiff,
  v.
HEALTHPLAN SERVICES, INC.,
    Counter-Defendant.
_____/

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF PROTECTIVE ORDER, ESI ORDER AND COMPUTER CODE INSPECTION ORDER

Defendants Feron Kutsomarkos and E-Integrate, Inc., joined by Defendants Rakesh Dixit, KnowMentum, Inc., and MediaShark Productions, Inc. (collectively referred to herein as "Defendants"), by and through undersigned counsel and pursuant to the Court's Order dated May 3, 2019 (D.E. 93), hereby submit this Response to Plaintiff's Motion for Entry of Protective Order, ESI Order, and Computer Code Inspection Order (D.E. 99):

**I. DEFENDANTS' FILED THIS RESPONSE BECAUSE PLAINTIFF REFUSES TO COOPERATE.**

As a threshold matter, Defendants were forced to file this Response because, despite this Court's Order that, "the parties must attempt to agree on language that addresses the defendants' concern that their expert(s) in this action will receive discoverable information also relevant to claims or defenses in another action …" (see D.E. 93), Plaintiff's counsel refuses to cooperate with Defendants' counsel or "draft language" that would be acceptable to the Plaintiff. Instead, Plaintiff's counsel, Alejandro J. Fernandez and William H. Frankel, demanded that Defendants'

1

undersigned counsel "draft language" acceptable to Plaintiff's counsel otherwise they are going to unilaterally file Plaintiff's proposed orders with the Court, as they did. Attached as ***Exhibit A*** is the parties' email discussions (*occurring between "May 9, 2019, at 12:26 PM" and "May 9, 2019, at 6:40:07 PM"*). In light of this Court's Order and legal precedent, Plaintiff's counsel did not comply with the Order or Local Rule 3.01(g). *See, e.g., Michel v. Creations By Chef Aaron, LLC*, No. 6:15-cv-876-Orl-TBS, 2016 U.S. Dist. LEXIS 42311, at *6 (M.D. Fla. Mar. 30, 2016); *Local Access, LLC v. Peerless Network, Inc.*, No. 6:14-cv-399-Orl-40TBS, 2015 U.S. Dist. LEXIS 129277, at *16 (M.D. Fla. Sep. 25, 2015); *Dang v. Sheriff of Seminole Cty.*, No. 6:14-cv-37-Orl-31TBS, 2015 U.S. Dist. LEXIS 19875, at *14 (M.D. Fla. Feb. 19, 2015); and, *Maronda Homes, Inc. v. Progressive Express Ins. Co.*, No. 6:14-cv-1287-Orl-31TBS, 2015 U.S. Dist. LEXIS 860, at *8-9 (M.D. Fla. Jan. 6, 2015).

Local Rule 3.01(g)'s "good faith" requirement involves more than curt and unproductive correspondence between counsel. In order to "confer," a movant must have a give-and-take exchange with opposing counsel. Sending an email and demanding an immediate or near immediate response and then filing a motion before having an actual substantive discussion with opposing counsel does not amount to a conference or consultation. Instead, it is a one-way missive. *Id.* Plaintiff's counsel is simply bullying the Defendants into Plaintiff's proposed order and agreements (*e.g., by refusing to cooperate and demanding that Defendant keep trying to guess what language Plaintiff will accept*) so that there is not enough time to meet the Court's deadline today, May 10, 2019.

Plaintiff's counsel's dilatory tactic worked, it is now too late to keep trying to guess what language the Plaintiff will accept, and conversations digressed because, *inter alia*, Plaintiff's counsel refuses to offer or submit any mutually agreeable solution. Unfortunately, the parties are

forced to defer to the Court to decide their dispute.  Defendants hope that, in the event the Court's accepts Plaintiff's proposed order and agreements, the Court remembers that even Magistrate Judge Sansone agreed that, "**it's worth everyone's time and effort to head off [Defendants' concerns] at this point rather than dealing with it later**:"

> For purposes of this protective agreement, though, I am willing to adopt the HealthPlan proposed language and not Defendants' proposed language because I do think it goes beyond my authority.
>
> **I will, however, give the parties more time to work out language to address Mr. Dixit's concern, either including it in the stipulated agreement on ESI or else – I'm sorry, not ESI, the computer code or including it in the actual protective agreement.**

*See* **Exhibit B**, Motion Hearing Transcript Of Digital Proceedings May 3, 2019, p. 27.

## II. DEFENDANTS' SOLE DISPUTE WITH REGARD TO THE "PROTECTIVE AGREEMENT" (attached as *Exhibit C*)

Defendants suggested the following revisions, and otherwise accepted Plaintiff's proposed "Protective Agreement:"

> 2. Definitions:
>
> a. […].
>
> b. "Healthplan Litigation" means the above captioned case, Healthplan Services, Inc. v. Rakesh Dixit, an individual, Feron Kutsomarkos, an individual, E-Integrate, Inc., a Florida corporation, Knowmentum, Inc., a Florida corporation, and Media Shark Productions, a Florida corporation, pending in the United States District Court for the Middle District of Florida, Tampa Division, and any related actions or appeals therefrom.
>
> c. "Bojkovic Litigation" means the case styled, *Michael Bojkovic v. Rakesh Dixit, et al.*, Case No. 16-001246-CI, consolidated with, *Perfect Clarity, LLC v. Gerald Beacht, et al.*, Case No. 17-003233-CI, Sixth Judicial Circuit in and for Pinellas County Florida, filed February 2016, and as referenced in Plaintiff's First Amended Complaint.
>
> d. "Bojkovic Litigation Subpoena" means any subpoena served on a party relating to the Bojkovic Litigation since February 2016.

3

e. "Litigation" means the Healthplan Litigation, including any discoverable information the subject of the Bojkovic Litigation Subpoena, which is relevant to the claims or defenses in the Bojkovic Litigation and for which an expert has been qualified to opine for a party under this Agreement.

By way of background, on September 25, 2019, *before this lawsuit was filed*, Defendants served a Subpoena *Duces Tecum* (the Bojkovic Litigation "Subpoena" described above and attached as ***Exhibit D***) on Plaintiff. Relevant to this Response, Defendants' Subpoena requested the following:

> 7. All engineering specification, schematic drawings, functional descriptions, user manuals, configurable manuals, installation manuals, maintenance manuals, advertisements, customer lists, and other documents relating to the Healthplan Services Exchange Software.
>
> 8. Please make available for inspection the source code for Healthplan Services Exchange Software.
>
> 9. A functional copy of Healthplan Services Exchange Software, including a functional copy of all components and backend components permitting the creation of an environment in which to use and test Healthplan Services Exchange Software.

On November 14, 2018, *after this lawsuit was filed*, there was a hearing before the Honorable James R. Case[1] on the Subpoena and Healthplan's Objection to and Motion to Quash the Subpoena. Relevant to these proceedings, Plaintiff's counsel Andrew Lennox *and Alejandro Fernandez* appeared at the hearing and argued the following before the Special Magistrate, in relevant part (a portion of the transcript is attached as ***Exhibit E***):[2]

> [MR. LENNOX:] **There is a pending federal case in front of Judge Merryday on exactly these issues, on exactly the level of whether these are protected trade secrets**. So what they're asking to do as a response to our opposition is for this Court to review and make findings of fact while there is a

---

[1] The Honorable James R. Case (retired) was appointed as a Special Magistrate to hear and decide all discovery issues in the Bojkovic Litigation.
[2] It is important to note that, in response to Defendants' discovery requests, "*HealthPlan objects to producing any documents covered by the common interest and **joint defense privileges between Dr. Bojkovic and HealthPlan**,*" which has not been produced (*see* D.E. 82-7, p. 21).

4

pending federal case in front of Judge Merryday, which is asserting trade secrets and copyright violations.

And as I said, Your Honor, I have to echo what Mr. Wall [(*Bojkovic's counsel*)] just said about the fact that HPS – and again, Mr. Fernandez is here. He can speak to that if the Court would like to hear from him. But the idea that HPS would file the complaint that it did in federal court as voluminous as it is, and this Court has it in front of it because it was filed with the Court for today's hearing, the -- as a discovery move, as a move to prevent discovery is ludicrous.

HPS knows that it is going to have to participate in discovery. **Because, as I laid out earlier, we're on a Track Two case in a federal case in front of Judge Merryday, in which these items and the disclosure of which are going to be regulated under the federal rules.** Under the principle of economy, we would ask that the Court grant our motion.

[THE COURT:] What -- since I'm not as familiar with it as you are, what do you expect the December 10th meeting to accomplish?

[MR. LENNOX:] Actually, for that I'll probably defer to -- I am not counsel in the federal case.

[ * * *]

[MR. FERNANDEZ:] Your Honor, just a point of clarification, it's not a meeting or a hearing before the court. It's a discovery plan. And we've actually conferred with counsel in the last couple of days, and scheduled it for the 21st of this month. So in the next week or so we intend to talk about the discovery issues at length, and layout the framework for proceeding with discovery in that case.

[THE COURT:]· How similar or dissimilar would that discovery request be compared to the one that we're talking about this morning?

[MR. FERNANDEZ:]· Well, it's completely dissimilar insofar as none of it has anything to do with the acquisition by Wipro of HealthPlan Services.· **It's very similar insofar as there is a trade secret case -- or trade secret issues directly on point in that case. There is a Federal Defend Trade Secrets Act count that is pending. There is also copyright counts that all pertain to the software that was developed by HealthPlan Services.**

[THE COURT:]· Would that discovery plan be available for all the counsel in these pending cases?

[MR. FERNANDEZ:] I don't see why not, Your Honor. Those discovery plans typically result in a scheduling order.· They're submitted to the court, and the

5

court provides an order that details the scheduling in the case and the handling content of discovery in the case.

[THE COURT:] Okay. Mr. Dixit, did you want to say something?

[MR. DIXIT:] **Yeah. The scope of discovery is exactly the same**. If I can give you some background, Judge –

[THE COURT:] **I think I've got it. All right. Here is what we're going to do on that first issue.**

[MR. DIXIT:] And as a practical matter, I'd like to say, Your Honor, that federal discovery should not be delaying our pretrial order deadlines in this case.

[THE COURT:] Well, November 21st doesn't exactly sound like a delay.

[MR. DIXIT:] **Well, if they come back on November 21st and say they need six months to produce discovery –**

[THE COURT:] **Well, I doubt that's going to happen with Judge Merryday, quite frankly.**

[MR. FERNANDEZ:] <u>**It's certainly not**</u>, **Your Honor**.

[MR. DIXIT:] Well, it's still going to be set for discovery that's going to be towards the end of next year. I just don't want it delaying our trial. I don't think that's fair.

[THE COURT:] I understand.

[MR. FERNANDEZ:] <u>**Your Honor, we're not intent on delaying at all**</u>. In fact, it's the defendants that have already asked for a three week extension of time to answer. So we're fully desirous of moving it forward quickly. Thank you, Your Honor.

[THE COURT:] <u>**HPS's motion to quash the subpoena that's been the subject matter of this discussion today will be stayed until such time**</u> -- <u>**and may be renewed after the case management and the discovery plan is made available in the pending case in Judge Merryday's division.**</u>

So if that answers all the questions that I think we've been discussing, so be it, and you guys can work it out from there. If it doesn't, HPS can renew their motion.

[MR. LENNOX:] **Thank you, Your Honor.**

6

Other than Plaintiff's counsels' obvious misrepresentations made above, Plaintiff's counsel, in this case, made the following statements before Magistrate Judge Sansone, in direct contradiction to the statements made above to the Honorable James R. Case:

> [MR. FRANKEL:] […]. Just make one more point on the conflating the cases. **I just remind the Court that Defendants attempted to do this by adding Doctor Bojkovic to our case and Judge Merryday rejected that, so there are different cases**, […].
>
> **I think it's just improper and unnecessary and wrong, frankly, to conflate these three cases and suggest to Your Honor that they're all the same and they all relate to the same issues. They don't**. The California case is a dispute over performance of a contract.
>
> **Doctor Bojkovic's case is a dispute over software that Mr. Dixit is purported to sell to Bojkovic and there's a dispute over that transaction and what happened there.**
>
> And our case is simply that, among other things, there's a breach of Mr. Dixit's contractual obligations to maintain our information confidentially. And we also believe that they misappropriated technologies associated with HPS's exchange of the software, so we see the cases being very different. **There may be some overlapping facts and witnesses, but we believe those can be dealt with in the context of those respective cases**.

See **Exhibit B**, pp. 13-15. Mr. Frankel's statements directly contradict Mr. Lennox's and Mr. Fernandez's assertions (*e.g.*, that there *"is a pending federal case in front of Judge Merryday on exactly these issues;"* that *"these items [in the Bojkovic Litigation Subpoena] and the disclosure of which are going to be regulated under the federal rules;"* that the discovery in the Bojkovic Litigation is *"very similar," "directly on point,"* and pertains *"to the software that was developed by HealthPlan Services;"* and, that *"it's certainly not"* going to take Plaintiff more than six months to complete discovery – *it is taking Plaintiff more than six months to complete discovery*).

At this point, and because of Plaintiff's counsels' dilatory tactics and misrepresentations, Defendants request any of the following remedies: (1) accept Defendants' proposed revisions to the Protective Agreement; (2) order Plaintiff to submit a revised version of the Protective

Agreement that "addresses the defendants' concern that their expert(s) in this action will receive discoverable information also relevant to claims or defenses in" the Bojkovic Litigation; or, (3) order Plaintiff to submit a separate stipulation or agreement that "addresses the defendants' concern that their expert(s) in this action will receive discoverable information also relevant to claims or defenses in" the Bojkovic Litigation (*e.g., a separate stipulation or agreement that Plaintiff shall permit Defendants' experts, in this federal case, to use or disclose information from this case in the state court cas*e).

### III. DEFENDANTS' SOLE ISSUE WITH REGARD TO THE "STIPULATED AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION" (attached as *Exhibit F*)

After the Court ordered that the Defendants, *in toto*, were limited to email production requests "to a sum total of fifteen custodians for all such requests" (D.E. 93), Defendants met and conferred, and they agreed on the email custodians and search terms listed in the attached ***Exhibit G***, which were submitted to Plaintiff's counsel on May 8, 2019.[3] Defendants' counsel disclosed to Plaintiff's counsel that their proposed search terms exceed ten (*by seven (7) additional terms*) but that they were "open to discuss[ing] further." Plaintiff's counsel not only refused Defendants' seven (7) additional search terms, they absolutely refused to discuss the issue any further, stating the following:

> HealthPlan rejects the proposed edit of paragraph 12 of the ESI Agreement, as revisiting language that was previously agreed to and jointly submitted to the Court and as an attempt to circumvent the Court's ruling constraining email discovery by limiting it to 15 custodians per side in paragraph 11. As you now propose 20 search terms per custodian instead of the 10 you previously suggested and agreed to, the defendants could require that HealthPlan conduct 300 discrete email searches, which is entirely disproportionate in terms of need, burden, and cost.

(*See **Exhibit A***.)

---

[3] Plaintiff has failed or refused to provide its list of email custodians or search terms.

Plaintiff's counsel purposefully forgets the following comments of the Magistrate Judge:

> I mean I will tell you, in looking at this 10 search terms per custodian limitation too causes me concern that it's just going to invite the broadest search terms in the world, that **I mean you're much better off having 50 search terms that are more specific with [Boolean] characters** than having, you know, one of the -- having limiting it to 10 search terms.
>
> [* * *]
>
> It may very well be that once they see the list of the people that you're talking about, […], **I frankly really think the bigger issue you're going to have is over these search terms**. I think the way this is written you are inviting both sides to come up with exceedingly and unnecessarily broad search terms because you're wanting to capture with one search term what could more effectively be captured by five or six more narrow search terms.

*See* **Exhibit B**, pp. 31-34.  Mr. Frankle interrupted the Magistrate judge and conceded the following:

> One, your initial suggestion about having to say a common 10 terms, we're fine with that. We agree to the language that's here. We can go either way. Protective -- the agreement does provide for a narrowing of search criteria, if they're too broad a chance to revisit that with the other side, so we're not as concerned about the 10 different terms or 10 same terms per custodian.

*See* **Exhibit B**, pp. 34-35.  Mr. Frankle's statements in court caused the Magistrate Judge to state the following, in relevant part:

> **Again, I mean -- and I really do hope in terms of this, of this search term issue, I hope that you are right, Mr. Frankel.  I will just say that it caused me more concern than the custodians issue did.**

*See* **Exhibit B**, p. 37.  Mr. Frankle responded, *in contradiction to his email*, as follows in relevant part:

> **We'll take that up with Counsel, Your Honor**, if we want to revise that, but thank you for the 15. […].

Consistent with Plaintiff's counsels' pattern of making misrepresentations to the Court (and not just this Court), Mr. Frankle refused to "take that up with" undersigned counsel and refused to discuss the additional seven (7) search terms at issue.

9

Because of Plaintiffs' counsels' dilatory tactics and misrepresentations, Defendants request either of the following remedies: (1) accept Defendants' proposed revision to the Stipulated Agreement Regarding Discovery Of Electronically Stored Information; or, (2) order the parties to meet, confer, and agree on "50 search terms that are more specific with [Boolean] characters," as the Magistrate Judge suggested. Defendants prefer the latter remedy of ordering the parties to meet, confer, and agree on "50 search terms that are more specific with [Boolean] characters," as the Magistrate Judge suggested.

**IV. DEFENDANTS' ARE IN AGREEMENT WITH THE "STIPULATED AGREEMENT REGARDING INSPECTION OF COMPUTER CODE" (attached as *Exhibit H*)**

Defendants had an issue with paragraph 2(e) of the agreement, wherein Plaintiff's states, "three (3) Outside Software Experts (i.e., not existing or prior employees or **affiliates** of a Party or an affiliate of a Party)," as Defendants needed to know whether Plaintiff considers IBM an "affiliate." During the relevant period (*i.e., 2011 to 2018*), Plaintiff's ExchangeLink Project (*see, e.g.,* D.E. 37, ¶¶ 15-24) was developed, built, and deployed on an IBM (WebSphere) platform. Today, Plaintiff's counsel responded that, "IBM is not an affiliate of HPS." As such, Defendants are in agreement with the "Stipulated Agreement Regarding Inspection Of Computer Code," attached as *Exhibit H*.

**M.D. FLA. LOC. R. 3.01(G) CERTIFICATION**

Pursuant to M.D. Fla. Loc. R. 3.01(g), undersigned counsel, Shyamie Dixit, certifies that he has corresponded and conferred with Plaintiff's counsel, Alejandro J. Fernandez and William H. Frankel, in a good faith effort to eliminate our dispute and/or the necessity of this Response. Plaintiff's counsel(s) advised that Plaintiff objects to the relief requested in this Response and that it refuses to cooperate any further with Defendants.

**WHEREFORE**, Defendants respectfully request this Honorable Court enter an order granting Defendants' requests described above and any additional relief the Court deems just and necessary.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished electronically with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all of the parties and their counsel of record on this 10th day of May 2019.

Respectfully submitted,
***Dixit Law Firm***

*/s/ Shyamie Dixit*
Shyamie Dixit, Esq. (sdixit@dixitlaw.com)
Florida Bar No.: 719684
Robert L. Vessel, Esq. (rvessel@dixitlaw.com)
Florida Bar No.: 314536
3030 N. Rocky Point Drive West, Suite 260
Tampa, FL 33607
Tel: (813) 252-3999
Fax: (813) 252-3997
*Attorneys for Defendants Feron Kutsomarkos and E-Integrate, Inc.*