# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

HEALTHPLAN SERVICES, INC.,

    Plaintiff,

v.

RAKESH DIXIT,
FERON KUTSOMARKOS,
E-INTEGRATE, INC.,
KNOWMENTUM, INC,
and
MEDIA SHARK PRODUCTIONS, INC.,

    Defendants.
_____/

CASE NO.: 8:18-cv-02608-SDM-AAS

**HEALTHPLAN SERVICES, INC.'S *EXPEDITED* MOTION FOR A PROTECTIVE ORDER PRECLUDING DEFENDANTS FROM DISCLOSING CONFIDENTIAL INFORMATION OF HEALTHPLAN AND ITS CLIENTS TO THIRD PARTIES WITHOUT GIVING HEALTHPLAN SERVICES ADVANCE NOTICE AND AN OPPORTUNITY TO OBJECT, AND FOR REMEDIAL RELIEF**

Plaintiff, HealthPlan Services, Inc. ("HealthPlan") respectfully submits this *expedited* motion for protection against disclosures to third parties by Defendants Rakesh Dixit, Knowmentum, Inc., Media Shark Productions, Inc., E-Integrate, Inc., and Feron Kutsomarkos (collectively, "Defendants") of information that HealthPlan rightly claims as "Confidential" under this Court's protective order [D.E. 104, "Protective Order"], and states as follows:

## I. INTRODUCTION

HealthPlan has great cause for concern that Defendants have and will continue to disseminate highly sensitive documents—possibly including HIPPA protected information—that Defendants misappropriated from HealthPlan, including documents recently produced to

1

California Physicians' Service, Inc., d/b/a Blue Shield of California ("BSC") (a third party to the present action that is adverse to HealthPlan in an unrelated contract action pending in the Northern District of California). Defendants, as they have before, appear to be producing to BSC HealthPlan's documents in native file format, without Bates numbers or any confidentiality designations.

Immediately upon learning of Defendants' latest production of documents to BSC, HealthPlan urgently sought assurances from Defendants that such production did not include documents containing confidential HealthPlan information. *See* Letter to Defendants, Exhibit 1. Defendants have not responded with the requested assurances. As a result, to protect its trade secret and confidential information, HealthPlan's only recourse is to move for an order requiring: (i) that Defendants immediately recall any documents produced to BSC that contain "Confidential" information of HealthPlan or its clients; (ii) that HealthPlan be given an opportunity to review such documents and object to their production as appropriate; (iii) that such documents be produced by Defendants to BSC, if at all, only pursuant to a suitable Protective Order entered in the present case or the California case; and, (iv) that Defendants henceforth treat *all* documents in their possession, which originated with HealthPlan as "Confidential" on a going forward basis, and not produce such information without prior notification to HealthPlan.

## II.     MEMORANDUM OF LEGAL AUTHORITY

### A.  Legal Standard

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring

that a trade secret or other confidential research, development, or commercial information . . . be revealed only in a specified way." Fed. R. Civ. Pro. 26(c)(1)(G). "[D]istrict courts assessing the existence of good cause must exercise their discretion in light of the relevant facts and circumstances of a particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). For every unauthorized production of HealthPlan's protected information, "there is a constant danger inherent in disclosure of confidential information pursuant to a Protective Order." *Universal Delaware, Inc. v. Comdata Network*, No. 3:10-mc-00104, 2011 U.S. Dist. LEXIS 28963, at *18-19 (M.D. Tenn. Mar. 21, 2011).

**B. A Protective Order is Imperative to Protect HealthPlan From Defendants' Past, Present and Future Disclosure of Documents Acquired From HealthPlan**

Here, HealthPlan has reason to fear that Defendants are producing HealthPlan's trade secret, confidential and possibly HIPPA protected documents to third parties. Specifically, upon learning of Defendants' recent production to BSC, HealthPlan sought Defendants' assurances that the production did not include information acquired from HealthPlan. *See* Letter to Defendants, Exhibit 1. These assurances were necessary because of Defendants' history of improperly producing HealthPlan's trade secret and highly confidential information to third parties, as discussed below. Despite HealthPlan's multiple efforts to address its concerns, Defendants have not provided the assurances requested in HealthPlan's urgent letter. Given Defendants' unwillingness to provide unambiguous assurances, HealthPlan requires a protective order prohibiting further unfettered dissemination by Defendants of confidential HealthPlan information and documents.

The nature of the protected information that has been produced in this litigation exemplifies the need to preclude Defendants from such unrestricted distribution. In response

to BSC's subpoena, Defendants originally produced on April 22nd, *inter alia*, HealthPlan's highly confidential documents that generally relate to the following: (i) HealthPlan's Configurator, an internal and proprietary portal HealthPlan uses to assist in onboarding clients onto HealthPlan's proprietary ExchangeLink platform; (ii) HealthPlan's ExchangeLink Management Console, HealthPlan's internal and proprietary web based platform that HealthPlan uses to track data and information received from clients; and, (iii) HealthPlan's ServiceLink Portal, HealthPlan's internal and proprietary web based platform that HealthPlan uses to manage and provide premium billing, reconciliation, in-force administration, and customer service to its clients. In additional, Defendants produced HealthPlan's highly confidential information concerning: functional specifications; database table definitions; data mapping requirements; process work flows and dependencies; business requirements documentation; testing documentation; cost estimates (including hours required to build, roles necessary to build, and costs); video and audio recordings of developers discussing how to create specific features and functionality; video and audio recordings of developers and others at HealthPlan discussing the desirability of particular functionality; requirements planning documentation; prototypes; demos; project status reports; sales scripts; sales demos; and storyboards. This type of documentation is plainly entitled to protection as HealthPlan's highly confidential information.

HealthPlan would be detrimentally impacted if competitors or current and prospective clients gained unmarked, native copies of documents containing this highly valued information. Indeed, HealthPlan sued Defendants for misappropriation of trade secrets to protect its competitive advantage and ensure Defendants' compliance with their contractual

obligations, including their obligations to maintain the confidentiality of HealthPlan's proprietary information. HealthPlan's Configurator, ExchangeLink Management Console, and ServiceLink Portal are of significant economic value to HealthPlan. Furthermore, the commercialization strategy associated with these systems, including, but not limited to, internal draft demonstrations, specialized scripts, videos, and presentations that market and promote HealthPlan's systems are of significant economic value to HealthPlan. Disclosure of HealthPlan's internal functional specifications; database table definitions; data mapping requirements; process work flows and dependencies; business requirements documentation; testing documentation; cost estimates (including hours required to build, roles necessary to build, and costs); video and audio recordings of developers discussing how to create specific features and functionality; video and audio recordings of developers and others at HealthPlan discussing the desirability of particular functionality; requirements planning documentation; prototypes; demos; project status reports; sales scripts; and storyboards would cause significant harm to HealthPlan's competitive advantage in the marketplace. Likewise, the unrestricted disclosure of HIPPA protected information is likely to cause irreparable harm to protected patients, HealthPlan and the unlawful recipients of such information.

HealthPlan has not seen the most recent production by Defendants to BSC, but is informed that these new documents were produced in native format without Bates stamps or other unique production numbers. Presumably, these documents were also produced without confidentiality markings. Defendants will not be prejudiced by any protective order requiring them to preserve the status quo, and not further disclose HealthPlan confidential information to third parties. Defendants have no bona fide need to distribute such files, particularly native

files as opposed to properly marked documents. Indeed, Defendants already are required to perform a reasonable inquiry to determine, in good faith, the confidentiality level of the information contained in a document. Protective Order, ¶ 3(a). By immediately producing native files to BSC on April 22nd upon receiving BSC's subpoenas for documents, and then repeating the offense, Defendants violated their contractual obligations to HealthPlan and intentionally circumvented HealthPlan's right to protect and designate its confidential information. BSC, and any other third parties, should not be allowed to benefit from Defendant's blatant disregard of their legal and contractual obligations. Any attempt to use the improper production of information is particularly egregious given the circumstances of Defendants' production without first providing HealthPlan with a copy in advance of production, so that HealthPlan can assess the propriety of the production, confidentiality, and the need for a protective order.

In contrast, the immediate irreparable harm to HealthPlan from allowing the unrestricted production of HealthPlan's confidential information (and potentially confidential business information of its clients and personal health information of its members) outweighs any potential prejudice to Defendants. Therefore, good cause exists for the entry of a protective order to preclude Defendants from distributing documents containing HealthPlan's confidential information without the appropriate confidentiality designations, and to recall documents produced without regard to such concerns.

Accordingly, HealthPlan seeks a protective order: (i) finding that the confidentiality of documents Defendants improperly acquired from HealthPlan has <u>not</u> been waived, (ii) requiring Defendants to recall their native productions to BSC and any other third party

recipients, and (iii) ordering Defendants to immediately designate and treat all documents acquired from HealthPlan as "Confidential" pursuant to the Protective Order.

## III. CONCLUSION

For the reasons set forth herein, the Court should grant HealthPlan's motion for a protective order to preclude Defendants from distributing documents containing HealthPlan's confidential information without the appropriate designations, marks and safeguards set forth in this Court's Protective Order [D.E. 104].

## NOTICE OF CONFERENCE WITH OPPOSING COUNSEL

Pursuant to the requirements of Local Rule 3.01(g), Counsel for HealthPlan contacted counsel for Defendants regarding the substance of this motion. First, the relief sought by HealthPlan was set forth in the letter dated August 8, 2019. *See* Letter to Defendants, Exhibit 1. Second, HealthPlan's counsel followed up with Defendants' counsel in an email dated August 12, 2019 in order to schedule a time to discuss the issues raised in the letter. Third, HealthPlan's counsel called and spoke with Defendants' counsel, Dustin Deese, on April 13, 2019. Mr. Deese refused to discuss the August 8, 2019 letter until August 16, 2018. Thereafter, HealthPlan's counsel also tried calling Robert Vessel, left him a voicemail, and follow up with another email to Defendants' counsel. To date, Defendants' counsel have not indicated whether or not they would object to the relief sought by this motion. HealthPlan's counsel will continue its efforts to meet and confer with Defendants' counsel to reach a resolution for the issues presented in this motion, and will supplement this notice accordingly.

Dated: August 13, 2019            Respectfully Submitted,

By: */s/ Stephen J. Leahu*
Alejandro J. Fernandez (Fla. Bar No. 32221)

Board Certified in Intellectual Property Law
E-mail: afernandez@brinksgilson.com
Stephen J. Leahu (Fla. Bar. No. 54037)
Board Certified in Intellectual Property Law
E-mail: sleahu@brinksgilson.com
**BRINKS GILSON & LIONE, P.A.**
401 E. Jackson Street, Suite 3500
Tampa, FL 33602
Telephone No. (813) 275-5020
Facsimile No. (813) 275-5021

William H. Frankel (Ill. ARDC No. 3127933)
*Admitted Pro Hac Vice*
E-mail: wfrankel@brinksgilson.com
Andrew J. Avsec (Ill. ARDC No. 6292313)
*Admitted Pro Hac Vice*
E-mail: aavsec@brinksgilson.com
**BRINKS GILSON & LIONE, P.C.**
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, Illinois 60611
Telephone No. (312) 321-4200
Facsimile No. (312) 321-4299

Evi T. Christou (D.C. Bar No.1600066)
*Admitted Pro Hac Vice*
E-mail: echristou@brinksgilson.com
**BRINKS GILSON & LIONE, P.C.**
1775 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone No. (202) 296-6923
Facsimile No. (202) 296-8701

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on August 13, 2019, I electronically filed the foregoing document with the Clerk of the Court CM/ECF, which will send notification of this filing to all counsel of record in this action.

*/s/ Stephen J. Leahu*