## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HEALTHPLAN SERVICES, INC.,
        Plaintiff,

v.

RAKESH DIXIT, an individual, *et al.*,
Defendants.

_____/   CASE NO.:  8:18-cv-02608-SDM-AAS

E-INTEGRATE, INC.,
        Counter-Plaintiff,

v.

HEALTHPLAN SERVICES, INC.,
Counter-Defendant.

_____/

## JOINT NOTICE OF DISCOVERY ISSUES

The parties, through their respective undersigned attorneys, hereby provide this Joint

Notice of Discovery Issues pursuant to the Court's Orders (ECF No. 141, "July 30th Order" and

ECF No. 187), directing the parties to file a notice outlining outstanding discovery issues to be

addressed at the October 16, 2019 hearing as well as setting forth the parties' discovery plan for

October and November, including scheduled depositions and remaining document productions and

written discovery responses.  The Court's July 30th Order identified the following issues discussed

at the July 29, 2019 hearing and to be resolved at the October 16, 2019 hearing:

1. Dixit Defendants' designation of permanent lead counsel by August 2, 2019;
2. Dixit Defendants' correction of Bates prefixes and numbers on documents responsive to discovery requests by August 26, 2019;
3. Dixit Defendants' amendment of written responses and production of documents responsive to Dixit Requests for Production Numbers 12, 17, 21, 24, 25, 26, 27, 30, 35, 38; Knowmentum Requests for Production Numbers 16, 21, 22, 30, 46, 48, 49, 58, 61; and Media Shark Requests for Production Numbers 21, 31, 59, 65, 68, 72 by August 26, 2019;
4. Kutsomarkos Defendants' identification by Bates numbers which documents are responsive to which requests by August 26, 2019;

1

5. Kutsomarkos Defendants responses to discovery requests to reflect Shyamie Dixit's representations at the July 29th discovery conference by August 26, 2019;

6. Defendant's production of a privilege log if withholding a responsive document on the basis of privilege or work product protection by September 9, 2019;

7. Parties to provide most recent address or phone number, if known, for individuals disclosed in a party's initial disclosures by August 12, 2019;

8. HealthPlan's production of documents to Kutsomarkos Defendants' Request for Production Nos. 15, 17, 26 and 27 by August 26, 2019; and

9. Dixit Defendants response to HealthPlan's interrogatories by August 26, 2019.

Additionally, the following pending motions (and corresponding oppositions) are before the Court, which the parties are ready to address the issues at the hearing: (1) <u>D.E.160,</u> HealthPlan's Expedited Motion for a Protective Order Precluding Defendants From Disclosing Confidential Information of HealthPlan and Its Clients to Third Parties Without Giving HealthPlan Advance Notice and Opportunity to Object, and for Remedial Relief and D.E. 164, Defendants' Response in Opposition (2) <u>D.E. 167</u>, HealthPlan's Motion for Protective Order Limiting Defendants From Taking Duplicative Depositions and D.E. 173, Defendants Response in Opposition; (3) <u>D.E. 168</u>, HealthPlan's Motion for Sanctions for Violations of Court Order, and D.E. 184. Defendants' Response in Opposition; (4) <u>D.E. 170</u>, Motion to Compel 2018 Version of HPS Software Code, and D.E. 183, HealthPlan's Response in Opposition; (5) <u>D.E. 190,</u> HealthPlan's Second Motion for Sanctions, Fees and Order to Show Cause Why Dixit Defendants Should Not Be Held In Contempt of Court Order.  Accordingly, the parties states as follows:

## I.      PLAINTIFF'S DISCOVERY ISSUES

Pursuant to the Court's July 30th Order, Plaintiff HealthPlan Services, Inc. ("HealthPlan") has attempted to resolve each of the discovery issues raised at the July 29, 2019 hearing.  However, numerous discovery response and document production issues still remain with Defendants Rakesh Dixit ("Dixit"), Knowmentum, Inc. ("Knowmentum") and Media Shark Productions, Inc.

("Media Shark") (collectively, "the Dixit Defendants") and E-Integrate, Inc. ("E-Integrate") and Feron Kutsomarkos ("Kutsomarkos") (collectively, "the Kutsomarkos Defendants").

A. <u>**THE DIXIT DEFENDANTS**</u>

1. **Dixit Defendants' Initial Disclosures**

*HealthPlan's Position:*

Pursuant to paragraph 8 of the Court's July 30th Order, if any party wanted an address or phone number of an individual listed on the opposing party's Rule 26 disclosures, that party must request same from the opposing party by August 12, 2019, and the responding party was required to provide the most recent address or phone number, if known, of the requested individual(s) on August 19, 2019. *See* D.E. 141, ¶ 8. On July 31, 2019, counsel for HealthPlan requested from the Dixit Defendants all of the addresses and phone numbers for all of the individuals listed in the Dixit Defendants Rule 26 disclosures. *See* **Plaintiff's Exhibit A**. The Dixit Defendants neither supplemented their Rule 26 disclosures to include *any* further contact information for the requested individuals nor provided *any* explanation for failing to do so. Given the months of continuous discovery and inexcusable failures, which have required that HealthPlan repeatedly and at great cost seek Court intervention multiple times, HealthPlan has moved for sanctions and fees pursuant to Rule 37. *See* D.E. 168 and 190.

*Dixit Defendants' Position:*

Dixit Defendants are in the process of amending their initial disclosures under Rule 26 to comply with this Court's Order. However, the additional information known to Dixit Defendants is minimal and would not impact HealthPlan's ability to conduct discovery. Regardless, if HealthPlan determined that any missing information was important to HealthPlan's discovery

efforts it could have contacted counsel for Dixit Defendants to request information known to Dixit Defendants. Yet, this never happened and HealthPlan has failed to identify how the failure to amend has impacted discovery in any way whatsoever. The Dixit Defendants intend to serve their amended initial disclosures prior to the October 16, 2019 hearing before the Court.

## 2. Dixit Defendants' Document Production & Responses to Document Requests

*HealthPlan's Position:*

### a. Responses to Document Requests

In short, the Dixit Defendants continue to ignore this Court's July 30th Order to amend their responses to numerous discovery requests, not to mention Dixit Defendants' discovery obligations, representations to counsel and written stipulations dating back *months*. The Dixit Defendants' discovery responses *remain* un-amended since May 31 and are grossly deficient. As provided in this Court's July 30th Order, the Dixit Defendants were required to amend their document request responses by August 12, 2019 as follows: Rakesh Dixit to supplement responses to Requests for Production Nos. 12, 17, 21, 24, 25, 26, 27, 30, 34 and 38; Knowmentum to supplement responses to Requests for Production Nos. 16, 21, 22, 30, 46, 48, 49, 58, and 61; and Media Shark to supplement Requests for Production Nos. 21, 31, 59, 65, 68 and 72.[1]

On August 12, 2019, after months of delay, the Dixit Defendants requested an extension of time to supplement their responses through August 19, 2019 (which the Court granted even

---

[1] HealthPlan had inadvertently included the original responses in the last Notice, ECF No. 123. The last amended responses, dated May 31, 2019, are attached as **Plaintiff's Exhibit B**. The inadvertent inclusion of the previous responses made no real difference, however, as the amended responses remain grossly deficient. Indeed, despite the oversight, Dixit Defendants had agreed to serve second amended responses as discussed below.

though Dixit Defendants had not undertaken a proper meet/confer under L.R. 3.01(g)). Notwithstanding the extension, the Dixit Defendants have yet to supplement their responses.

The Dixit Defendants continue to ignore discovery obligations *ad infinitum* while providing the same bad faith representations that the Dixit Defendants will supplement their responses at some undefined future time.  For example, during a meet and confer between the parties on August 28, 2019 to discuss the late responses, counsel for the Dixit Defendants indicated that they would supplement the responses by August 30, 2019.  At 11:59pm on August 30th, counsel for the Dixit Defendants sent an e-mail to counsel for HealthPlan indicating that supplementation of the responses would not be completed by the end of the day because he was ill but would continue to work and serve them the following day, August 31, 2019.  *See* **Plaintiff's Exhibit C**. The Dixit Defendants did not serve any supplemented responses that day, nor sent any follow up e-mail explaining its failure to do so.  As a result, HealthPlan is in exactly the *same* position it was in at the July 30th hearing, some six weeks ago.   Dixit Defendants still fail to identify responsive documents, fail to identify whether documents are being withheld, assert boilerplate objections and have not been updated subsequent to multiple productions, thus making it impossible to know what has been produced and what has not, or what documents are responsive to HealthPlan's Requests for Production.

More recently, HealthPlan met and conferred with the Dixit Defendants to discuss their deficient responses to HealthPlan's Second Set of Requests for Production.  The Dixit Defendants agreed, at a minimum, to respond by October 8, 2019 regarding whether they would be amenable to withdrawing their boilerplate objections and amending same.  At the time this Notice was filed, the Dixit Defendants failed to respond altogether on October 8th.  Although this issue is not yet

before the Court, it highlights the Dixit Defendants' pattern of dilatory discovery tactics, all to HealthPlan's detriment.

Given the months of continuous discovery and inexcusable failures, which have required that HealthPlan repeatedly and at great cost seek Court intervention multiple times, HealthPlan has moved for sanctions and fees pursuant to Rule 37. *See* D.E. 168 and 190.

### b.  Document Production

Pursuant to Paragraph 2 of the Court's July 30th Order, the Dixit Defendants were required to correct the Bates prefixes and numbers on documents responsive to HealthPlan's discovery requests.  The Dixit Defendants—after claiming they were heavily burdened with the process of correcting the Bates prefixes and numbers—produced less than 200 corrected Bates-numbered pages.  Unfortunately, despite repeated requests by HealthPlan for compliance with this Court's ESI Order, D.E. 105, the documents were not produced in compliance with the ESI Order.  The produced documents are in a barely legible PDF format (rather than the required TIFF file format) and lack any metadata or load files.  Paragraph 6 of the ESI Order specifically sets forth that ". . . all documents existing in electronic format shall be produced in native file format and/or Tagged Image File Format (TIFF, or .TIF) with load files. The Parties agree that the native files and/or TIFF plus load files should include, where applicable, all relevant metadata."  ESI Order, D.E. 105.  The repeated production of non-compliant PDFs without metadata is impeding HealthPlan's review of documents and related investigation regarding their authenticity.

Notwithstanding multiple prior meet and confer efforts, and that the ESI Order is in place and controls the manner in which documents are produced by the parties, the parties met and conferred on August 28, 2019 to discuss the production dispute.  Counsel for the Dixit Defendants

took the position that they were not required to re-produce the documents in TIFF and load files

pursuant to the ESI Order because the documents were initially produced *before* the ESI Order

was entered, and the work of re-producing the documents in TIFF and load files with metadata

was not necessary.[2]   Counsel for HealthPlan explained that producing documents in TIFF and load

files was always contemplated by the parties and even pointed counsel to an April 17, 2019 e-mail

where the Dixit Defendants' prior counsel, Justin Dees from the MacFarlane firm stipulated in

writing to providing the document production in native or TIFF format with load files, along with

metadata (as set forth in the proposed ESI Order) once the ESI Order was entered.  *See* **Plaintiff's**

**Exhibit D**.  Dixit Defendants' counsel then claimed that the documents they produced were in

hard copy/paper form and electronic documents are purportedly still in the possession of the

MacFarlane firm.

Also pursuant to paragraph 3 of the Court's July 30th Order, the Dixit Defendants were

required to provide HealthPlan with a reasonable estimate of the timeframe in which the Dixit

Defendants will produce the remaining responsive documents.  On August 26, 2019, counsel for

---

[2] Defendant Media Shark also specifically claims it is not required to re-produce in TIFF and load files the documents that were originally produced by Kutsomarkos.  As HealthPlan mentioned in the July 22, 2019 Joint Notice, Media Shark represented that documents previously produced by Feron Kutsomarkos—who supposedly is not represented by the same counsel as the Dixit Defendants—were produced by Media Shark, not Ms. Kutsomarkos.  Media Shark has still not properly reproduced documents that were initially produced by Kutsomarkos, individually, but then Media Shark claimed were produced by Media Shark.  The result of such a haphazard production is that it is impossible to decipher what documents are associated with which defendants.  HealthPlan insists that Media Shark produce these documents Bates stamped in an orderly way that identifies the particular producing party for each document by October 30, 2019.  Production of these documents in accordance with the ESI Order is essential for HealthPlan to have a reasonably usable format for reviewing and analyzing such documents.  For example, TIFF plus load file contain essential information about each document, including but not limited to, where the document came from, where it resides, and pointers to associated metadata.

the Dixit Defendants represented that the "rolling production of documents will continue to be made to this folder." *See* **Plaintiff's Exhibit E.**  However, other than one additional file uploaded on behalf of Rakesh Dixit on August 27, 2019 (which comprised a mere eighty (80) pages), no additional documents have been produced to date.  Moreover, counsel for the Dixit Defendants also represented in the August 26th e-mail that "the next major production" would be completed by September 9th and "the final production" would be completed by September 16th.  *Id*.  Not surprisingly, the Dixit Defendants failed to make any additional productions on either of these dates.  After the August 10th deposition of Knowmentum, counsel for Dixit Defendants refused to provide a date certain for completion of their production, or any justification for their *months* of delays.

Given the months of continuous discovery and inexcusable failures, which have required that HealthPlan repeatedly and at great cost seek Court intervention multiple times, HealthPlan has moved for sanctions and fees pursuant to Rule 37.  *See* D.E. 168 and 190.

### *Dixit Defendants' Position:*

The Dixit Defendants must supplement this Notice with their position as related to this section.

### 3.   **Dixit Defendants' Responses to HealthPlan's Interrogatories**

### *HealthPlan's Position:*

The Dixit Defendants also failed to supplement their interrogatory responses. Pursuant to Paragraph 10 of the Court's July 30th Order, the Dixit Defendants were required to respond to HealthPlan's interrogatories by noon on August 26, 2019.  Despite *two* separate hours long additional meet and confers to again discuss the Dixit Defendants' deficient interrogatories – one on August 9, 2019 and another on August 19, 2019 – Dixit Defendants have refused to provide

good faith responses on fundamental interrogatories.  In fact, after the parties' meet and confer on August 19, 2019, HealthPlan agreed to a one-week extension to supplement the interrogatories to August 26, 2019 and another extension to August 30, 2019.  Here again, the Dixit Defendants went silent—no responses and no explanation.

Given the months of continuous discovery and inexcusable failures, which have required that HealthPlan repeatedly and at great cost seek Court intervention multiple times, HealthPlan has moved for sanctions and fees pursuant to Rule 37.  *See* D.E. 168 and 190.

*Dixit Defendants' Position*:

The Dixit Defendants must supplement this Notice with their position as related to this section.

### 4.    Dixit Defendants' Privilege Log

*HealthPlan's Position*:

The Dixit Defendants have also not provided a privilege log, as required by Paragraph 7 of the Court's July 30th Order.  *See* D.E. 141, ¶7.  During the August 10th custodian deposition of Knowmentum, counsel for the Dixit Defendants advised that they would not produce a privilege log until discovery was complete and the responses to the requests for production were amended. Given the months of continuous discovery and inexcusable failures, which have required that HealthPlan repeatedly and at great cost seek Court intervention multiple times, HealthPlan has moved for sanctions and fees pursuant to Rule 37.  *See* D.E. 168 and 190.

*Dixit Defendants' Position*:

The Dixit Defendants must supplement this Notice with their position as related to this section.

B.  **THE KUTSOMARKOS DEFENDANTS**

    1.  **Kutsomarkos' Failure to Preserve Documents and Surreptitious Laptop Transfer to Rakesh Dixit**

*HealthPlan's Position:*

The records custodian deposition of Feron Kutsomarkos illuminated the Defendants' gross mishandling of discoverable information, and efforts to circumvent discovery of such information from HealthPlan.   During the records custodian deposition of Feron Kutsomarkos, Ms. Kutsomarkos testified that she unilaterally and without supervision of counsel searched her own laptop for documents and emails responsive to HealthPlan's discovery requests (*See* **Plaintiff's Exhibit F**, Custodian Deposition of Feron Kutsomarkos dated September 11, 2019, 35:8-37:25); unilaterally converted the search results into PDFs in a manner that did not preserve metadata (*Id.* 84:10-20 and 99:15-100:1); did not forensically or otherwise preserve the entire contents of the laptop (*Id.* 57:7-15); and approximately ***three months ago,*** transferred the laptop containing all native documents and e-mails belonging to her and Media Shark, to *Rakesh Dixit* (*Id.* 95:8-97:3). Kutsomarkos' actions squarely violate her obligations to preserve evidence and take reasonable steps to search and produce documents.  This Court consistently holds that a party "is under a duty to preserve [evidence] it knows, or reasonably should know, is relevant to [litigation or potential litigation]." *Telectron, Inc. v. Overhead Door Corp*., 116 F.R.D. 107, 127 (S.D. Fla. 1987). At the time Ms. Kutsomarkos transferred the laptop to Rakesh Dixit, she was fully apprised of her duty to preserve documents and knew that she had only preserved a fraction of the documents on the laptop.

The Defendants cannot dispute that the laptop contained information that is crucial to establishing HealthPlan's claims against all of the Defendants, especially Kutsomarkos and

Rakesh Dixit as individuals.  In fact, at the custodian deposition of Rakesh Dixit, Mr. Dixit conceded the laptop may be a "gold mine" of documents in light of Ms. Kutsomarkos' testimony about the laptop's contents.  Custodian Deposition of Rakesh Dixit dated September 11, 2019, 36:15-22.  *See* **Plaintiff's Exhibit G.** The electronically stored information on the laptop, unless tampered with by Ms. Kutsomarkos or Rakesh Dixit, will provide evidence of Kutsomarkos' and Media Shark's documents and e-mails, when these documents were created and modified, by whom, and all other relevant metadata.  Moreover, the laptop, according to Ms. Kutsomarkos' testimony, should contain all of the e-mails in native format, with all of the metadata preserved. This is particularly important because Kutsomarkos' production of emails has been wholly without metadata.

Ms. Kutsomarkos' testimony is highly problematic for at least two reasons.  First, she transferred the laptop to the defendant leading the effort to withhold documents and stymie discovery in this case.  Second, her testimony directly exposed Rakesh Dixit's perjury.  In particular, Rakesh Dixit spent *hours* during his previous depositions denying that he had even a single computer other than his cell phone.   Not surprisingly, when confronted with Ms. Kutsomarkos' admissions, Rakesh Dixit deigned ignorance about receiving the laptop and its whereabouts. Subsequently, on October 4, 2019, counsel for Rakesh Dixit represented in a telephonic meet and confer with counsel for HealthPlan that Mr. Dixit had the laptop, it was functional and they would perform their own search of it and produce responsive documents by October 11, 2019.  Even so, counsel for Dixit admitted that he (i) has not seen the laptop; (ii) does not know what efforts anyone has taken to preserve/back-up the laptop; (iii) does not know whether the laptop is functional; (iv)  does not know the physical location of the laptop or who owns the

laptop.  Given Rakesh Dixit's discovery misconduct to date, HealthPlan moves for an immediate inspection of the laptop whereby it is permitted to forensically image and search the laptop at the expense of the Defendants.  To the extent Rakesh Dixit destroyed, damaged or "lost" the laptop, HealthPlan intends to move for appropriate sanctions against all the Defendants.

### *Kutsomarkos' Position*:

As a threshold matter, Kutsomarkos will produce a USB drive of the native files of the documents and emails she has already produced in response to HealthPlan's discovery requests. Kutsomarkos has no net new documents nor additional documents to produce.  As such, there is no need for inspections, sanctions, *etc*.

HPS's discovery requests, demands, motions, disparaging remarks, and defamatory rhetoric is a smokescreen for its own dilatory discovery tactics and abuses.  For example, HPS demands Kutsomarkos' emails, but it already has all of them in their systems … *every single one of her emails*.  It is important to remember that on **February 1, 2017**, counsel for HPS and counsel for Dr. Michael Bojkovic surreptitiously entered into a "Common Interests Confidentiality Agreement" relating to the claims made in the State Action and then repeated in this federal action. However, Kutsomarkos was not terminated by HPS for more than one (1) year later, in **May 2018**. As such, HPS must have obtained, collected, and retained all of her emails from its systems before filing this lawsuit in **October 2018**; and, it refuses to produce them.  For HPS to have done otherwise would be a "**gross mishandling of discoverable information, and efforts to circumvent discovery of such information from**" Defendants.

Clearly, HPS is hiding and refusing to produce documents and emails, and it has **NOT**

produced a single document or email supporting any of its claims in this case.  Specifically, the

following is a summary of the "50,000" documents produced by HPS to date:

**PROD001 – HPS 1st Doc Prod 03-29-19 – *Note: HPS frivolously marked every document***
***"Attorneys' Eyes Only" ("AEO")***

> HPS0000001 – HPS0026401 – marketing materials that do not support any HPS claims
> HPS0001262 – HPS0001410 – 2013-09 PWC HPS Financials, which were publicly
> disclosed in the BSC Lawsuit in California

**PROD002 (EI) – 3/19 – HPS reproduced EI's documents and marked them all**
**"Confidential" even though they are not confidential**

**PROD003 (FK & EI) 4/19 – HPS reproduced EI's, Media Shark's and Kutsomarkos'**
**documents and marked them all "Confidential" even though they are not confidential**

**PROD004 - HPS 2nd Doc Prod 04-30-19 - *Note: HPS frivolously marked every document AEO***
> HPS0026402 – HPS0027392 – HPS MSAs and EI documents and information, pre-2014
> HPS0027393 – HPS0028388 – HPS and EI documents and agreements, pre-2014
> HPS0028389 – HPS0029386 – HPS and Ultramatics ("UM") documents, pre-2014
> HPS0029387 – HPS0030376 – HPS documents and agreement with BSC, etc. (customers)
> HPS0030377 – HPS0031350 – HPS documents and agreement with CIGNA, etc., followed
by irrelevant documents from the 2013 UM state court lawsuit
> HPS0031351 – HPS0031774 – irrelevant documents from the 2013 UM Lawsuit

**PROD005 - HPS 3rd Doc Prod - *Note: HPS frivolously marked every document AEO***
> HPS0031775 – HPS0032767 – irrelevant UM documents that predate the 2014 HPS-EI
Consulting Agreement
> HPS0032768 – HPS0033758 – irrelevant UM documents that predate the 2014 HPS-EI
Consulting Agreement
> HPS0033759 – HPS0034753 – irrelevant UM documents that predate the 2014 HPS-EI
Consulting Agreement
> HPS0034754 – HPS0035744 – irrelevant UM documents that predate the 2014 HPS-EI
Consulting Agreement
> HPS0035745 – HPS0036693 – irrelevant UM documents that predate the 2014 HPS-EI
Consulting Agreement
> HPS0036694 – HPS0037674 – irrelevant UM documents that predate the 2014 HPS-EI
Consulting Agreement
> HPS0037675 – HPS0037914 – irrelevant UM and MediaShark documents that predate the
2014 HPS-EI Consulting Agreement

**PROD006 - HPS 4th Doc Prod**
　　　HPS0037915 – HPS0038014 – FL Sunbiz Documents for EAI, KnowMentum, and EI

**PROD007 - HPS 5th Doc Prod** – *Note: HPS frivolously marked documents AEO & Confidential*
　　　HPS0038015 – HPS0038484 – HPS internal business documents and information not related to any of the claims in this action
　　　HPS0038485 – HPS0038978 – HPS and WIPRO documents and information not related to any of the claims in this action
　　　HPS0038979 – HPS0039318 – HPS 2014-15 IRS Returns that show huge losses, as already publicly disclosed in the BSC Lawsuit
　　　HPS0039319 – HPS0039810 – HPS 2016 IRS Returns that show huge losses, as already publicly disclosed in the BSC Lawsuit
　　　HPS0039811 – HPS0040368 – HPS 2017 IRS Returns that show huge losses, as already publicly disclosed in the BSC Lawsuit
　　　HPS0040369 – HPS0040481 – HPS 2013 IRS Returns that show huge losses, as already publicly disclosed in the BSC Lawsuit, then documents from the Bojkovic State Court Lawsuit
　　　HPS0040482 – HPS0041046 – Copies of HPS's First Amended Complaint ("FAC") and exhibits *(i.e., no new documents or information)*
　　　HPS0041047 – HPS0041160 – More copies of HPS's FAC and exhibits *(i.e., no new documents or information)*
　　　HPS0041161 – HPS0041954 – More copies of HPS's FAC and exhibits *(i.e., no new documents or information)*
　　　HPS0041955 – HPS0041962 – A Subpoena from the Bojkovic State Court Lawsuit
　　　HPS0041963 – HPS0042527 – More copies of HPS's FAC and exhibits *(i.e., no new documents or information)*
　　　HPS0042528 – HPS0042641 – More copies of HPS's FAC and exhibits *(i.e., no new documents or information)*
　　　HPS0042642 – HPS0043432 – More copies of HPS's FAC and exhibits *(i.e., no new documents or information)*
　　　HPS0043433 – HPS0043916 – Goerge Durot's Deposition Transcript from the Bojkovic State Court Lawsuit *(i.e., no new documents or information)*
　　　HPS0043917 – HPS0044290 – Goerge Durot's Deposition Transcript from the Bojkovic State Court Lawsuit *(i.e., no new documents or information)*
　　　HPS0044291 – HPS0044758 – Kutsomarkos' Deposition Transcript from the Bojkovic State Court Lawsuit *(i.e., no new documents or information)*
　　　HPS0044759 – HPS0045255 – Kutsomarkos' and Bojkovic's document and exhibit production from the Bojkovic State Court Lawsuit *(i.e., no new documents or information)*
　　　HPS0045256 – HPS0045485 – More copies from the 2013 UM lawsuit and MediaShark documents *(i.e., no new documents or information)*
　　　HPS0045486 – HPS0045874 – James Vertino's Deposition Transcript from the Bojkovic State Court Lawsuit *(i.e., no new documents or information)*
　　　HPS0045875 – HPS0046442 – James Vertino's Deposition Transcript from the Bojkovic State Court Lawsuit *(i.e., no new documents or information)*

HPS0046443 – HPS0046837 – James Vertino's Deposition Transcript from the Bojkovic State Court Lawsuit *(i.e., no new documents or information)*

HPS0046838 – HPS0047333 – Depositions, exhibits, and documents from Bojkovic Litigation *(i.e., no new documents or information)*

HPS0047334 – HPS0047833 – More Depositions, exhibits, and documents from Bojkovic Litigation *(i.e., no new documents or information)*

HPS0047834 – HPS0048276 – More Depositions, exhibits, and documents from Bojkovic Litigation *(i.e., no new documents or information)*

HPS0048277 – HPS0048774 – More Depositions, exhibits, and documents from Bojkovic Litigation *(i.e., no new documents or information)*

HPS0048775 – HPS0049144 – More Depositions, exhibits, and documents from Bojkovic Litigation *(i.e., no new documents or information)*

HPS0049145 – HPS0049494 – More Depositions, exhibits, and documents from Bojkovic Litigation *(i.e., no new documents or information)*

HPS0049495 – HPS0049931 – More Depositions, exhibits, and documents from Bojkovic Litigation *(i.e., no new documents or information)*

HPS0049932 – HPS0050000 – More Depositions, exhibits, and documents from Bojkovic Litigation *(i.e., no new documents or information)*

HPS cannot prove a single claim of its FAC based on those "50,000" documents.  For example, HPS claimed the following in its FAC (Doc. No. 37, emphasis added):

> 64.    Likewise, Dixit, Kutsomarkos, Knowmentum and Media Shark copied, made derivative works of and displayed the **HealthPlan videos**, including the HCSC SLP Video Registration, the EMC Full Animation Registration, the Configurator Recording Registration, and the ServiceLink and Member Portal Video Registration (collectively, the "HealthPlan Copyrighted Videos").

> 65.    Among other infringing conduct, Dixit, Kutsomarkos, Knowmentum, e-Integrate and Media Shark derived Fit system presentations ("Infringing Works") directly from the HealthPlan Copyrighted Scripts and the HealthPlan Copyrighted Videos. **A video of at least one of the Infringing Works is provided at Exhibit 8**. Screenshots of the Infringing Works are depicted in Exhibits 3-6.

HPS has not produced any videos or information in support of these allegations … not even the "HealthPlan videos."  It's fair to assume that, after a year of litigation, HPS is purposefully preventing Defendants' from comparing the HealthPlan videos to the Fit video.

As has been shown and described, HPS has not produced, and it refuses to produce, any documents, information, or emails in support of its claims or damages in this case.  **After one (1) year of litigation, HPS has not even produced a single email – Not one email**!  Instead, HPS seeks to strike the emails and documents Kutsomarkos has produced because, as HPS knows, those emails and documents exonerate her and eviscerate HPS claims and theories in this case.

Kutsomarkos has produced all documents and information in her possession, custody, and control; and, she is ready to try this case before a jury.  HPS cannot say the same.

### 2.   Kutsomarkos Defendants' Amended Responses to Document Requests

Pursuant to the Court's July 30th Order, the Kutsomarkos Defendants were required to amend their responses to HealthPlan's document requests by identifying by Bates numbers which documents are responsive to which requests.  *See* D.E. 141, ¶ 4.  The Kutsomarkos Defendants amended their responses, but did not do so with enough specificity to direct HealthPlan to the responsive documents.  For example, nearly all of the responses for which E-Integrate claims it produced responsive documents contain a broad Bates range of *65,000* documents (e.g. "EI0000001 – EI0065968").   This Bates range constitutes the *entire* production of documents that E-Integrate produced on March 15, 2019, with the exception of 22 documents.[3]  HealthPlan spent considerable time and resources to providing E-Integrate with PDFs and a map of native documents and folders (as requested by E-Integrate) to aid in E-Integrate's efforts in identifying by Bates numbers which are responsive to which requests.  E-Integrate's broad range of 65,000 documents reveals that E-Integrate did not use, much less attempt to use, the PDF's and map that HealthPlan provided.  Instead, they tacitly disobeyed the Court's July 30th Order by identifying all

---

[3] E-Integrate's March 15, 2019 production was Bates stamped as EI0000001-EI0065990.

documents as responsive to each request. As a result, HealthPlan requests that E-Integrate amend its responses again to provide particularized Bates numbers responsive to each document request.

Similarly, Kutsomarkos also amended her responses to include a broad Bates range of documents. For example, nearly all of the responses for which Kutsomarkos claims it produced responsive documents contain a broad Bates range of ***17,000*** documents. This Bates range constitutes the *entire* production of documents that Kutsomarkos produced on March 15, 2019. However, as noted above in Section A.2.b, these documents apparently came from Media Shark, not Feron Kutsomarkos individually. HealthPlan requests this Court to require Media Shark and Kutsomarkos to identify which documents originate from which defendant, and to the extent any originate from Media Shark, to require Media Shark to reproduce such documents as noted above in Section A.2.b.

Additionally, the Kutsomarkos Defendants object to several document requests on the basis of privilege, but have not yet produced a privilege log as ordered by the Court in the July 30th Order. *See* D.E. 141, ¶ 7. For example, the Kutsomarkos Defendants cite the attorney-client privilege and work product doctrine in the following responses: Kutsomarkos Request Nos. 71 & 72 and E-Integrate Request Nos. 90 & 91. *See* **Plaintiff's Exhibit H.** The Kutsomarkos Defendants must produce to a HealthPlan a privilege log identifying which documents are being withheld as required in the Court's July 30th Order.

### *Kutsomarkos Defendants' Position:*

Defendants have limited means and resources: E-Integrate has been out of business since HPS drove it out of business in 2014; and, Kutsomarkos is an individual of modest means; none of the Defendants have the luxury of, *inter alia*, the backing of investors that keep them afloat or

on life-support (despite losses) for pointless litigation like HPS.  Defendants have done the best

that they can do, no documents are being withheld by Defendants, and HPS's discovery requests,

demands, motions, disparaging remarks, and defamatory rhetoric is a smokescreen for its own

dilatory discovery tactics and abuses described above and below.

## II.     DEFENDANTS' DISCOVERY ISSUES

*Kutsomarkos Defendants' Position:*

Defendants incorporate by reference all of HPS's arguments above (against the

Defendants), against HPS as if set forth herein:

Attached as **Defendants' Exhibit A** is, "**HealthPlan Services, Inc.'s Amended

Responses to Kutsomarkos' and E-Integrate, Inc.'s First Request for Information and

Documents**."  HPS's are deficient because, among other reasons to be discussed during the

October 16 Hearing, HPS (i) used boilerplate objections, (ii) used broad Bates ranges without

enough specificity to direct Defendants to the responsive documents, (iii) did not disclose or

identify whether documents are being withheld, (iv) referred to emails that it failed and refuses to

produce, and (v) produced an abusive amount of copies of the same documents or information.

Attached as **Defendants' Exhibit B** is, "**HealthPlan Services, Inc.'s Amended

Responses to Kutsomarkos' and E-Integrate, Inc.'s Second Request for Information and

Documents**."  HPS's are deficient because, among other reasons to be discussed during the

October 16 Hearing, HPS (i) used boilerplate objections, (ii) used broad Bates ranges without

enough specificity to direct Defendants to the responsive documents, (iii) did not disclose or

identify whether documents are being withheld, (iv) referred to emails that it failed and refuses to

produce, and (v) produced an abusive amount of copies of the same documents or information.

Attached as **Defendants' Exhibit C** is, "**HealthPlan Services, Inc.'s First Privilege Log**." HPS's log ends in **February 2017**. However, attached as **Defendants' Exhibit D** is, "**Plaintiff's Privilege Log**," from the Bojkovic State Court Lawsuit, and that plaintiff's log between HPS and Bojkovic's attorneys ends in **February 2019**. HPS got caught misrepresenting its privilege log in this action, and it should be sanctioned.

Attached as **Defendants' Exhibit E** is, "**Defendants' Second Amended List of Email Custodians and Search Terms**," served on **July 2, 2019**. As has been shown, HPS has not produced, and it refuses to produce, any documents, information, or emails in support of its claims or damages in this case. **After one (1) year of litigation, HPS has not produced a single email**!

*HealthPlan's Position:*

The Kutsomarkos Defendants' arguments above are wholly without merit for several reasons. First, this is the first time the Kutsomarkos Defendants are bringing to HealthPlan's attention that it contends HealthPlan's amended responses to E-Integrate and Kutsomarkos' First and Second Requests for Production are deficient. Counsel for the Kutsomarkos Defendants have not met and conferred or even mentioned that it believes HealthPlan's responses are deficient *until the filing of this Notice.* Notably, the Kutsomarkos Defendants conclusorily allege that HealthPlan's responses "(i) used boilerplate objections, (ii) used broad Bates ranges without enough specificity to direct Defendants to the responsive documents, (iii) did not disclose or identify whether documents are being withheld, (iv) referred to emails that it failed and refuses to produce, and (v) produced an abusive amount of copies of the same documents or information" without any support or further explanation. A cursory review of HealthPlan's amended responses reveals that HealthPlan (1) provided specific objections to each and every Request for Production;

(2) referred to particularized Bates numbers and ranges; (3) clearly identified the Requests for which it was withholding documents (e.g.  HealthPlan's Responses to Second Request Nos. 18, 19, 22, 28 and 29); (4) only referred to producing e-mails to the extent such e-mails and (5) produced documents that were responsive to E-Integrate and Kutsomarkos' Requests for Production, and indicated as such.

Second, this is first time the Kutsomarkos Defendants have raised any issue concerning the First Privilege Log that HealthPlan produced on June 17, 2019.  After nearly three (3) months of silence, the Kutsomarkos Defendants are now purportedly taking issue with the First Privilege Log in this Notice for the first time.  Such actions can only be construed as an attempt to distract the Court from the fact that the Kutsomarkos Defendants have failed to produce a privilege log altogether and are merely concocting discovery issues when none truthfully exist.  As Defendants Exhibit E shows, HealthPlan produced a First Privilege Log on June 17th including all of the documents reviewed and designated as privileged at the time it was produced.  By the very title, HealthPlan's *First* Privilege Log is not final because production, including email production, is ongoing.  Thus, HealthPlan will supplement its privilege log as additional productions are made and privileged documents are identified.

 Third, HealthPlan has not "refused to produce, any documents, information, or emails in support of its claims or damages in this case."  As HealthPlan has explained in detail in its document request responses, HealthPlan's collection and review of responsive documents, including e-mails, is ongoing.   To date, HealthPlan has produced more than fifty-thousand (50,000) non-email documents responsive to E-Integrate and Kutsomarkos' document requests. Although the Kutsomarkos Defendants complain in this Notice (for the first time), that the 50,000

non-email documents are not responsive to HealthPlan's claims or defenses, the Kutsomarkos Defendants fail to appreciate that these documents are the very documents *the Kutsomarkos Defendants asked for* in their document requests.   The Kutsomarkos Defendants' bald accusations should be contrasted with HealthPlan's responses to the Kutsomarkos Defendants' Requests for Production which *specifically identify the particular document or documents (by Bates number)* responsive to each Request.

As indicated above and in its amended document request responses, HealthPlan will continue its search and make a subsequent non-email document productions on or before October 30, 2019.   Regarding email production, HealthPlan and the Kutsomarkos Defendants' counsel will work to reach agreement on custodians and discovery searches to be undertaken by HealthPlan pursuant to the ESI Order.   HealthPlan is diligently collecting all emails for each custodian, which thus far totals nearly 3.5 million documents (comprising e-mails and attachments to such e-mails from Defendants' specified time frame of January 1, 2013 to December 31, 2018).   HealthPlan is completing its e-mail collection and keyword searches of such emails, which it anticipates will be completed in the next week.   Once complete, HealthPlan will ask opposing counsel to engage in a good faith narrowing of the search terms for each custodian.

### III.    THE PARTIES' DISCOVERY PLAN

Pursuant to the Court's Orders [D.E. 141 and 187], the parties hereby submit their discovery plan for October and November.

**Deposition Schedule**

Thus far, the parties have worked diligently to schedule fact witness depositions and have agreed in principle as to the following depositions:

- Stephen Saft on November 12
- Jeffrey Bak on November 26
- Jim Vertino (December 3 – Tentative)

The parties are also working to schedule the other fact witness depositions.  To date, the parties have exchanged names of approximately 16 other deponents and agreed to exchange dates of availability in November or December for those deponents by October 10, 2019.  Therefore, the parties will provide the Court with an update on the scheduling the other fact witness depositions at the October 16, 2019 hearing.   Additionally, the resolution of HealthPlan's pending Motion for Protective Order Limiting Defendants From Taking Duplicative Depositions, will facilitate the scheduling of remaining depositions.

**HealthPlan's Discovery Plan**

HealthPlan submits the following discovery plan with respect to its remaining document productions, written discovery responses, and inspection.

(1) <u>Document Productions</u>:

To date, HealthPlan has produced more than fifty-thousand (50,000) non-email documents responsive to E-Integrate and Kutsomarkos' document requests (Dixit Defendants have not

propounded any written discovery).  There are a handful of requests for which HealthPlan's search for responsive documents is still ongoing.  For such requests, HealthPlan will continue its search and make a subsequent document production on or before October 30, 2019.  Regarding email production, HealthPlan and the Kutsomarkos Defendants' counsel are working to reach agreement on custodians and discovery searches to be undertaken by HealthPlan pursuant to the ESI Order.  HealthPlan is diligently collecting the emails for each custodian, which thus far totals nearly 3.5 million documents (comprising e-mails and attachments to such e-mails from Defendants' specified time frame of January 1, 2013 to December 31, 2018).  HealthPlan is completing its e-mail collection and keyword searches of such emails, which it anticipates will be completed in the next week.  Once complete, HealthPlan will ask opposing counsel to engage in a good faith narrowing of the search terms for each custodian.

      Written Discovery Responses:

To date, HealthPlan does not have any outstanding discovery responses due to E-Integrate and Kutsomarkos (Dixit Defendants have not propounded any written discovery).  Pursuant to the Federal Rules of Civil Procedure, this Court's Local Rules and the Middle District of Florida Discovery Handbook, HealthPlan has amended its written discovery responses to include relevant Bates numbers and ranges for responsive documents on October 7, 2019 and will continue to supplement its responses if and when appropriate.

(2) Inspection of Software:

Defendants' Motion to Compel the 2018 Version of HPS' Software Code is fully briefed and still pending (D.E. 170).   To the extent the Court does not rule on this motion at the time of

the October 16, 2019 hearing, the parties are ready to address the issues in their respective submissions at the hearing.

**Defendants' Discovery Plan**

For the reasons Defendants described above, Defendants assert that, until HPS completes its document, video, and email productions, and Defendants complete their inspection of HPS's software and code, they cannot agree nor commit to a Discovery Plan.  For example, Defendants cannot commit to deposition dates nor a "Deposition Schedule" because they do not have any of the proposed deponents' emails.  Defendants suspect that HPS is attempting to lock-in deposition dates because it intends on dumping "nearly 3.5 million documents" on Defendants just before depositions, and then force the Defendants to proceed with those depositions unprepared and without reviewing those emails, which would also potentially foreclose additional attempts to re-depose those witnesses.

HPS has no one but itself to blame for being unprepared and not producing documents and emails for a lawsuit it knew and planned about since February 2017 (*and arguably since March 2014 according to its incomplete privilege log, see, e.g., Exhibit C, p. 4, Priv. ID # 37 and 38*).

Dated: October 9, 2019

Respectfully Submitted,

*/s/ Dustin D. Deese*
Dustin D. Deese (FBN: 063441)
P.O. Box 172-
Dade City, Florida 33526
E-mail: dustin@deeselegal.com

Justin L. Dees (FBN: 48033)
Jeffrey W. Gibson (FBN: 568074)
Thomas R. Farrior (FBN: 111965)
MacFarlane, Ferguson & McMullen
201 N. Franklin Street, Suite 2000
Tampa, FL 33602
E-mail: jg@macfar.com
E-mail: trf@macfar.com
E-mail: jdees@macfar.com
Telephone No. (813) 273-4200
Telefacsimile No. (813) 273-4396

*Attorneys for Defendants Rakesh Dixit,*
*E-Integrate, Inc., Knowmentum, Inc., and*
*Media Shark Productions, Inc.*

*/s/Shyamie Dixit*
Shyamie Dixit, Jr. (FBN: 719684)
Robert L. Vessel (FBN: 314536)
3030 N. Rocky Point Drive West,
Suite 260
Tampa, FL 33607
E-mail: sdixit@dixitlaw.com
E-mail: rvessel@dixitlaw.com
Telephone No. (813) 252-3999
Telefacsimile No. (813) 252-3997

*Attorneys for Defendants Feron*
*Kutsomarkos and*
*co-counsel for E-Integrate, Inc.*

*/s/ Evi T. Christou*
Alejandro J. Fernandez (FBN: 32221)
Stephen J. Leahu (FBN: 54037)
**BRINKS GILSON & LIONE**
SunTrust Financial Centre, Suite 3500
401 E. Jackson Street
Tampa, FL 33602
E-mail: afernandez@brinksgilson.com
E-mail: sleahu@brinksgilson.com
Telephone No. (813) 275-5020
Telefacsimile No. (813) 275-5021

William H. Frankel (IL No. 3127933)
*Admitted Pro Hac Vice*
Andrew J. Avsec (IL No. 6292313)
*Admitted Pro Hac Vice*
**BRINKS GILSON & LIONE**
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
E-mail: aavsec@brinksgilson.com
E-mail: wfrankel@brinksgilson.com
Telephone No. (312) 321-4200
Telefacsimile No. (312) 321-4299

Evi T. Christou (D.C. Bar No.1600066)
*Admitted Pro Hac Vice*
**BRINKS GILSON & LIONE, P.C.**
1775 Pennsylvania Ave., NW, Suite 900
Washington, D.C. 20006
E-mail: echristou@brinksgilson.com
Telephone No. (202) 296-6923
Facsimile No. (202) 296-8701

*Attorneys for Plaintiffs*
*HealthPlan Services, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY certify that on October 9, 2019, I electronically filed the foregoing document with the Clerk of the Court CM/ECF, which will send notification of this filing to all counsel of record in this action.

*/s/ Evi T. Christou*