# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

HEALTHPLAN SERVICES, INC.,
     Plaintiff,

v.                           CASE NO.: 8:18-cv-02608-SDM-AAS

RAKESH DIXIT, *et al*.,
     Defendants.
_____/

## HEALTHPLAN SERVICES, INC.'S MOTION FOR SPECIFIC FEES AND COSTS

Pursuant to this Court's Order (Doc. 200, "Order"), Plaintiff HealthPlan Services, Inc. ("HealthPlan") hereby submits its motion detailing its entitlement to specific attorneys' fees and costs to be awarded based on the grant of HealthPlan's first and second motions for fees (Docs. 168, 190), and states as follows:

## I.    INTRODUCTION

From the start of discovery, Defendants Rakesh Dixit, Media Shark Productions, Inc. and Knowmentum, Inc. (collectively, the "Dixit Defendants") obstructed HealthPlan's discovery efforts. Dixit Defendants' discovery abuses spanned multiple granted motions to compel, four discovery hearings, and many in-person and telephonic meetings between counsel for HealthPlan and some six different attorneys representing Dixit Defendants. Beyond obstructing discovery, Dixit Defendants' misconduct *massively* and wantonly duplicated HealthPlan's attorney's fees.

To abate Dixit Defendants' misconduct, the Court granted two motions for sanctions, and ordered Dixit Defendants to pay HealthPlan's reasonable attorney's fees and costs incurred because of Dixit Defendants' latest discovery obstruction. Specifically, the Court ordered

Dixit Defendants to pay HealthPlan's "reasonable attorney's fees and costs incurred for following up on the previously ordered discovery (Doc. 141), preparing the two sanctions motions, and adding these already resolved discovery issues to the joint notice of discovery disputes."  Order, at 3.

As supported by the expert declaration and fee records,[1] Dixit Defendants widespread discovery abuses forced HealthPlan to incur over $54,000 in attorney's fees and costs.  Such fees are reasonable given the requisite high level of skills, experience and reputation needed in this case, local prevailing rates and the amount of time worked.  HealthPlan seeks recovery of these expenses by December 5, 2019, and recovery as a pre-condition to Dixit Defendants' maintaining their claims and defenses in this suit.

## II.     Legal Standard

A reasonable attorney fee is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). In determining the reasonable amount of hours, the Court may conduct an hour-by-hour analysis or it may reduce the requested hours across the board.  *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).  The party requesting the fee should submit documentation in support of the request.  *Hensley*, 461 U.S. at 433.  Nonetheless, the court "is itself an expert

---

[1] True and correct copies of the redacted invoices issued to HealthPlan that were reviewed by the fee expert, Attorney Fee, are attached as **Composite Exhibits 1(a)-(c)**.

on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value." *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940).

## III.   The Fees of HealthPlan's Counsel Are Reasonable

### A.   Given The Complexity Of This IP Suit And The Underlining Healthcare-Related Software, The Requisite "Skills, Experience And Reputation" For Suitable Counsel Is High

The skills, experience and reputation needed to manage the present case is extraordinarily high.  This case involves exceedingly sophisticated healthcare software developed at a cost over $120 million dollars.  The First Amended Complaint (Doc. 37, "FAC") explains the high stakes at issue:

Between 2011 and 2014, HealthPlan developed ExchangeLink®, a powerful healthcare-related software system.  The ExchangeLink® system connects organizations to public and private health insurance exchanges.  It aggregates and processes data across multiple healthcare platforms and distribution channels.  HealthPlan invested nearly $100 million dollars in time, talent and treasure into developing the ExchangeLink® system.  As a result, many of the largest insurance and managed care providers in the United States implemented the ExchangeLink® system.  Ultimately, the ExchangeLink® system became the premier software system associated with the Affordable Care Act.

FAC, ¶ 1.  Given the importance and value of the technology, stopping the misappropriation of its intellectual property ("IP") rights in the ExchangeLink® software system is of highest importance to HealthPlan.  Further, the legal issues arising in the case center around specialized, federal and state IP rights.  Such IP issues implicate complicated, esoteric and ever-changing federal trade secrets and copyright laws.

Few attorneys in Florida have the requisite level of skills, experience and reputation needed to address such challenges.  Often, such attorneys have many years of IP litigation experience, technical experience, and, in Florida, board certified in intellectual property by the

Florida Bar.[2]  Indeed, the results recently obtained before the Court evidence the caliber of the legal work performed by HealthPlan's attorneys and the value of their work.

### B.  The Hourly Rates of HealthPlan's Counsel Are Reasonable

#### 1.  High Rates Are Reasonable For Skilled, Experienced, and Reputed Attorneys in IP

As expected, attorneys skilled in highly complex, high-stakes, federal cases command high hourly rates.  For example, *eComSystems, Inc. v. Shared Marketing Services, Inc. et al.*, Case No. 8:10-cv-1531-T-33MAP, Dkt. 171 (M.D. Fla. Jun. 5, 2012) is instructive because a local, board certified IP attorney at the Florida law firm of GrayRobinson attested in 2012 to the reasonableness of a standard billing rate of over $500 that was applied during the discovery phase in 2011 for an IP case concerning software.  There, this Court held that the discounted rate of $517.5 charged in 2011—*eight years ago*—was reasonable.  This Court thus awarded more than $50,000 in fees and costs associated with the discovery motions, which the Court considered justified.[3]  Exhibit 2(c), at 2 (noting a standard rate of $575 in 2011 and a 10% discount provided to the client).

#### 2.  HealthPlan's Counsel's Rates Are Reasonable

Here, to meet the imposing challenges of bet-the-company stakes, complex legal issues and exploitative opponents, HealthPlan engaged Brinks Gilson & Lione.  Brinks is a nationally renowned intellectual property practice with over 100 years of experience in intellectual property law and a strong presence in Tampa, Florida.  Specifically, HealthPlan selected lead

---

[2] A search of attorneys that are Board Certified in Intellectual Property by the Florida Bar reveals only 140 individuals statewide.

[3] True and correct copies of (a) the affidavit, (b) the accounting memorandum and (c) the Order granting fees in the *eComSystems* case are attached as **Composite Exhibits 2(a)-(c)**.

attorneys William Frankel and Alejandro J. Fernandez for their education, experience, and knowledge related to intellectual property litigation. William Frankel has over 35 years of litigation experience. He is recognized in numerous publications, including *Chambers U.S.A* and *Euromoney's Guides to the World's Leading Patent and Trademark Law Experts*, and was recognized as "Lawyer of the Year" - Chicago, *The Best Lawyers in America*, 2018. Mr. Frankel's biography is attached as **Exhibit 3(a)**. Attorney Fernandez manages Brinks' Florida office and litigated IP cases for nearly 20 years. He is a board certified intellectual property attorney, and has been named among the Top 100 Super Lawyers in Florida and the Top 50 Super Lawyers in Tampa Bay. Mr. Fernandez's biography is attached as **Exhibit 3(b)**.

Courts have previously held Attorney Fernandez's and Attorney Frankel's rates are reasonable. *See, e.g., Gian Biologics, LLC v. CellMedix Holdings, LLC et al.*, Case No. 2:15-cv-00645-JES-CM, Doc. 57 (M.D. Fla. November 4, 2016).

Here, the rates and hours incurred by HealthPlan for the specific tasks identified by the Court in its Order (*see* Doc. 200, at 3) are reasonable. In support, HealthPlan submits the expert declaration of Tampa IP specialist, Attorney Richard E. Fee, of the law firm Fee & Jeffries, P.A.[4] Attorney Fee has previously testified regarding the reasonableness of attorney's fees in intellectual property matters. Moreover, Attorney Fee is board certified in intellectual property law by the Florida Bar, and served as chair of the Intellectual Property Board Certification Committee.

---

[4] A true and correct copy of the Fee Declaration is attached as **Exhibit 4**.

The attorneys' fees and hours incurred by HealthPlan for the Court-identified tasks are set forth below:[5]

| Attorney | Hours[6] | Hourly Rate | Amount |
|---|---|---|---|
| Alejandro Fernandez, Partner | 58.80 | $605 | $35,574.00 |
| William Frankel, Partner | 6.65 | $825 | $5,486.25 |
| Evi Christou, Associate | 34.10 | $355 | $12,105.50 |
| Cindy Lovell, Paralegal | 1.50 | $265 | $397.50 |
| Total | | | $53,563.25 |

As discussed below, Mr. Fee's expert opinion is that fees amounting to $53,465.75 are reasonable for a complex IP case in Tampa in 2019, given "defendants' failure to comply with the July 2019 order [Doc. 141] over the last eleven weeks [which] was not substantially justified." Order, at 3.

The burden is on the fee applicant "to produce satisfactory evidence" that the rate is in line with those prevailing in the community. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984); *see also Norman*, 836 F.2d at 1299 (defining a reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation"). The prevailing market rate in this case is Tampa, Florida. *See Olesen–Frayne v. Olesen*, 2:09-cv-49-FtM-29DNF, 2009 WL 3048451, at *2 (M.D. Fla. September 21, 2009).

---

[5] Attorneys' fees were <u>not</u> included for: (i) the wasted time attributed to counsels' review of the Dixit Defendants' multiple iterations of deficient and incomplete discovery responses; (ii) corresponding and conferring with Defendants' counsel between March 6th and July 29th regarding the same discovery disputes that continued after the July 29th hearing; (iii) the time incurred in preparation for—and attendance of— the May 3rd, May 23rd and July 29th hearings; (iv) the travel time for Mr. Frankel for attending the October 16th hearing; (v) the costs for Lexis research charges relating to the earlier motions and hearings between April and July; (vi) the fees and costs associated with the present Motion; and, (vii) the fees incurred for preparation and attendance of the October 16th hearing, all of which caused HealthPlan to incur significant additional fees. Accordingly, the Defendant's cannot be heard to complain about the cost of their malfeasance as they are only bearing a limited portion (less than half) of the overall cost of their actions.

[6] The hours spent performing the identified tasks are set forth in the spreadsheet attached as **Exhibit 5**.

Here, the hourly rates of HealthPlan's attorneys are reasonable based their background and experience and the customary rates charged for complex IP litigation in the Middle District of Florida. *See, e.g.,* Exhibit 4, ¶¶ 16-17.   HealthPlan's lead counsel, Attorney Fernandez, practices in Tampa as a board certified intellectual property attorney with nearly twenty years of experience and an hourly rate of $605.  Ms. Lovell is a paralegal, who is also based in Tampa and has decades of intellectual property litigation experience.

"If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *ACLU v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).  To efficiently manage the vast quantity of discovery abuses by Dixit Defendants, which are interlaced with intellectual property issues, Attorney Fernandez enlisted the firm's other offices to handle Dixit Defendants' improper litigation tactics.

As noted above, in Tampa, there are few attorneys with the level of expertise required to efficiently address the discovery at issue.  Of these, the size and lengthy history of Dixit's lawsuit, and the revolving door of Dixit Defendants' attorneys, created numerous conflicts with local attorneys.  For example, Greenberg Traurig, Carlton Fields, Holland & Knight, Shutts & Bowen, Hill Ward Henderson, Trenam Kemker, Macfarlane Ferguson & McMullen, McIntyre Panzarella Thanasides, Bringgold & Todd, and the Stanton Cronin Law Group all have conflicts that would make them unsuitable as counsel.  Further, enlisting attorneys of record already familiar with the facts and legal issues of this case resulted in efficiencies compared to attempting to recruit other local attorneys who were not familiar with the case history.  Thus, this Court should permit HealthPlan to recover the rates of its non-local counsel.

Furthermore, HealthPlan selected each member of its litigation team based on their education, experience and ability to handle HealthPlan's claims of copyright infringement and trade secret misappropriation against the Dixit Defendants.  Their rates are in line with those prevailing in the community who handle such complex IP lawsuits concerning healthcare-related software systems.  *See* Exhibit 4, ¶¶ 16-17.  Thus, the Court should find their rates to be reasonable for the present case.

**IV.     HealthPlan's Counsel Expended A Reasonable Number of Hours**

An attorney should exercise proper "billing judgment" and exclude those hours that would be unreasonable to bill a client or opposing counsel.  *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996), *citing Norman*, 836 F.2d at 1301.  HealthPlan respectfully submits that it expended at least 101.05 hours in addressing the discovery issues relevant here. This included many hours preparing for meeting and conferring with the Dixit Defendants' counsel, memorializing such meetings to ensure accountability of Dixit Defendants, following up with many emails and phone calls, establishing a records of Dixit Defendants' failures to comply with discovery stipulations, drafting a first motion for fees associated with one set of discovery violations, drafting a second motion for fees with a different set of discovery violations, and addressing the same discovery issues in the joint notice of discovery disputes and at the Discovery Hearing on October 16, 2019.  *See* Exhibits 1(a)-(c).  The 101.05 hours, or 4.2 days, were expended over the three months that the Dixit Defendants obstructed discovery required by the Court's July 2019 Order.  Order, at 3.  As supported by the detailed invoices (*see id.*) reviewed by Attorney Fee, such hours were reasonable in light of the Dixit Defendants' willful, strategic and obstructive discovery abuses.  *See* Exhibit 4, ¶¶ 14-18

As additional indicia of the reasonableness of HealthPlan's fees calculation, HealthPlan is <u>not</u> requesting reimbursement for all the time and money HealthPlan spent: (i) the wasted time attributed to counsels' review of the Dixit Defendants' multiple iterations of deficient and incomplete discovery responses; (ii) corresponding and conferring with Defendants' counsel between March 6th, the date that HealthPlan filed its first motion to compel against Defendants, and the July 29th hearing date triggering the fees to be awarded pursuant to the Court's Order; (iii) preparing for and attending the May 3rd preliminary pretrial conference and May 23rd and July 29th hearings, which addressed HealthPlan's earlier motions to compel concerning Defendants' ongoing discovery abuses; (iv) the travel time for Mr. Frankel for attending the October 16th hearing; (v) the costs for Lexis research charges relating to the earlier motions and hearings between April and July; (vi) the fees and costs associated with the present Motion; and, (vii) the fees incurred for preparation and attendance of the October 16th hearing. *See* Exhibits 1(a)-(c).   Thus, this Court should find that a reasonable amount of fees would be $53,465.75 for HealthPlan's fees incurred in addressing the Dixit Defendants' discovery abuses. *See* Exhibit 4, ¶ 18.

While the Dixit Defendants' discovery abuses have been ongoing since as early as March, the fees and cost to be awarded pursuant to the Court's Order include only those incurred since the previously ordered discovery on July 30th (*see* Doc. 141) until the October 16th hearing.  Because five out of the seven months of HealthPlan's time addressing Defendants' discovery obstruction are <u>not</u> included in the fees calculation, less than 30% of that discovery phase has been analyzed the present fees request pursuant to the Court's Order.

Accordingly, the fee of $53,465.75 has already been reduced in view of Defendants' abuses that stem from the beginning of the discovery stage.

**V.      The Requested Costs Are Reasonable**

In addition to its reasonable fees, HealthPlan seeks to cover the cost associated with the Lexis research charges relating to HealthPlan's first and second motions for fees and the October 16th hearing.  Specifically, HealthPlan seeks $600 in costs.  As supported by the Fee Declaration, such costs were reasonable.  *See* Exhibit 4, ¶ 19.

**VI.     Dixit Defendants Should Be Required To Pay The Award of Fees And Costs By December 5, 2019 As A Pre-Condition To Maintaining Their Claims and Defenses**

HealthPlan respectfully requests that the order awarding its reasonable fees and costs also provide a date certain for Dixit Defendants' payment of the amount awarded.  Courts have full discretion to set a deadline for the payment of a fee award.  *Ibezim v. The GEO Grp., Inc.*, No. 19-11400, 2019 U.S. App. LEXIS 28934, at *1-2 (11th Cir. Sep. 25, 2019) (*per curiam*) (noting that the district court awarded fees and set a deadline for payment, which was missed; and affirming a judgment on the fee award).   Given the timeline described below, HealthPlan seeks an order requiring the Dixit Defendants to file a notice of compliance confirming timely payment of the fee award *in full* by December 5, 2019.

The Court set out a limited timeframe for the present briefing of the specific fees and costs sought.  Additionally, the Court provided that HealthPlan may renew their motion for additional sanctions and contempt before December 6th if the Dixit Defendants continue their refusal to comply with the Court's orders.  *See* Order, at 4.  At such time, if the Dixit Defendants fail to pay the amount awarded by this Court, HealthPlan would like to address such non-compliance in the same renewal motion in order to conserve the resources of the

judiciary and the parties. Accordingly, HealthPlan requests that the payment deadline for the fee award be set to December 5, 2019.

Further, Dixit Defendants' timely payment of HealthPlan's awarded fees and cost should be a condition to maintaining the Dixit Defendants' claims and defenses in this case. This condition, along with the requested payment deadline, would deter future misconduct.

## VII. Conclusion

For the reasons stated above, HealthPlan is entitled to an Order requiring Dixit Defendants to pay HealthPlan $54,065.75 in attorneys' fees and costs incurred in connection with the specific tasks identified by the Court in its Order (*see* Doc. 200, at 3) no later than December 5, 2019. Further, Dixit Defendants' timely payment of HealthPlan's awarded fees and cost should be a condition to maintaining Dixit Defendants' claims and defenses in this action.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

The undersigned certify that they have conferred with Defendants' counsel, and Defendants oppose the relief sought herein.

Dated: October 30, 2019     Respectfully Submitted,

        */s/ Stephen J. Leahu*
        Alejandro J. Fernandez (FBN: 32221)
        Board Certified in Intellectual Property Law
        Stephen J. Leahu (FBN: 0054037)
        Board Certified in Intellectual Property Law
        **BRINKS GILSON & LIONE**
        SunTrust Financial Centre, Suite 3500
        401 E. Jackson Street
        Tampa, FL 33602
        afernandez@brinksgilson.com
        sleahu@brinksgilson.com

Telephone: (813) 275-5020
Facsimile: (813) 275-5021

Andrew J. Avsec
(IL ARDC No. 6292313)
*Admitted Pro Hac Vice*
William H. Frankel
(IL ARDC No. 3127933)
*Admitted Pro Hac Vice*
**BRINKS GILSON & LIONE**
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
aavsec@brinksgilson.com
wfrankel@brinksgilson.com
Telephone: (312) 321-4200
Facsimile: (312) 321-4299

Evi T. Christou (D.C. Bar No.1600066)
*Admitted Pro Hac Vice*
echristou@brinksgilson.com
**BRINKS GILSON & LIONE, P.C.**
1775 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
Telephone No. (202) 296-6923
Facsimile No. (202) 296-8701

*Attorneys for Plaintiff*
*HealthPlan Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY certify that on October 30, 2019, I electronically filed the foregoing document with the Clerk of the Court CM/ECF, which will send notification of this filing to all counsel of record in this action.

*/s/ Stephen J. Leahu*