UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEALTHPLAN SERVICES, INC.,
    Plaintiff,

v.                                             CASE NO.: 8:18-cv-02608-SDM-AAS

RAKESH DIXIT, *et al*.,
    Defendants.
_____/

**PLAINTIFF'S OPPOSITION TO EMERGENCY MOTION FOR WITHDRAWAL OF DUSTIN D. DEESE AS COUNSEL FOR DEFENDANTS RAKESH DIXIT, KNOWMENTUM, INC., MEDIA SHARK PRODUCTIONS, INC., AND DEFENDANT/COUNTER-PLAINTIFF E-INTEGRATE, INC. [DKT. 236]**

Plaintiff HealthPlan Services, Inc. (herein "HPS" or "Plaintiff") hereby opposes the Emergency Motion of Attorney Dustin D. Deese (herein "Mr. Deese") for Withdrawal As Counsel For Rakesh Dixit, Knowmentum, Inc., Media Shark Productions, Inc., And Defendant/Counter-Plaintiff E-Integrate, Inc. (the "Motion"). The Motion should be denied as it violates this Court's Order requiring that the Dixit Defendants appoint *permanent lead counsel for the remainder of the case*. It is clear that the Dixit Defendants are acting willfully and in bad faith by undermining the counsel that they selected as permanent lead counsel. As a result, the Court should issue an order that the Defendants show cause why the court should not enter default judgement against the Dixit Defendants on all claims and counterclaims. The Motion also fails because (1) Mr. Deese's withdrawal will adversely affect the orderly administration of the Court and this case in particular; and (2) the corporate Dixit Defendants will be left without counsel, and a corporation may appear and be heard <u>only</u> through counsel admitted to practice in the Court.

1

I.   BACKGROUND

   A.   **Defendants' Calculated Discovery Abuses Plague Case**

Since the outset of the case, Defendants have deployed an array of strategies to: delay the case, hide the ball in discovery, shirk their own discovery obligations, ignore numerous court orders, and multiply the expense of litigation for HealthPlan. The litany of abuses cannot be recited within the space limitations, but are detailed in the following documents: Dkt. 68 and 81 (*Healthplan's Motions To Compel Amended Initial Disclosures*); *See* Dkt. 168 (*Plaintiff's First Motion for Sanctions*); Dkt. 190 (*Plaintiff's Second Motion for Sanctions*); Dkt. 226 (*Plaintiff's Third Motion for Sanctions*). Dkt. 93 (Court's Order granting motion to compel); Dkt. 141 (Court's Order granting several motions to compel); Dkt. 195 (Court's Order Granting immediate inspection of Ms. Kutsomarkos' Laptop); Dkt. 200 (Court's Order Granting Sanctions and ordering compliance with defendants' discovery obligations); Dkt. 233 (Second Order requiring laptop be turned over to Plaintiff's for a spoliation investigation and granting reasonable expenses associated with same); Dkt. 234 (Order awarding additional sanctions).

Notably, many of these *same* discovery issues have been pending for over a year. For example, on December 14, 2018, HealthPlan received Defendants' Initial Disclosures. Defendants' Initial Disclosures comprised an eye-popping ***thirty five pages*** identifying in excess of ***350 potential witnesses, each*** purportedly having knowledge concerning the claims at issue in the case. Further, Defendants' Initial Disclosures failed to provide additional information regarding who these individuals and/or parties are, or their significance to the case. After several misrepresentations that the Defendants would amend their Initial Disclosures, HPS moved to compel. *See* Dkt. 68 and 81. The Court ordered that the Initial Disclosures be amended on THREE separate occasions. *See* Dkt. 93 (Order granting Motion to Compel Initial Disclosures); Dkt. 141

at 4 (Order granting motion to compel phone numbers and addresses for individuals disclosed in a party's initial disclosures); Dkt. 200 at 2 (Order on Motion for Sanctions, requiring same).

After more than a year and *three* Court Orders dating back to May 2019, the Defendants refused to serve initial disclosures that comply with the Federal Rules. In addition to Defendants' failure to supplement initial disclosures, Defendants refuse to provide promised responses to HealthPlan's document requests and interrogatories, or provide privilege logs – all items for which the Court ordered compliance long ago. These abuses are detailed in a third Motion for Sanctions. *See* Dkt. 226.

In another egregious case of discovery misconduct, Defendant Kutsomarkos produced documents stripped of metadata, and then turned over her laptop to Defendant Dixit, who promptly removed the hard drives from the computer. This misconduct was not discovered until the records custodian deposition of Feron Kutsomarkos, which illuminated the Defendants' gross mishandling of discoverable information, and efforts to circumvent discovery of such information from HealthPlan. During the records custodian deposition of Feron Kutsomarkos, Ms. Kutsomarkos testified that, presumably with the full knowledge of her counsel Shyamie Dixit, she unilaterally searched her own laptop for documents and emails responsive to HealthPlan's discovery requests (*See* Dkt. 191, Plaintiff's Exhibit F, Custodian Deposition of Feron Kutsomarkos dated September 11, 2019, 35:8-37:25); converted the search results into PDFs in a manner that did not preserve metadata (*Id.* 84:10-20 and 99:15-100:1); did not forensically or otherwise preserve the entire contents of the laptop (*Id.* 57:7-15); and thereafter transferred the laptop containing all native documents and e-mails belonging to her and Media Shark, to *Rakesh Dixit* (*Id.* 95:8-97:3).

After this shocking revelation, it took a hearing, multiple additional meet and confers and *three* orders before the Dixit Defendants turned over the laptop to Plaintiff's counsel. See Dkt.

3

200 ("Healthplan's oral motion to compel immediate inspection of Ms. Kutsomarkos' laptop in Mr. Dixit's possession (Doc. 195) is **GRANTED**); and Dkt. 233 (Mr. Deese, lead counsel for the Dixit defendants, must turn over the hard drives to counsel for HealthPlan by **5 pm on Monday December 23, 2019**). Even in the face of two prior orders, the Dixit Defendants attempted to use an "emergency" withdrawal to avoid their obligations. Showing plainly his motive to disrupt and circumvent the Court's order, the Dixit Defendants instructed Mr. Deese to "make the position with the court that all actions, including the handing over of any personal items of mine [i.e., the Kutsomarkos laptop and hard drives], are suspended, while you move to withdraw, by your own decision, and I retain replacement counsel." *See* Dkt. 236 ("Emergency Motion for Withdrawal"). The Court then issued a third order requiring compliance with the Court's prior order. *See* Dkt. 238 ("Order").

   B.   **Dixit Defendants' "Revolving Attorney" Strategy**

As the Court will recall, for the first eight months of the case, the Dixit Defendants used a rotating cast of at least six attorneys to delay the case by attending hearings and meet and confers, expressing ignorance about the issues in the case, and wholesale avoiding compliance with Defendants' discovery obligations. *See* July 29, 2019 Hearing Transcript, 8:11 – 21:1. During the July 29, 2019 hearing, HPS summarized the issue as follows:

> … what [Rakesh Dixit is] doing is adding new attorneys and then shuffling those that have had an opportunity to get familiar with the case, who have actually attended meet and confers, who have had substantive involvement, made representations to this Court, he shuffles them off to the side and brings in somebody who is new, and as a result of that they ignore this Court's orders, specifically on ESI, they ignore meet and confer arrangements that have already been memorialized in writing, and at the end of it it's just the addition of new – new attorneys.

HPS moved that the Dixit Defendants identify a permanent lead counsel for the remainder of the

case. The Court granted that motion stating:

> By **August 2, 2019**, the Dixit defendants must file a notice confirming who will be the Dixit defendants' permanent lead counsel **for the remainder of the case**. If Dustin Deese will not be permanent lead counsel **for the remainder of the case**, the Dixit defendants must state in the notice who will be permanent lead counsel. Lead counsel must be prepared for, and attend, all future hearings; have full settlement authority; and represent the Dixit defendants for purposes of Local Rule 3.01(g)'s meet-and-confer requirement.

See Dkt.141 ("Order").

On August 2, 2019, in compliance with the Order, Mr. Dustin Deese appeared as counsel of record in place of several attorneys from the MacFarlane law firm. *See* Dkt. 142–147.

While the Dixit Defendants have no doubt orchestrated the carousel of attorneys and refused to cooperate in discovery, Mr. Deese has been complicit in Defendants' discovery abuses. For example, rather than amend their Responses to HealthPlan's requests for production as required by the Court, the Dixit Defendants falsified compliance with the Discovery Order and the Sanctions Order. That is, rather than amend the responses to discovery requests, the Dixit Defendants simply *re-dated* them from May 31 to November 4 and *re-captioned* them as "second amended." Their lead counsel, Dustin Deese, and then co-counsel Johnny Hightower, signed and certified service of the documents. *See* Dkt. 226, *Plaintiff's Third Motion for Sanctions*.

It is against this backdrop that Mr. Deese now moves to withdraw because "professional considerations require termination of the representation." Dkt. 236. Those "professional considerations" appear to be the Dixit Defendants' refusal to pay Mr. Deese and directing Mr. Deese not to comply with the Court Order to turn over the Kutsomarkos laptop and hard drives. The Dixit Defendants' instructed Mr. Deese as follows - "make the position with the court that all actions, including the handing over of any personal items of mine [i.e., the Kutsomarkos laptop and hard drives], are suspended, while you move to withdraw." Dkt. 236. Accordingly, it is clear that the Dixit Defendants intended to use Mr. Deese's withdrawal to violate yet another discovery

5

order.

Defendants actions are willful and in bad faith. Indeed, although the only basis identified in his Motion to Withdrawal is "professional considerations," in a meet and confer, Mr. Deese also disclosed that Dixit Defendants have breached the terms of his engagement, and in particular, the monetary terms; Rak Dixit stopped responding to communications and has gone "radio silent"; the withdrawal of Shyamie Dixit, *which HPS opposes* (Dkt. 217), has left Mr. Deese without the resources or means to continue representing the Dixit Defendants; and Mr. Deese is dealing with some personal and medical issues. *See* Exhibit A, Dec. 18, 2019 Email Summarizing Meet and Confer.[1] Such conduct demonstrates that the Dixit Defendants are undermining Mr. Deese's representation, even though they selected him as permanent lead counsel. The Court already informed the Dixit Defendants that Mr. Deese must be appointed permanent lead counsel – if they refuse to cooperate and pay him, default judgement is the appropriate remedy.[2] Similarly, if the Dixit Defendants are insistent on violating Court orders, the Dixit Defendants should not be rewarded with a withdrawal, suspension of the proceedings, and an opportunity to find replacement counsel. **No replacement** counsel will be able to carry out their duties to represent Defendants in an ethical manner. The appropriate remedy is an entry of a default judgment.

---

[1] Notably, Mr. Deese admits that Mr. Shaymie Dixit's withdrawal would impact his ability to handle the case, providing clear evidence that Mr. Shaymie Dixit is involved in the representation of the Dixit Defendants "behind the scenes." Mr. Deese admission is further support that Mr. Shaymie Dixit's withdrawal from the case should be denied.

[2] While Mr. Deese is now apparently contending that he cannot continue to represent the Dixit Defendants because the Dixit Defendants' intend to violate the Court Orders, the Dixit Defendants have been violating the Court's Orders throughout the case. Mr. Deese was well-aware of the Dixit Defendants' discovery misconduct, when he agreed to become permanent lead counsel **for the remainder of the case**. Indeed, the July 29, 2019 hearing at which he was appointed lead counsel was principally about Defendants' discovery abuses. See Dkt. 141.

## II. DIXIT DEFENDANT'S DISCOVERY ABUSES AND CONDUCT UNDERLYING THE MOTION TO WITHDRAW VIOLATES THIS COURT'S ORDER

Courts enjoy broad discretion to fashion appropriate sanctions for violations of its orders. *See, e.g., Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993). Among the sanctions options available, the court may treat as contempt of court the failure to obey any order. Fed. R. Civ. P. 37(b)(2)(A). This Rule allows for sanctions when a party fails to comply with a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A). The Rule authorizes a variety of sanctions, including rendering a default judgment and holding the disobeying party in contempt of court. *Id.* at 37(b)(2)(A)(iii), (vi), (vii); 37(d)(3).

The intent behind Rule 37 sanctions is both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64 (1980). This deterrence is necessary because "it is not the court's function to drag a party kicking and screaming through discovery." *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 134 (S.D. Fla. 1987).

The sanction of default is seen as a "last resort," but a party's "willful or bad faith disregard" for discovery orders may call for this type of sanction, especially in cases where the party failed to comply with a court order compelling discovery and warning that the failure to comply might result in a default judgment. *See Certain Real Prop. Located at Route 1*, 126 F.3d at 1317–18; *See also BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir. 1994). Bad faith may be found through "delaying or disrupting the litigation or hampering enforcement of a court order." *Eagle Hosp. Physicians, LLC V. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).

*Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 6:16-cv-366, 2017 WL 3584906 (M.D. Fla. July 21, 2017) is instructive. In that case, this Court was faced with a similar, although less

egregious, display of delay and obfuscation in discovery. *Aff'd*, *Phazzer Elecs., Inc. v. Taser Int'l, Inc.,* 754 F. App'x 955 (Fed. Cir. 2018). In *Taser*, the Defendant similarly refused to participate in discovery and used a variety of creative strategies to delay the case. *Id*. The Court concluded that "because it appears that Phazzer, with the assistance of its counsel, is attempting in bad faith to further delay this litigation rather than in a good faith attempt to resolve this case, I will not recommend that the Court stay the litigation." *Id.* at 2, ECF No. 151. That same day, counsel for Phazzer moved to withdraw, citing both irreconcilable differences and Phazzer's failure to pay. *Id*. The Court denied the motion to withdraw without prejudice and required the parties to appear at a technology tutorial. After Phazzer did not attend, the Court set a status hearing and indicated that sanctions, including default, may be entered against defendant for failure to attend. *Taser*, 2017 WL 3584906, at *2.

Counsel for Phazzer filed a renewed motion to withdraw. *Id*. The Court set a hearing, and after a Phazzer representative failed to personally appear, the Court granted the withdrawal. Taser then moved for default judgment for various discovery abuses, which the Court granted along with various enhanced damages, attorney fees, and costs. *See Phazzer Elecs., Inc. v. Taser Int'l, Inc.,* 754 F at 958 (Fed. Cir. 2018).

In this case, we are further along than in the *Taser* case. Here, the Dixit Defendants have already had six attorneys represent them and withdraw in order to avoid their discovery obligations. The precise gamesmanship resulted in Mr. Deese's appointment as **<u>permanent lead counsel</u> <u>for the remainder of the case</u>** to avoid further discovery abuses. Dkt. 141. Since that time, Defendants have been sanctioned twice for discovery abuses, with a third sanctions motion pending. Despite the Court's Order, the Dixit Defendants refuse to work with the attorney that they selected as **<u>permanent lead counsel</u> <u>for the remainder of the case</u>**. Indeed, Mr. Deese

indicates that the Dixit Defendants will no longer communicate with him, will not pay him, and instructed him to withhold the laptop and hard drive from Plaintiff's in violation of the Court Order. *See* Exhibit A, Dec. 18, 2019, Email Summarizing Meet and Confer. Such conduct undermines the Court's Order (Dkt. 141) and makes compliance with the Dixit Defendants' discovery obligations impossible. Defendants' repeated actions are willful and made in bad faith.

In short, if Mr. Deese's representations are accurate, the Dixit Defendants are attempting an end-around the Court's earlier Order by not cooperating with the counsel that they selected to be **permanent lead counsel** **for the remainder of the case**. If the Dixit Defendants refuse to cooperate with their lead counsel and refuse to comply with their discovery obligations, then the proper resolution is not to allow Defendants to circumvent the Court's Order by allowing Mr. Deese to withdraw. Rather, the case must be terminated with default judgment in favor of HealthPlan Services. *See Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 6:16-cv-366, 2017 WL 3584906 (M.D. Fla. July 21, 2017). Accordingly, HPS respectfully requests that the Court require that the Dixit Defendants be prepared at the January 24, 2020 Hearing to show cause why default judgment should not be entered against them on all of the claims and defenses in the case.

### III.    THE MOTION MUST BE DENIED

As set forth above, the Motion must be denied as it violates an earlier Order of this Court and is an attempt to thwart Plaintiff's discovery efforts. In addition, permitting Mr. Deese's withdrawal at this stage of the case would (1) adversely affect the orderly administration of the court and (2) violate the requirement that a corporation may appear and be heard only through counsel admitted to practice in the Court.

Lawyers are officers of the court with independent responsibilities to the court. Having brought a client to the court, the attorney cannot adversely affect the orderly administration of the

court by abandoning the client to his or her own devices before the court. *In re Davis*, 258 B.R. 510, 513 (Bankr. M.D. Fla. 2001) (denying withdrawal because client would be vulnerable and no showing of cause to withdraw). The Florida Rules of Professional Conduct allow an attorney to withdraw from representing a client only if one of the following legitimate bases is satisfied:

> (1) withdrawal can be accomplished without material adverse effect on the interests of the client;
> (2) the client insists upon taking action that the lawyer considers repugnant, imprudent, or with which the lawyer has a fundamental disagreement;
> (3) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
> (4) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
> (5) other good cause for withdrawal exists.

Rule 4-1.16(b). The burden is on the movant. *In re Davis*, 258 B.R. 510, 513 (Bankr. M.D. Fla. 2001). The Motion fails to meet any of these bases. Rather, the Motion cites only "professional considerations require termination of the representation." Those considerations appear to be resolved, as the Court ordered that the Kutsomarkos laptop and hard drives be turned over to HPS' counsel.

"The court's power [to grant or deny a motion for leave to withdraw] is predicated upon the necessity of effective and orderly administration of his court." *Fisher v. State,* 248 So. 2d 479, 485 (Fla. 1971). For that reason, this Court has already required that the Dixit Defendants' select permanent counsel for the remainder of the case because of the Dixit Defendant's discovery abuses. Dkt. 141. The Dixit Defendants' conduct is the basis for Mr. Deese withdrawal. The Dixit Defendants have had ample opportunities to select counsel in this matter; if the Dixit Defendants insist on instructing counsel to violate court orders, refuse to pay counsel, and refuse to return his calls, substituting new counsel will not resolve these issues. If Mr. Deese is permitted to withdraw, it should only be because default judgment has been entered against the Dixit

Defendants.

Finally, the Dixit Defendants include corporations that may appear and be heard only through counsel admitted to practice in the Court. M.D. Fla. L.R. 2.03. The Motion identifies no substitute counsel; if the Motion is granted, the Dixit Defendants cannot appear and be heard in the Court.

## IV. CONCLUSION

For the forgoing reasons, HPS requests that the Motion be denied and that the Court issue an order requiring that Defendants show cause why the court should not enter default judgement against the Dixit Defendants on all claims and counterclaims.

Dated: January 6, 2020

Respectfully Submitted,

*/s/ Andrew J. Avsec*
Alejandro J. Fernandez (FBN: 32221)
Stephen J. Leahu (FBN: 0054037)
**BRINKS GILSON & LIONE**
SunTrust Financial Centre, Suite 3500
401 E. Jackson Street
Tampa, FL 33602
afernandez@brinksgilson.com
sleahu@brinksgilson.com
Telephone: (813) 275-5020
Facsimile: (813) 275-5021

Andrew J. Avsec
(IL ARDC No. 6292313)
*Admitted Pro Hac Vice*
William H. Frankel
(IL ARDC No. 3127933)
*Admitted Pro Hac Vice*
**BRINKS GILSON & LIONE**
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
aavsec@brinksgilson.com
wfrankel@brinksgilson.com

Telephone: (312) 321-4200
Facsimile: (312) 321-4299

*Attorneys for Plaintiff
HealthPlan Services, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY certify that on January 6, 2020, I electronically filed the foregoing document with the Clerk of the Court CM/ECF, which will send notification of this filing to all counsel of record in this action.

/s/ *Andrew J. Avsec*
Alejandro J. Fernandez (FBN: 32221)
Stephen J. Leahu (FBN: 0054037)
**BRINKS GILSON & LIONE**
SunTrust Financial Centre, Suite 3500
401 E. Jackson Street
Tampa, FL 33602
afernandez@brinksgilson.com
sleahu@brinksgilson.com
Telephone: (813) 275-5020
Facsimile: (813) 275-5021

Andrew J. Avsec
(IL ARDC No. 6292313)
*Admitted Pro Hac Vice*
William H. Frankel
(IL ARDC No. 3127933)
*Admitted Pro Hac Vice*
**BRINKS GILSON & LIONE**
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
aavsec@brinksgilson.com
wfrankel@brinksgilson.com

# EXHIBIT A

**From:** Fernandez, Alex <afernandez@brinksgilson.com>
**Sent:** Wednesday, December 18, 2019 2:16 PM
**To:** Dustin Deese <dustin@deeselegal.com>
**Cc:** HPSv.Dixit et al Litigation Group <HPSvDixitetalLitigationGroup@brinksgilson.com>
**Subject:** Meet/Confer re Withdrawal; Meet/Confer re Default, Injunctive and Other Relief

Dustin,

This better memorializes our meet/confer earlier today than my previous email.

Regarding your reasons for withdrawal, you identified the following reasons:
- Dixit Defendants have breached the terms of your engagement, and in particular, the monetary terms.
- Rak Dixit stopped responding to communications from you. You mentioned he has not returned calls or otherwise responded to you in connection with your notice to him that you intend to withdraw from representation.
- The withdrawal of Johnny Hightower and pending withdrawal of Shyamie Dixit has left you without the resources or means to continue representing the Dixit Defendants. You noted, in particular, that as a solo practitioner you do not have the resources to handle the case.
- You're dealing with some personal and medical issues.

Regarding representation going forward, you did not know whether Rak Dixit will seek alternative counsel. This was because he has not responded to your calls/emails regarding withdrawal. In short, you represented he's gone radio silent and unresponsive. Nevertheless, you indicated you will try to speak with him to see if he intends to engage new counsel or will go pro se.

Regarding the laptop/hard drives at issue in our pending motion for sanctions, you stipulated that you will under no circumstances return the laptop/hard drives to Rak. Indeed, you conceded that transferring the equipment to anyone (and especially Rak) without leave of Court would violate the Court's order that you personally maintain such hardware. Thus, you indicated you would address this issue in your motion to withdraw, wherein you would seek the Court's directive/input on this point. If you are able to connect with Rak, you will address whether he still opposes transfer of the laptop to HealthPlan's designated software expert.

As for other documents, you indicated that Shyamie Dixit and, to a lesser degree, Johnny were the two attorneys focused on the production of documents. You indicated you speak with them.

Lastly, we discussed various forms of relief that HealthPlan intends to seek given the present developments involving your withdrawal. These included a default judgment or similar relief (e.g., through struck pleadings or otherwise), injunctive relief and/or monetary relief. You indicated you would attempt to communicate with your client in the next couple of days about this, but you were clear that Rak has not responded to the most basic of communications from you and may not respond regarding these issues either.

15

If you disagree with any aspect of this correspondence, please let me know. Thanks.

Best,
Alex


**Alejandro J. Fernandez**
Shareholder
Board Certified in Intellectual Property
813.275.5022 | Direct
813.420.8658 | Mobile
afernandez@brinksgilson.com
www.brinksgilson.com
**BRINKS GILSON & LIONE**
SunTrust Financial Centre - Suite 3500 | 401 East Jackson Street | Tampa, FL 33602



**Please Note:** This message is intended for the individual or entity named above and may constitute a privileged and confidential communication. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete the message from your system. Thank you.