UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEALTHPLAN SERVICES, INC.,
    Plaintiff,

v.                                      CASE NO.: 8:18-cv-02608-SDM-AAS

RAKESH DIXIT, *et al.*,
    Defendants.
_____/

**PLAINTIFF'S *EXPEDITED* OPPOSED MOTION TO COMPEL COMPLIANCE WITH ORDER 233, FOR SANCTIONS, A FINDING OF CONTEMPT AND FOR SPECIFIC ATTORNEYS' FEES, AND RENEWED MOTION**

Pursuant to Fed. R. Civ. P. 37 and L.R. 3.04(a), Plaintiff HealthPlan Services, Inc. ("HealthPlan"), by and through their undersigned counsel, for good and just cause, respectfully moves this Court to compel Rak Dixit to produce to HealthPlan the original hard drive, all encryption keys, and credentials necessary to access the laptop produced on Dec. 23, 2019, and for sanctions and fees as detailed herein, as well as a payment of HealthPlan's reasonable attorneys' fees ordered in the Court Order of Dec. 20, 2019, ECF No. 233 ("Order"). Additionally, HealthPlan renews its prior motion, ECF No. 218, for additional sanctions, a jury instruction and an order to show cause. In support of its motion, HealthPlan states as follows:

**INTRODUCTION**

Rak Dixit violated every detail of this Court's orders to produce the Kutsomarkos laptop with its original hard drive and the backup external hard drive, and to meet and confer about HealthPlan's reasonable attorneys' fees. In the process, it is apparent he destroyed a "gold mine" of evidence. First, after false representations that his attorneys had the original hard drive and falsely certified compliance with this Court's order, Dixit did *not* produce the original hard drive. Nor did Dixit provide to HealthPlan's counsel documentation of efforts to locate it. Second, he

1

"bricked" the laptop by encrypting it and not preserving the encryption key. After a string of dodges about the encryption key, he claimed he hand wrote it on a Post-It Note, which he purportedly gave to his attorneys at the time he produced the laptop. His attorneys adamantly dispute this, claiming he never gave them an encryption key in any form. Third, he prohibited his attorneys from having a good faith meet and confer about HealthPlan's reasonable attorneys' fees.

At this point, HeathPlan seeks an order: (i) requiring immediate production of the original hard drive and all encryption keys and credentials necessary to access the laptop, original hard drive and external hard drive; (ii) a payment of a daily sanction of $1,000 beginning on Dec. 24 and continuing until the hardware and encryption keys are completely produced, to be paid-up immediately upon issuance of the order, and thereafter weekly; (iii) a finding that Dixit isin contempt for violating the Oct. 18 and Dec. 19, 2019 orders by not producing the original hard drive, refusing to document efforts to locate the original hard drive, encrypting the laptop and destroying the encryption key, and prohibiting his attorneys from having a good faith meet and confer about reasonable attorneys' fees; (iv) an order that Rak Dixit immediately pay HealthPlan $5,800 in reasonable attorneys' fees awarded in the Dec. 19, 2019 Order, ECF No. 233; and (v) costs and fees incurred by HealthPlan in connection with the present motion. Further still, HealthPlan moves this Court for an order to show cause why default judgment should not be entered if the Defendants fail to comply with any of the items (i-v). Lastly, to the extent deemed appropriate by the Court, HealthPlan renews its prior motion, ECF No. 218, for additional sanctions, a jury instruction and an order to show cause. *See* Dec. 19, 2019 Order 6, ¶ (2), ECF No. 233.

## I. RAK DIXIT'S FURTHER VIOLATIONS OF ORDERS TO PRODUCE THE LAPTOP AND HARD DRIVES AND CONFER ABOUT REASONABLE ATTORNEYS' FEES

Dixit willfully and contemptuously violated every aspect of the Court's laptop-related orders.

### A. Dixit Never Produced The Original Hard Drive Of The Kutsomarkos Laptop

The Court ordered Rak Dixit to produce to his attorneys Feron Kutsomarkos' laptop, the original hard drive to that laptop, and a specific external hard drive to his attorneys by Oct. 19, 2019. *See* Oct. 18, 2019 Order 7, ECF 200. Thereafter, his attorneys were to certify compliance. *Id*. On Oct. 19, 2019, counsel for Dixit represented in an email "I am in receipt of the original hard drive and the external hard drive." Attached as Exhibit 1 is a true and correct copy of Mr. Hightower's email. On Oct. 21, 2019, Dixit's attorneys certified to this Court that they were "in receipt of *each hard drive*." Not. of Compl., ECF No. 201. This Notice represented to the Court and opposing counsel that *each hard drive*—the original hard drive and the external hard drive—were produced by Dixit to his attorneys.

After two further Court Orders, on Dec. 23, 2019, Rak Dixit's ("Dixit") counsel finally produced a laptop and a single, external backup hard drive. Dixit's counsel did *not* produce the original hard drive of the laptop, as Dixit was ordered to on October 16, 2019. *See* Oct. 18, 2019 Order 7, ECF 200. Indeed, Dixit never produced the original hard drive to his counsel. To make matters worse, Dixit did not provide documentation to HealthPlan's attorneys regarding his efforts to locate the original hard drive of the laptop, as ordered by the Court. *Id*. Moreover, Dixit's counsel expressly misrepresented to HealthPlan's counsel and falsely certified to this Court that they were in receipt of the original hard drive when in fact they were not. *See* Email of J. Hightower, Exhibit 1, and Not. of Compl., ECF No. 201.

Neither Dixit nor his counsel have any reasonable explanation or justification for their refusal to document their search efforts in connection with the original hard drive. More egregiously, they have no plausible explanation for the misrepresentations and false certification to the Court that they had each of the hard drives in their possession.

The refusal to produce the original hard drive—in Dixit's own words, a "gold mine" of evidence—has severely and irreparably harmed HealthPlan's discovery, and prevented HealthPlan from preparing its claims and defenses in this case. Moreover, Dixit's frantic and keep-away efforts regarding the laptop and hard drives, considered with the false representations and certifications, shine a garish light on Dixit's intent and pattern of litigation misconduct, and must not go ignored.

### B. Dixit Encrypted The Laptop And Did Not Preserve The Encryption Key, Thus Preventing Inspection Of The Laptop

After multiple Court orders to produce the laptop and hard drives for inspection, counsel for Dixit produced the laptop along with an external hard drive on Dec. 23 2019. The laptop Dixit produced, however, was effectively "bricked." Before handing over the laptop, Dixit encrypted it using Apple FileVault 2. FileVault 2 is full disk encryption program that requires user credentials or an encryption key to access the machine's operating system and information stored on the machine. *See Apple Mac OS Security Page* (Jan. 10, 2020, 3:19pm), https://www.apple.com/macos/security/, ("With FileVault 2, your Mac is safe and secure—even if it falls into the wrong hands. FileVault 2 encrypts the entire drive on your Mac). Indeed, according to HealthPlan's digital forensics expert, without credentials or the correct encryption key, FileVault 2 is effectively impenetrable, and prevents access to the entire laptop and its

contents.[1] When Mr. Deese was asked for the user credentials or an encryption key, he indicated he did not have such information, but agreed to request that Dixit provide such information.

Initially, Dixit avoided providing the credentials or encryption key by resorting to word games. Although there is only one laptop and one hard drive, Dixit feigned complete ignorance: "*'Passwords?' For what device and or application. Be clear. You obviously love typing....*"[2] Attached as Exhibit 2 is a true and correct copy of the Email from R. Dixit, dated Jan. 7, 2020. In response, HealthPlan's counsel again identified the laptop and hard drive to Dixit's counsel. Attached as Exhibit 3 is a true and correct copy of the Email from A. Fernandez, dated Jan. 6, 2020. Rather than produce the credentials, Dixit dodged the issue again by feigning ignorance that his attorneys had withheld the laptop until Dec. 23: "*What do you mean "Dec 23rd?" I produced the devices almost THREE months ago. What game are you playing? Please explain what you guys have been doing all this time.*" Attached as Exhibit 4 is a true and correct copy of the Email from R. Dixit, dated Jan. 7, 2020. However, filings by his own attorneys irrefutably show that Dixit was acutely aware that the laptop was withheld until at least Dec. 22, 2019, when Dixit himself directed Dustin Deese not to produce the laptop on December 23. *See* Emergency Motion for Withdrawal of Dustin Deese, ECF No. 236 at 2 (referencing Dixit's Dec. 22 directive

---

[1] To the extent Rak Dixit failed to preserve the original hard drive and encryption key, Plaintiff requests that the Court issue default judgment against Defendants for spoliation of evidence expected to be central to Plaintiff's claims and defenses to the counterclaims. *See Roadrunner Transp. Servs., Inc. v. Tarwater*, Nos. 14-55448 & No. 14-55529, 2016 U.S. App. LEXIS 4999 (9th Cir. Mar. 18, 2016) (affirming default judgment along with attorneys fees for defendant's "deletion of data from his laptop" following court order to "preserve, and not delete, view or alter" the information on his laptop in a trade secret case involving ex-employee; noting the significant stalling tactics and failure to preserve evidence, the court found that the defendant "caused significant expense . . . and have placed unnecessary burdens on the court"; the court awarded $325,000 in attorneys fees and entered default judgment).

[2] As shown in the emails at Exhibit 2, p3, Dixit has effectively sidelined his attorney Mr. Deese, electing to act as his own attorney. For obvious reasons, HealthPlan's counsel cannot deal directly with Dixit, and this has further complicated the orderly administration of this case.

to Mr. Deese to "*make the position with the court that all actions, <u>including the handing over of any personal items of mine are suspended</u>….*") (emphasis added).

Again, rather than ending all controversy by providing the credentials, Dixit suddenly claimed *"You have the passwords. I provided them and have not seen the devices since you had them removed from my possession. What are you doing??"* Dixit Email, Exhibit 4. Yet again refuting Dixit's story, during multiple meet and confers, Mr. Deese confirmed that neither he nor Johnny Hightower had ever received any credentials from Dixit. Attached as Exhibit 5 is a true and correct copy of an Emails from A. Fernandez, dated Jan. 7, 2020.

At a follow-up meet/confer requested by Dustin Deese and Johnny Hightower, they communicated a new version of Dixit's story based on a new email from Dixit. Attached is a true and correct copy of the Email from A. Fernandez, dated Jan. 8, 2020, Exhibit 6. According to Dixit's far-fetched, new account, he hand-wrote a one-time use, uniquely generated encryption key for FileVault 2 on a Post-It Note, which he allegedly stuck to one of the devices at the time he handed it off to Mr. Hightower on October 18, 2019.[3] *Id.* Thus, Dixit claims, he produced the requisite encryption key. *Hand-written. On a Post-It Note*.

Both Mr. Hightower and Mr. Deese adamantly and without reservation have represented to HealthPlan's counsel that no Post-It Note or other encryption key was ever produced by Dixit with the laptop. At this point, in an act that defies all bounds of credibility and reasonableness, Dixit claims that *he preserved no record or backup of the crucial encryption key anywhere*, even as he insists that he needs the laptop back so he can keep using it.[4]

---

[3] The fact that Dixit encrypted the laptop - apparently after the Court had ordered him to turn it over to Plaintiff without touching it – is another example of Dixit violating the Court's orders.
[4] This is straight out of Dixit's playbook of deceptive conduct and entirely consistent with his *modus operandi*. His entire defense in *Bojkovic v. Dixit* was that he had supposedly uploaded software onto "the cloud," provided unique access credentials to Dr. Bojkovic, and then failed to

6

This Court granted HealthPlan's motion to compel "immediate inspection" of the Kutsomarkos laptop that was in Dixit's possession. *See* Oct. 19 Order ¶6, ECF 200, and Dec. 19, 2019 Order 2, ECF No. 233. After Dixit's multiple, frenzied attempts to withhold the laptop from inspection—which this Court rejected and held were unjustified—his attorneys finally appeared to produce the laptop for inspection on Dec. 23, 2019. What was produced, however, amounted to a brick. By encrypting it with the impenetrable Apple FileVault 2 software, Dixit surreptitiously and contemptuously violated this Court's orders, ECF Nos. 200 and 233. In short, he never produced the laptop *for inspection* and he never produced the original hard drive. This, without more, is a direct violation of the Court's Oct. 19 and Dec. 23 orders, and warrants a finding of contempt of Court.

Moreover, his games and deception with his own attorneys and opposing counsel demonstrate that his violation is willful, unjustified, and in bad faith. It further drives up the cost of litigation for Plaintiff; costs which Defendants maintain they do not intend to pay.

### C. Dixit Prohibited His Attorneys From Conducting A Good Faith Meet/Confer Regarding The Reasonableness of HealthPlan's Attorneys' Fees

Dixit violated this Court's order to meet and confer about the reasonableness of fees by prohibiting his attorneys from engaging in a good faith discussion. Attached as Exhibit 7, p3, is a composite of emails memorializing Dixit's refusal to permit his attorneys to discuss in good faith the reasonableness of HealthPlan's attorneys fees. Quite the contrary, he expressly prohibited his attorneys from discussing the reasonableness of fees or negotiating payment of any amount in connection with the Order. *Id.* To make matters worse, astonishingly, Dixit

---

retain the passwords, thus conveniently losing all evidence of his conduct, while blaming the loss of the passwords on the opposing party. 2016-CA-001246 (Fla. 6th DCA 2016), Amended Compl., ¶¶62-70.

hijacked the planned fees meet and confer to demand the return of his laptop so he could return to using it. *See* Jan. 3 Email of A. Fernandez, Exhibit 7. Dixit's wholesale refusal to permit his attorneys to discuss reasonable attorneys' fees to pay in compliance with this Court's order is in itself another violation of the Dec. 19, 2019 order.

### D. Dixit's Litigation Misconduct Has Irreparably Harmed HealthPlan And Made A Mockery Of The Judicial System

Dixit's litigation misconduct is in the extreme. Month after month, hearing after hearing and motion after motion, Dixit and his attorneys have falsely promised, gamed, abused, deceived, and unjustifiably refused to abide by the Federal Rules, Local Rules, numerous Court orders, admonishments by the Court or even the Florida Rules of Professional Responsibility. This unchecked misconduct has caused irreparable harm to HealthPlan insofar as its completely prevented it from preparing its meritorious claims and defenses in this case, while grossly multiplying litigation expenses. This Court should no longer tolerate Dixit's contempt.

### E. Rule 37 Sanctions And Attorneys' Fees For Failure To Obey Court Orders

A court may award sanctions pursuant to its inherent authority. *People for the Ethical Treatment of Animals v. Dade City's Wild Things*, 2018 U.S. Dist. LEXIS 8761, at *2 (M.D. Fla., Jan. 19, 2018). "Courts have the inherent authority to control the proceedings before them, which includes the authority to impose 'reasonable and appropriate' sanctions." *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) (citations omitted).

Federal Rule of Civil Procedure 37 provides that a court shall award sanctions, including expenses incurred as a result of filing a discovery motion, if the party's failure to comply with its discovery obligations is not substantially justified. *See* Fed. R. Civ. P. 37(b)(2)(C); *see, e.g., BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1048-49 (11th Cir. 1994) (imposing monetary sanctions against party and its counsel for failure to obey a discovery order).

Sanctions may be imposed for noncompliance with a court order even without a showing of willfulness or bad faith on the part of the disobedient party. *See BankAtlantic*, 12 F.3d at 1049 (only when a court imposes the most severe sanctions is a finding of willfulness or bad faith failure to comply necessary).

Courts enjoy broad discretion to fashion appropriate sanctions for discovery order violations. *See, e.g., Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993). Among the sanctions options available under Rule 37, courts may treat as contempt of court the failure to obey any order. Fed. R. Civ. P. 37(b)(2)(A).

Here, Dixit's willful and contemptuous violations of a string of Court orders warrant severe sanctions, as detailed in Section V, *infra*.

## IV. HEALTHPLAN'S REASONABLE ATTORNEYS' FEES FOR THE LAPTOP-RELATED MEET/CONFERS AND MOTION

A reasonable attorney fee is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). In determining the reasonable amount of hours, the Court may conduct an hour-by-hour analysis or it may reduce the requested hours across the board. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The party requesting the fee should submit documentation in support of the request. *Hensley*, 461 U.S. at 433. Nonetheless, the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value." *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940).

HealthPlan incorporates by reference Sections II-III of its Motion for Specific Fees and Costs, 2-5, ECF No. 206, which relate to the reasonableness of the hourly rates of its attorneys. Based on the Court's order, ECF 234, HealthPlan presents the following attorneys' fees and hours incurred by HealthPlan for the Court-identified task:

| Attorney | Hours[5] | Reduced Hourly Rate[6] | Amount |
|---|---|---|---|
| Alejandro Fernandez, Partner[7] | 14.5 | $400 | $5,800.00 |
| Total | | | $5,800.00 |

HealthPlan respectfully submits that it expended at least 14.5 hours in addressing the discovery issues relevant here. An attorney should exercise proper "billing judgment" and exclude those hours that would be unreasonable to bill a client or opposing counsel. *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996), *citing Norman*, 836 F.2d at 1301. Here, HealthPlan incurred hours meeting and conferring with the Dixit Defendants' counsel, memorializing such meetings to ensure accountability of Dixit Defendants, drafting an extensive, and ultimately successful, thirteen page motion supported by citations to authorities, deposition transcripts, hearing transcripts and correspondences.

Based on the time incurred at an hourly rate of $400, HealthPlan respectfully requests an award of $5,800 as reasonable attorneys' fees.

## V. CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, HealthPlan seeks an order (i) requiring immediate production of the original hard drive and all encryption keys and credentials necessary to access the laptop, original hard drive and external hard drive; (ii) a payment of a daily sanction of

---

[5] The hours spent performing the identified tasks are set forth in the spreadsheet attached as Exhibit 8.
[6] The reduced hourly rate is based on the amount set by the Court as reasonable.
[7] It was determined that it would cost significantly more to bring a second more junior attorney up-to-speed on the various meet and confers, hearings, orders, and misconduct.

$1,000 beginning on Dec. 24 and continuing until the hardware and encryption keys are completely produced, to be paid-up immediately upon issuance of the order, and thereafter weekly; (iii) a finding that Dixit is in contempt for violating the Oct. 18 and Dec. 19, 2019 orders by not producing the original hard drive, refusing to document efforts to locate the original hard drive, encrypting the laptop and destroying the encryption key, and falsely representing and certifying to the Court and HealthPlan's counsel that Dixit's attorneys received the original and external hard drives; (iv) an order that Rak Dixit immediately pay HealthPlan $5,800 in reasonable attorneys' fees awarded in the Dec. 19, 2019 Order, ECF No. 233; and (v) costs and fees incurred by HealthPlan in connection with the present motion. Further, HealthPlan moves this Court for an order to show cause why default judgment should not be entered if the Defendants fail to comply with the items (i-v). Moreover, to the extent deemed appropriate by the Court, HealthPlan renews its prior motion, ECF No. 218, for additional sanctions, a jury instruction and an order to show cause. *See* Dec. 19, 2019 Order 6, ¶ (2), ECF No. 233. Without such sanctions, Dixit will be emboldened to continuing his abusive litigation tactics.

**Rule 3.01(g) Certification**

Pursuant to Local Rule 3.01(g), I hereby certify that I have conferred with Dustin Deese regarding the relief requested herein and he opposes this motion.

Dated: January 10, 2020                           Respectfully Submitted,

                                                  */s/Alejandro J. Fernandez*
                                                  Alejandro J. Fernandez (FBN: 32221)
                                                  Stephen J. Leahu (FBN: 0054037)
                                                  **BRINKS GILSON & LIONE**
                                                  SunTrust Financial Centre, Suite 3500
                                                  401 E. Jackson Street
                                                  Tampa, FL 33602

afernandez@brinksgilson.com
sleahu@brinksgilson.com
Telephone: (813) 275-5020
Facsimile: (813) 275-5021

Andrew J. Avsec
(IL ARDC No. 6292313)
*Admitted Pro Hac Vice*
William H. Frankel
(IL ARDC No. 3127933)
*Admitted Pro Hac Vice*
**BRINKS GILSON & LIONE**
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
aavsec@brinksgilson.com
wfrankel@brinksgilson.com
Telephone: (312) 321-4200
Facsimile: (312) 321-4299

*Attorneys for Plaintiff
HealthPlan Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY certify that on January 10, 2020, I electronically filed the foregoing document with the Clerk of the Court CM/ECF, which will send notification of this filing to all counsel of record in this action.

*/s/ Alejandro J. Fernandez*
Alejandro J. Fernandez