UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEALTHPLAN SERVICES, INC.,

    Plaintiff,

v.                                                Case No.: 8:18-cv-2608-T-23AAS

RAKESH DIXIT, FERON
KUTSOMARKOS, E-INTEGRATE,
INC., KNOWMENTUM, INC., and
MEDIA SHARK PRODUCTIONS,
INC.,

    Defendants.
_____/

## ORDER

HealthPlan Services, Inc. (HealthPlan) seeks to recover its attorney's fees and costs related to its motion to compel compliance with the court's order directing the defendant, Mr. Rakesh Dixit, to turn over the hard drives of Ms. Feron Kutsomarkos's laptop. (Doc. 260). The parties were to meet and confer on the amount to be awarded. (Doc. 233, p. 6). Since the parties could not agree, HealthPlan filed this motion. (Doc. 260). The Dixit defendants (Rakesh Dixit, E-Integrate, Inc., Media Shark Productions, Inc., and Knowmentum, Inc.) did not respond and the time to do so has passed.

**I.    BACKGROUND**

Because the court previously addressed the discovery history in its prior order (Doc. 234), the focus here is on the events surrounding the production of the hard

drives from Ms. Kutsomarkos's computer. At the October 16th discovery hearing, the court granted HealthPlan's oral motion to compel immediate inspection of Ms. Kutsomarkos's laptop in Mr. Dixit's possession. (Doc. 200, ¶ 6). On October 21, Attorney John Hightower filed a notice of compliance stating Mr. Dixit turned over the hard drives to him (Doc. 201), who would hold them until HealthPlan complied with the protective order on selection of a forensic expert (Doc. 104, ¶ 4(e)).

Despite the court's order requiring counsel for the Dixit defendants to turn over the hard drives once the expert was selected, HealthPlan again had to seek court intervention. (Doc. 218). The court ordered Attorney Dustin Deese to turn over the hard drives by 5 pm on December 23, 2019.[1] (Doc. 233). Mr. Dixit then directed Attorney Deese to move to withdraw to suspend all of Mr. Dixit's obligations, including turning over the hard drives. (Doc. 236). The court took Attorney Deese's motion to withdraw under advisement but still ordered Attorney Deese to turn over the hard drives to HealthPlan. (Doc. 238).

On January 14, HealthPlan moved to compel compliance with the court's order (Doc. 233), specifically to provide all encryption keys and credentials necessary to access the laptop[2] and hard drive produced on December 23, 2019 (Doc. 248). The

---

[1] Attorney Deese received the hard drives from his former co-counsel Attorney Hightower after the court granted Attorney Hightower's motion to withdraw. (Doc. 268, p. 8:9–15).

[2] Initially the court ordered Mr. Dixit to produce the original hard drive from the laptop (Doc. 200, ¶ 6(c)), which Mr. Dixit said he had removed from the laptop. At the January 24 hearing, Mr. Dixit changed his testimony and explained the original

court set a hearing on the HealthPlan's motion for January 24, 2020. (Doc. 250).

At the January 24th hearing, Mr. Dixit testified he put a password on the back-up hard drive when he first made the hard drive but changed the password after being ordered by the court to turn over the hard drive.[3] (Doc. 268, pp. 18:16–20:17). Mr. Dixit explained he wrote the new password on a blue Post-It note and gave to Attorney Hightower. (*Id.* at pp. 20:23–21:10). Attorney Hightower stated Mr. Dixit provided no password or encryption key to him. (*Id.* at pp. 12:9–13:2). Attorney Deese also said that when he received the hard drive and laptop from Attorney Hightower, he did not receive a password or encryption key. (*Id.* at pp. 7:13–9:9).

In another twist of the testimony, Mr. Dixit explained he had additional, previously undisclosed back-up hard drives of the laptop at his home. (*Id.* at p. 28:9–19). Thus, the court ordered Mr. Dixit to search for any back-up hard drives of Ms. Kutsomarkos's laptop and to provide those hard drives to HealthPlan's law firm by January 28, 2020. (Doc. 252, ¶¶ 2–3). The court granted HealthPlan's motion for attorney's fees and costs incurred in preparing the motion to compel. (*Id.* at ¶ 12).

## II. ANALYSIS

HealthPlan now seeks an award of $29,967.07 in expenses including attorney's fees and costs:

---

hard drive remained inside the laptop, which Mr. Dixit turned over to Attorney Hightower (Doc. 268, p. 17:9–17).

[3] Mr. Dixit also changed the current password on the laptop containing the original hard drive to a computer-generated password. (Doc. 268, p. 25:3–6).

| Timekeeper | Hours | Rate per Hour[4] | Total |
|---|---|---|---|
| Alejandro Fernandez (Partner/Shareholder) | 31.3 | $400.00 | $12,520.00 |
| William Frankel (Partner/Shareholder) | 5.0 | $550.00 | $2,750.00 |
| Stephen Leahu (Senior Associate) | 1.2 | $325.00 | $390.00 |
| Cindy Lovell (Paralegal) | 1.4 | $125.00 | $175.00 |
| EPIQ's Invoices | | | $13,928.13 |
| Federal Express charges | | | $134.69 |
| Expenses covering laptop shipping box | | | $24.95 |
| Research charges | | | $44.30 |
| **Total** | **38.9** | | **$29,967.07** |

The initial burden of proof that the fee is reasonable falls on HealthPlan, who must submit evidence of the reasonableness of the number of hours expended and the hourly rate claimed. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). The starting point for setting an attorney's fee is to determine the "lodestar" figure: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Norman*, 836 F.2d at 1299. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Gaines v. Dougherty Cty. Bd. of Edu.*, 775 F.2d 1565, 1571 (11th Cir. 1985).

---

[4] The rates per hour for Attorneys Fernandez and Frankel and Ms. Lovell, a paralegal, are based on the amounts previously ordered by this court as reasonable. (Doc. 234).

Most or all of these factors are subsumed in the calculation of the lodestar:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases.

*Norman*, 836 F.2d 1292 (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

The reasonableness of the rate charged is determined by its congruity with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The going rate in the community is the most critical factor in setting the fee rate. *Martin v. Uni. of S. Ala.*, 911 F.2d 604, 610 (11th Cir. 1990).

A fee applicant may meet the burden to show the reasonable rate by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299. The court may also use its own expertise and judgment to assess the value of an attorney's services. *Id.* at 1303; *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cty.*, 278 F. Supp. 2d 1301, 1310 (M.D. Fla. 2003); *Scelta v. Delicatessen Support Servs.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

The courts are not authorized "to be generous with the money of others, and it

is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). When reducing fees, courts may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Although courts may apply either method, they cannot apply both. *See id.* Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.*

The court will address the reasonableness of the hourly rates charged before addressing the reasonableness of the time entries.

### A.     Reasonable hourly rate

The court may decide a reasonable rate based on its own expertise and judgment. *Norman*, 836 F.2d at 1303–04. The court looks to the skills, experience, and reputation of the attorneys to determine what comparable lawyers charge for similar services in this locality. "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *Barnes*, 168 F.3d at 437; *Cullens v. Ga. Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). Thus, the relevant legal market is Tampa, Florida.

The court need not address the reasonable hourly rates of Attorneys Frankel

6

and Fernandez or Ms. Lovell's hourly rate because the rates submitted reflect the reduced hourly rate this court previously found reasonable. (Doc. 234). Attorney Stephen Leahu is the only hourly rate the court has not addressed. HealthPlan states Mr. Leahu was a senior associate with Brinks Gilson & Lione and has over ten years of litigation experience. (Doc. 260, p. 2, n.3). HealthPlan seeks to recover $325 as Attorney Leahu's hourly rate because his experience level is between Attorney Christou—reduced hourly rate of $250—and Attorney Fernandez—reduced hourly rate of $400. (*Id.*).

Based on his experience and the reasonable hourly rate for attorneys in Tampa, Attorney Leahu's rate is reasonable. *See MWR Holdings, LLC v. Academy of Tampa, Inc.*, No. 8:14–cv–1325–T–30MAP, 2014 WL 5590998, at *1 (M.D. Fla. Nov. 3, 2014) (hourly rates between $400 and $475 were reasonable given the respective attorneys' experience and the market rate in Tampa, Florida); *Dynamic Designs Distrib., Inc. v. Nalin Mfg., LLC*, No. 8:13–cv–707–T–33TBM, 2014 WL 11279821, at *2 (M.D. Fla. June 16, 2014) (hourly rates between $195 and $330 were reasonable).

B. **Reasonable hours and time entries**

Next, the lodestar analysis requires the court to determine the reasonable number of hours the moving party's attorneys expended. *Rowe v. Fla. Patient Compensation Fund*, 472 So. 2d 1145, 1150 (Fla. 1985). To prevail in its request for attorney's fees, the moving party should present accurate records that detail the work the attorneys performed. *Id.* Inadequate documentation may reduce the fees

7

requested. *Id.*; *Hensley*, 461 U.S. at 433. The court may also reduce hours it finds excessive or unnecessary. *Rowe*, 472 So. 2d at 1150.

After the moving party provides sufficient documentation to support an attorney's fees award, the burden shifts to the opposing party to point out with specificity which hours should be reduced. *22nd Century Prop., LLC v. FPH Prop., LLC*, 160 So. 3d 135, 142–43 (Fla. Dist. Ct. App. 2015) (quotation and citation omitted). Conclusory objections and generalized statements are not given much weight. *Gray v. Lockheed Aeronautical Sys., Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997) (citation omitted). Hours to which the opposing party fails to object with specificity are accepted as reasonable. *Scelta v. Delicatessen Support Serv., Inc.*, 203 F. Supp. 2d 1328, 1333–34 (M.D. Fla. May 13, 2002) (citations omitted). And the court must review the billing log to determine whether the work was unnecessary, excessive, redundant, or included improper billing or clerical work performed by attorneys. *See Barnes*, 168 F.3d at 428.

HealthPlan sufficiently documented the hours requested, and the Dixit defendants did not object to the hours or time entries. The court's review of HealthPlan's billing log reveals the hours billed by HealthPlan are reasonable.

**C.  Costs**

HealthPlan seeks to recover the costs incurred in preparing the motion to compel. (Doc. 248, p. 11). The court granted the motion and determined the awarded costs include the reasonable charges of EPIQ and expert Russel Brown from

8

December 23, 2019 to January 24, 2020. (Doc. 252, ¶12). HealthPlan seeks $13,928.13 in expert expenses and provides an itemized time sheet and invoice from EPIQ detailing the experts' work. (Doc. 260, Ex. 2). HealthPlan also seeks to recover $203.94, which includes Federal Express charges, research charges, and expenses for the laptop shipping box. (Doc. 260, p. 3).

Had the Dixit defendants properly handled their discovery obligations, experts to address possible spoliation or destroying evidence would not be necessary. Russel Brown is a senior forensic consultant with EPIQ with over twenty years of experience in information technology and compute forensic. (Doc. 218-1, p. 16). Because of the encryption on the laptop, EPIQ's role was to collect the limited data from the laptop and advise HealthPlan what was accessible. (Doc. 260, Ex. 2). EPIQ also reviewed the discrepancies between the hard drive and laptop to determine what was on the hard drive and what missing files should have been on the hard drive. (*Id.*). EPIQ's time spent was reasonable because of the issues presented with the hard drive and laptop.

The Dixit defendants did not object to the costs presented by HealthPlan. Because the costs are reasonable and related to HealthPlan's motion to compel compliance, HealthPlan is awarded its requested costs.

**D.     Final Calculation**

Thus, HealthPlan should be awarded **$29,967.07** in expenses including attorney's fees and costs. HealthPlan's award is calculated as follows:

| Timekeeper | Hours | Rate per Hour | Total |
|---|---|---|---|
| Alejandro Fernandez (Partner/Shareholder) | 31.3 | $400.00 | $12,520.00 |
| William Frankel (Partner/Shareholder) | 5.0 | $550.00 | $2,750.00 |
| Stephen Leahu (Senior Associate) | 1.2 | $325.00 | $390.00 |
| Cindy Lovell (Paralegal) | 1.4 | $125.00 | $175.00 |
| EPIQ's Invoices | | | $13,928.13 |
| Federal Express charges | | | $134.69 |
| Expenses covering laptop shipping box | | | $24.95 |
| Research charges | | | $44.30 |
| **Total** | **38.9** | | **$29,967.07** |

### III.  CONCLUSION

HealthPlan's motion for specific fees and costs (Doc. 260) is **GRANTED.** HealthPlan is awarded reasonable expenses including attorney's fees and costs of **$29,967.07** to be paid within thirty days from this order.

**ORDERED** in Tampa, FL on March 3, 2020.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge