This is to refute HPS' Counsel's claims (See Exhibit E): Aside from the native email files, 'everything' was provided via Kutsomarkos/EI/Shyamie Dixit's production. Any subsequent production based on the computer that was used to generate the original production, again, besides the fully-provided native email files, was from Dixit Attorneys and did not contain anything greater than the original production when Dixit put his property, the Computer, to use.

Therefore, regardless of the fact that the access credentials provided by Dixit were lost between his delivery to Counsel on Oct. 20th and Jan. 6th - a full 80 Days, when it was first identified that access credential were required, there would have been nothing further to recover or review. Any calculated changes, as Plaintiff's expert attempted to highlight, is irrelevant, because:

- Dixit clearly states that, between the time the native files were produced during the Sep. 20th hearing before the Magistrate, as requested by counsels during Kutsomarkos' Sep. 11th deposition, he began using the computer that belonged to him.
- In the process of using his own property, the computer was upgraded, drive space was repurposed and new files were generated.
- It follows, then, to be of no surprise to anyone with a semblance of common sense to understand that - what was subsequently produced by Dixit, per command of the magistrate, from said back-ups of his own, repurposed computer - where file structures, volumes & sizes will of course, vary, from prior comparisons.

**SUMMARY:**

I.   A.

- **Fees:** There is NO money to pay the sanctions and even if there was, it would come after the previous state lawsuit's settlement payments are made.
- **New lead counsel:** Dixit is waiting on remaining information/assets from previous counsel in order to secure new.
- **Initial disclosures:** Everything was completed; if anything remains, it's a mystery to Dixit/Kutsomarkos' and their counsel.
- **Interrogatories answers**: Everything was completed; if anything remains, it's a mystery to Dixit/Kutsomarkos' and their counsel.
- **Falsified amended response to discovery:** This is not proven and is merely hearsay. If the court or plaintiff's counsel cannot understand what & how production was provided, it does not prove falsification; rather, striving for comprehension by plaintiff & their counsel should first be exhausted until established and Dixit/Kutsomarkos will provide responses to coherent questions.

- **Supplement production:** There is nothing left to produce. Everything has been produced, UNLIKE HPS & their counsel.
- **Privilege log:** Without former or new counsel's support, this cannot be addressed.
- **Meet and confer:** Unknown, that's between counsel
- **Accessed laptop:** As stated in the opening paragraph the laptop access credentials - *"…were lost between his [Dixit's] delivery to Counsel on Oct. 20th and Jan. 6th - a full 80 Days, when it was first identified that access credentials were required…"*
- **Original backup:** This was produced and, other than the native healthplan.com email files, from Kutsomarkos, that were subsequently produced and completely match that of the original and complete production by Attorney Dixit, in total, nothing remains to be produced.
- **Substitute counsel:** Since the last hearing before the magistrate, no subsequent media, files or content from prior counsel was made available, given the global pandemic currently being experienced, potentially new counsels are unwilling to discuss this effort, let alone with the state of defense's hold on its discovery.
- **ALL discovery orders by Feb 21 deadline:** There is nothing left to produce.
- **Regarding the Plaintiff's inaccurate and false Footnote:** Kutsomarkos benefited from and is complicit in litigation misconduct: Kutsomarkos produced everything asked of her (PDF, Word, Excel, PPT, TIFF, JPEG, PNG, Audio, Movie, Illustrator, Photoshop, InDesign, and other file types) within the ordered timeframe. The first time there was every any indication that there was a need for anything additional was only after HPS was told that the computer was no longer in her possession; many months after production was complete. The only instruction prior to that, was to preserve the produced items, which was done and still exists in the jointly shared Dropbox files. Outside of that, Kutsomarkos was not ordered to, nor asked to do anything else with regard to production.

**B.**
- The laptop was produced, intact, when ordered.
    1. The credentials were produced with the laptop. It was an auto-generated password because Dixit did not want to share his personal password with everyone. No mention of an inability to access the laptop occurred for almost an entire quarter.
    2. Dixit made it clear to the court prior to being ordered to produce any additional partial backups in his possession, that what he had in his

possession was not the same as what was originally produced. The second backup was an add-on to the original production request and was not created with the same intention, as it was not intended for the court.
   a. The original hard drive was not taken out of the laptop, the reference to that was in regard to the external hard drive being created, not the computer's hard drive:
      i. Per the request of Counsel (Attorney Hightower) to not just have the image of the computer on the external drive created per Court order, but also to have the original drive, in response, the laptop was left to match the auto-generated password on the image and not to have to turn over a personal password, being used elsewhere.
      ii. Apple time machine backup on Oct 19th; in order to have additional backups since the primary was being turned over and he wanted to make sure he retained the "original data" from the machine.
      iii. Dixit accessed the laptop not to add a password, but to change from a personal password.
   b. Dixit did not claim to have made a "mirror image" of the laptop, he indicates that he does not "save things like applications and things like that on images."
      i. The image produced was made Sept 19, not after Oct 16 because that's the image Dixit still had in his possession, nothing else.
      ii. Kutsomarkos did not "disclose" that the laptop had been wiped. She made an assumption based on the fact the computer was no longer in working order, that that was the only option to repair. She also stated that ***she did not know what, if anything, was done to the computer.***
      iii. Of course, there is a difference in what was included in the first produced drive vs the second; they were not created with the same intention, as repeatedly indicated.
   c. HPS filed for a copyright of "ADS" in September of 2018, SEVEN years after it was introduced (proven in RDixit@healthplan.com email to Saru Seshadri & James Vertino (See Exhibit's A, B and C) to them by Dixit in mid-2012, via Kutsomarkos's engagement, and in the same year Kutsomarkos was terminated and after the lawsuits began. Clearly, HPS mistakenly believes that filing for a copyright of

something that was introduced to them, by the individuals/entities that they are suing, after the fact, entitles them to some type of claim to the intellectual property; this is not a surprise, since the same effort was applied to the source code for which EI granted limited use to HPS for their industry-specific & singular purpose (see HPS - EI Settlement Agreement (Exhibit D), they could not be further from the truth.  The **Advanced Demonstration Services** program and positioning was instituted at HPS in 2012 when Rak Dixit and EI shared documents and templates (See Exhibits A, B and C), some of which were created a decade, earlier, to produce assets for HPS and this has been provided in production for the jury to review, as have numerous former HPS carrier clients, to date.

Exhibit A: HPS Advanced Demonstration Services

From: **Dixit, Rakesh** rdixit@HealthPlan.com
Subject: HPS Advanced Demonstration Services
Date: May 17, 2012 at 11:42 AM
To: Chris, Wallace wchris@HealthPlan.com, Deosthale, Rahul rdeosthale@healthplan.com
Cc: cwallace@ultramatics.com, rdeosthale@ultramatics.com

Chris, Rahul, please edit the below based on what I can or need to be able to demonstrate in the near term... sending this note to Dennis, Jim & Saru and they'll be forwarding to Jeff.

================================================================

Gentlemen,

Per our recent discussions, the following focus areas will be addressed during the remainder of this quarter for the establishment of the HPS Advanced Demonstration Services:

1. Go-To-Exchange Strategy:
   a. End-to-End Presentation
   b. Demonstrate "X" Bullet-Shots for each Business Processes & their SELECTED Associated Sub-Processes as "Day in the Life Scenarios" for an HPS "Links Platform" Solution Analyst
      1. Exchange On-boarding
      2. Carrier/Entity On-boarding
      X-1.
      X. Member Management
   c. Demonstrate "X" Bullet-Shots for each Business Processes & their SELECTED Associated Sub-Processes as "Day in the Life Scenarios" for a "ServiceLink" CSR
   d. Demonstrate "X" Bullet-Shots for each Business Processes & their SELECTED Associated Sub-Processes as "Day in the Life Scenarios" for a "LoyaltyLink" CSR
      1. Retention
      2. Renewals


Best regards,

Rak.

Exhibit B: Ultramatics SOWs

**From:** "Saru Seshadri" <saru@Ultramatics.com>
**To:** "Rakesh Dixit" <rdixit@ultramatics.com>, "David Riek" <driek@ultramatics.com>
**Cc:** "Karl E. Sexton" <ksexton@ultramatics.com>
**Subject:** Ultramatics SOWs

Please review, they will be submitted at 10 AM on Saturday.

Jim,

We are pleased to present the SOWs that reflect our conceptual agreement via email today for continuation of work. For ready reference, we are calling out the changes that have been made from our previous SOW drafts that you have reviewed.

- In total there are 5 documents.
    1. Document 1 (HPS MSA Amendment 1) amends the current MSA to include Net 15 terms and adds the payment default terms.
    2. Document 2 (HPS ServiceLink A-12) is the ServiceLink Enablement SOW.
        a. Removes the end date in the opening paragraph, providing you flexibility to extend beyond the original February end date.
        b. Changes the termination condition to a mutual 90 day term
        c. Adds the ADS (Advanced Demonstrated Services) capability to the team
    3. Document 3 (HPS SOW A-13 Transformation)
        a. Changes the termination condition to a mutual 90 day term
        b. Adds the ADS (Advanced Demonstrated Services) capability to the team
    4. Document 4 (HPS SOW A-11 ExchangeLink)
        a. Removes the end date in the opening paragraph, providing you flexibility to extend beyond the original February end date.
        b. Adds the core team composition to account for the minimum spend
        c. Payment fees terms have been changed
        d. Termination clauses have changed to reflect our agreement
        e. Adds the ADS (Advanced Demonstrated Services) capability to the team
    5. Document 5 (Facilities Expense SOW)
        a. Provides for the $10,000 per month facilities charge

Thanks
Saru.


HPS 2013 Transforma… A-13.docx


HPS ExchangeLink SOW A-11-Saru-8…2012.docx


HPS Facilities SOW A-14.docx


HPS MSA Amendment1.docx


HPS ServiceLink SOW A-12.docx

Exhibit C: 500K for Product Management JustificationSno word smithing done



Exhibit D: Exb.2 HPS-E-Integrate Consult. Agmnt

# Exhibit 2

Exhibit E: Motion for Final Default Judgment

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEALTHPLAN SERVICES, INC.,
    Plaintiff,

v.                                       CASE NO.: 8:18-cv-02608-SDM-AAS

RAKESH DIXIT, *et al.*,
    Defendants.
_____/

### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

    Plaintiff, HealthPlan Services, Inc. ("HPS" or "Plaintiff"), hereby moves this Court for entry of an order of default judgment against the Defendants in the instant proceedings. Month after month, hearing after hearing, Defendants falsely promised, gamed, abused, deceived, and unjustifiably refused to abide by the Federal Rules, Local Rules, numerous Court orders, and admonishments from this Court. This unchecked misconduct has caused irreparable harm to HPS insofar as it has completely prevented it from advancing its meritorious claims and defenses in this case, while grossly multiplying litigation expenses.

    At this time, Defendants are in violation of at least a *dozen* court orders. Moreover, as explained below, a forensics investigation of computer hard drives has uncovered evidence that Defendants have misled this Court during testimony under oath and committed spoliation.[1] This Court should no longer tolerate Defendants' willful disregard of its orders and bad faith, and should enter default judgment in the instant proceedings. This severe sanction is appropriate given that lesser sanctions, including repeated unpaid monetary sanctions, have failed to make the Defendants comply with this Court's Orders.

---

[1] In support of this motion, HPS submits the Declaration of Russel Brown ("Brown Decl.") and Supplemental Declaration of Russel Brown ("Brown Supp. Decl.") as Exhibits A and B, respectively. Mr. Brown is a Forensic Senior Consultant at Epiq. His CV is attached to the Brown Decl.

1

52101203;1